**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

CASE NO. _4:05cv448-RH/WC_

THERESA B. BRADLEY
    Plaintiff

v.

ROBERT BRUCE MILLER; JOEL PIOTROWSKI;
GREEN, KAHN, PIOTRKOWSKI, MILLER, PA
D. DAVID KELLER; BUNNELL WOULFE,
    KIRSCHBAUM, KELLER, McINTYRE, GREGORIE, PA;
COREGIS INSURANCE COMPANY
THE FLORIDA BAR;
PAUL SIEGEL;
MAXINE COHEN LANDO
    Defendants
_____/



## COMPLAINT

1. This Court has subject matter jurisdiction over this case pursuant to

**U.S.C. Title 28 §1332** due to diversity of citizenship of the parties and claims for damages
that exceed $75,000.00; and pursuant to **U.S. C. Title 28 §1331** federal question arising
under the laws of the United States Constitution - Fifth, Sixth & Seventh Amendments.
This Court has personal jurisdiction over the parties who are residents of different counties
in the State of Florida pursuant to **Florida Statute 47.021** *"Actions against defendants
residing in different counties.--Actions against two or more defendants residing in
different counties may be brought in any county in which any defendant resides."*

2. The Plaintiff, Theresa Bradley (hereinafter Bradley) is a resident of the
District of Columbia with U.S. Mail address located at P.O. Box 70803 Chevy Chase, MD
20813.

1

3. The Defendant, Robert Bruce Miller (hereinafter Miller) resides in the Southern District of Florida Dade County with his address at Tabas, Freedman, Soloff & Miller, PA 25 SE 2nd Avenue Suite 919 Miami, FL 33131 Phone; 305-375-8171.

4. The Defendant, Joel Piotrkowski (hereinafter Piotrowski) resides in the Southern District of Florida Dade County with his address located at 317 71st Street Miami Beach, FL 31410 305-865-4311.

5. The Defendant, Green, Kahn, Piotrkowski, Miller, PA (hereinafter Green, Kahn, et al) is a Defendant to this with its principal place of business located in the Southern District of Florida at 317 71st Street Miami Beach, FL 31410 305-865-4311.

6. The Defendant, D. David Keller (hereinafter Keller), resides in the Southern District of Florida Broward County with his address One Financial Plaza Suite 900 100 SE 3rd Avenue Fort Lauderdale, FL 33394 Phone; 954-761-8600.

7. The Defendant, Bunnell, Woulfe, et al (hereinafter Bunnell et al) is a Defendant with its offices located at One Financial Plaza Suite 900 100 SE 3rd Avenue Fort Lauderdale, FL 33394 Phone; 954-761-8600.

8. Defendant Coregis Insurance Company (hereinafter Coregis) is doing business in the Collier County Florida registered as an insurance company providing professional malpractice insurance in State of Florida with its corporate headquarters located at 525 West Van Buren Street Suite 500 Chicago, IL 60600 Phone; 312-821-4000.

9. Defendant, The Florida Bar (hereinafter Bar) is a non-State of Florida actor or governmental agency, therefore is not protected under the 11th Amendment immunity from suit in federal Court, doing business as an organization of attorneys as its private dues paying members with only regulatory purview by the State of Florida Supreme Court pursuant to Fla. Statute 454.02, and its offices are located at 651 East Jefferson Street Tallahassee, FL 32399.

10. The Defendant Paul Siegel is a resident of Miami Dade County, Fl with his address located at 175 NW Avenue #2019 Miami, FL 33128.

11. The Defendant Maxine Cohen Lando is a resident of Miami Dade County, FL with her address located at 73 West Flagler Street # 412 Miami, FL 33130

12. All conditions precedent to the filing and maintenance of this action have occurred.

## PRELIMINARY STATEMENT
## OPERATION COURT BROOM II - THE SEQUEL

The present case is about fraud upon the Court, abuse of civil process and corruption amongst the attorneys and judges at the Dade County Civil Circuit Court, and an intentional conspiracy and scheme amongst the Defendant attorneys and Coregis enacted by Defendant Robert Bruce Miller who perpetrated a self-inflicted injury the evening of March 10, 2002 in order to avoid his appearance at the jury trial set by the Court the week of March 11 - 15, 2002. The Plaintiff works as a Forensic Psychologist in the criminal justice system for 30 years in family law child abuse matters, juvenile and adult criminal justice, including competency to stand trial under Fla. Statutes (See Exhibit A herein). Plaintiff personally witnessed and endured the fraud on the court and the corruption amongst the attorneys, the judges and The Florida Bar – all to their financial benefit.

The Fifth, Sixth and Seventh Amendments of the United States Constitution are three pillars of the American system of justice. These amendments make procedural guarantees to the Plaintiff, using terms that are given meaning by those with the power of interpretation by the Court. The Fifth Amendment includes a guarantee of "due process of law." The Sixth Amendment guarantees a "speedy" trial by the Court, the Seventh Amendment guarantees the right of trial by jury.

3

In the late 1980s, the United States Federal government and State of Florida law enforcement officials conducted "***Operation Court Broom,***" an investigation into corrupt activities occurring amongst the judges and the lawyers specifically in the Dade County Florida Circuit Court with the US Federal government placing undercover "attorneys" in the Dade County Circuit Court judicial system that resulted in convictions of the Dade County Circuit Court judges and the attorneys utilizing the judicial services designed to protect the Fifth and Six Amendment Rights of "we the people" set forth in the United States Constitution and the Bill of Rights.

The Plaintiff has worked as a Forensic Psychologist for the criminal justice system in the State of Florida and is educated in the law. The issues of the present case concern the rampant and on-going corruption amongst the judges and the lawyers in the Dade County Circuit Civil Court, the attorneys' and insurance company's criminal conspiracy to defraud the Court, the fraud on the court by the judicial officers of the court who engaged in a conspiracy with attorneys and corrupted the judicial system.

**Fraud on the Court is a criminal offense of which neither judges nor attorneys are immune under the law or immune from suit.**

The abuse and perversion of civil process in a conspiracy between the Defendants/Attorneys and the judges at the Dade County Circuit Court, corruption of the Florida Rules of Civil Procedure by the attorneys and the judges at the Dade County Florida Circuit Court, conspiracy, corruption and criminal theft of Plaintiff's money by the attorneys, judges and the Bar by depriving Plaintiff with her money held in attorneys' trust account, and the intentional destruction by attorneys of Plaintiff's personal property consisting of federal securities matters, Plaintiff's corporation matters for Brava Real Estate Corporation, and the intentional destruction of four (4) boxes of Plaintiff's personal property -- ten years of financial records, ten (10) personal federal chartered bank and federal securities broker-dealer accounts, and 20 years of Plaintiff's original commercial bank documents utilized for professional purposes, personal and lawful use.

4

Counts I and II of this eight (8) count complaint involves fraud on the court by officers of the Court, including attorneys and judges in Dade County Civil Circuit Court. Under Federal law, when any officer of the court, including its attorneys and judges, has committed **"fraud upon the court"**, the orders and judgment of that court are void, of no legal force or effect.

Fraud on the Court is a criminal offense of which neither judges nor attorneys are immune under the law or immune from suit. Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". **In Bulloch v. United States the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his/her judicial function --- thus where the impartial functions of the court have been directly corrupted."**

**"Fraud upon the court"** has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final." Fraud upon the court" makes void the orders and judgments of that court.

It is also clear and well-settled law that any attempt to commit **"fraud upon the court"** vitiates the entire proceeding. The Court held in The People of the State of Illinois v. Fred E. Sterling "The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transactions." "The maxim that fraud vitiates every transaction into which it enters ...").

5

In re Village of Willowbrook the Court held that "It is axiomatic that fraud vitiates everything.") See also Dunham v. Dunham, 57 Ill.App. 475 (1894), affirmed 162 Ill. 589 (1896); Skelly Oil Co. v. Universal Oil Products Co., 338 Ill.App. 79, 86 N.E.2d 875, 883-4 (1949); Thomas Stasel v. The American Home Security Corporation, 362 Ill. 350; 199 N.E. 798 (1935).

The Florida Supreme Court has held that Florida Rules of Civ. Procedure Rule 1.540 does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order, or proceeding or to set aside a judgment or decree for fraud upon the court. See Michael Anderson v. Cathy Anderson No. SC00-59 SUPREME COURT OF FLORIDA 845 So. 2d 870; Pursuant to **Fed.R/Civ.Procedure Rule 60(b)** this court is not limited in its power to entertain this independent action to relieve a party from judgment or to set aside a judgment for fraud upon the court.

### GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

13. On April 25, 1995, the Miami/Dade Police arrested Defendant Robert Bruce Miller for his criminal possession of cocaine and DUI then incarcerated in the Dade County Jail, prosecuted by the State of Florida v. Robert Bruce Miller F9512806.

14. Thereafter, The Florida Bar and the Florida Supreme Court suspended Defendant Robert Bruce Miller from the practice of law in The Florida Bar, Complainant, v. Robert Bruce Miller, Respondent CASE NO. 90,804 SUPREME COURT OF FLORIDA 697 So. 2d 1218; 1997 Fla. July 10, 1997, Decided with the following opinion:

"*The unconditional guilty plea and consent judgment for discipline are approved and respondent is suspended from the practice of law for thirty (30) days effective thirty (30) days from the filing of this order so that Respondent can close out his practice and protect the interests of existing clients. If Respondent notifies this Court in writing that he is no longer practicing and does not need the thirty (30) days to protect existing clients, this Court will enter an order making the suspension effective immediately. Respondent shall accept no new business from the date this order is filed.*

*Respondent is further placed on probation for three (3) years under the terms and conditions set forth in the consent judgment.*

*Judgment for costs in the amount of $ 750.00 is entered against respondent for which sum let execution issue.*

*The filing of a motion for rehearing shall not alter the effective date of this suspension.* "

15. In the midst of Defendant Miller's arrest with his confession of long term alcoholism, cocaine addictions, drug abuse treatment, and suspension from the practice of law, the Plaintiff, a former client, sought the return of all monies paid and her money held in Defendant Miller's Trust Account that rightfully belonged to the Plaintiff held by Defendant Miller in the Defendant Miller Green, Kahn, et al trust account. Further, Plaintiff sought the return of four (4) boxes of ten years of original financial records, including documentation of $30,000,000 of personally guaranteed bank loans and personal lines of credit for Plaintiff's commercial real estate business of the prior 20 years with Astron Properties, Inc. and Brava Real Estate Corporation – as its Licensed Real Estate Broker, President and CEO.

16. The Defendants Miller, his law firm Green/Kahn and The Florida Bar refused to agree to hearing for the return of Plaintiff's money held in attorneys' trust account and these Defendants have engaged and aided in the civil theft of Plaintiff's money held in attorneys bank and trust account.

17. Plaintiff provided Defendants Miller and his law firm Green, Kahn the only copies of her original documents contained **four (4) boxes** containing ten (10) years of the Plaintiff's financial documentation for federal securities brokerage accounts, federally chartered bank accounts and corporate records of her corporation, Brava Real Estate Corporation, including documents substantiating and representing the Plaintiff's personal guarantee of $30,000,000 of Federal Home Loan Mortgage Corporation and private loans

7

utilized for the purchase of major commercial real property during the prior 20 years owned by the Plaintiff. Plaintiff required her original records to conduct her personal and professional affairs for her company Brava Real Estate Corporation, and to initiate a federal securities arbitration action for unauthorized trading and churning of a brokerage account.

18. As a result of Miller's arrest for cocaine possession and DUI, and suspension from the practice of law the Plaintiff's money held in the trust account was converted for Miller or his law firm's own personal use and the four (4) boxes of original documents, bank and brokerage records, and corporate records were lost or destroyed by the Defendants Miller, Piotrowksi, and Green, Kahn, et al.

19. As a result of Plaintiff' filing a Florida Bar Complaint seeking the return of Plaintiff's original four (4) boxes of original personal and corporate documents on October 1994 the Defendant Miller returned **only three (3) small manila envelopes** containing a **minor fraction** of the original four (4) boxes of original documents, corporate records, and original financial records of ten (10) bank and brokerage accounts for a ten-year period of time and 20 years of Plaintiff's original bank loan documents. Defendant Miller refused to agree to a Bar hearing concerning the return of Plaintiff's money held by Defendants Miller and Piotrkowski in the attorneys Trust Account held for Plaintiff's behalf.

20. The Defendants have consistently maintained that the 3-small envelopes constituted the return of four boxes of original documents, however, the list of documents placed in the 3-small envelopes did not contain a fraction of the original four (4) boxes of documents and did not even contain the return of original documents for ten bank, ten brokerage, 20 years of bank loan documents and for Prudential Securities, a matter which Defendant Miller had briefly been engaged and fully paid under a prior contract.

8

21. The Defendants Miller, Piotrkowski, Green, Kahn, et al lost and destroyed four (4) boxes of original corporate, personal and financial records leading the Plaintiff to close her company and administratively dissolve, Brava Real Estate Corporation in 1996, and the loss destruction of her 4-boxes of original documents resulted in the Plaintiff's inability to proceed with her original financial records for other corporate, professional, personal and legal matters. Further, the Defendants refused to return $15,000.00 held in attorneys trust account for Plaintiff's behalf and for work never performed.

22. As a result, the Plaintiff initiated civil action 98-11457-CA at the Dade County Civil Circuit Court with the Fourth Amended Complaint filed on March 8, 2000, which later resulted in 19 volumes of the proceedings over a 5 -year period before six (6) different judges that resulted in approximately 50,000+ pages of pleadings and hundreds of docket entries - See **Docket 98-11457-CA Exhibit B herein.**

23. On March 30, 2000 the Defendants filed their Motion to Dismiss the Fourth Amended Complaint that was DENIED by the Court on August 31, 2000

24. On December 7, 2000, the Defendants filed a Motion for Summary Judgment on all issues of the three (3) count complaint: Count I - Professional Negligence, Count II - Fraud and Count III Intentional Infliction of Emotional Distress.

25. On July 31, 2001, The Court DENIED the Defendants' Motion for Summary Judgment as to Count I - Professional Negligence and Count II - Fraud but granted as to Count III for intentional infliction of emotional distress, and DENIED summary judgment in all other respects concerning all issues, claims and facts set forth in the Fourth Amended Complaint (**See Exhibit C herein**), including the civil theft of Plaintiff's funds held in the attorneys trust account.

26. In discovery, Plaintiff obtained copies of the attorneys trust account records, the Plaintiff filed a complaint for the civil theft of her money held in the attorneys trust account with the Bar but they refused to hold hearings according Defendant Miller the right

to object and refuse to appear for hearing.  In fact, the Defendant Bar is required under the law to hold hearings regarding client's funds held in an attorneys trust account -- **See Exhibit D herein Attorneys' Trust Records with Plaintiff's Record of Payments to Defendants Miller and Green, Kahn, Piotrkowski, Miller, PA Attorneys**

27. On February 2, 2002, the  Court set the case for Jury trial on the Court's Special Set Calendar reserving 5-days for jury trial (March 11-15, 2002) that resulted in the Plaintiff's expending considerable sums of money in preparation for jury trial March 11-15, 2002 for issuance of subpoenas to third parties, payment of witness fees, including subpoena of the Florida Bar Office of Counsel, Ms. Arlene Sankel, to appear as witness at the jury trial and the police officer who had arrested Defendant Miller when he was charged with cocaine possession and DUI resulting in his arrest and suspension from the practice of law. **See Exhibit E Court Order Re-Setting Jury Trial**

28. The trial of the case started on March 11, 2002 and the first witness, Ms. Arlene Sankel, Staff Counsel The Florida Bar Miami Office, appeared before the Court submitting as an Exhibit for Trial all of the Florida Bar's Certified Records of the arrest and Florida Bar proceedings and Florida Supreme Court suspension of the Defendant Miller from the practice of law.  Further, the Staff Counsel Sankel  appeared and testified before the Court that the Florida Bar records were certified as true and correct, and Florida Bar Counsel Sankel requested permission for relief to testify under the subpoena issued to her by Bradley.  The Court granted this request and accepted as exhibits for trial the certified records of the arrest and suspension of Defendant Miller from the practice of law.

29. Another witness subpoenaed as a Plaintiff's witness appeared before the Court from the law offices of Russell Forkey, PA, FL and requested relief by the Court as a result of the subpoena to appear for trial for 5 full days during the week of March 11-15, 2002. This request to wait as a witness the entire 5 days was granted, however, the Court issued an order for Mr. Forkey's  appearance at trial with 2-hours notice by telephone.

30. Then, the Defendants Miller, Green/Kahn, Keller and Bunnell et al and Coregis began their scheme to defraud the Court in order to avoid the 5-day jury trial special set by the Court March 11 – 15, 2002.

31. On the evening of March 10, 2005, immediately prior to the start of the jury trial on March 11, 2005, Defendant Robert Bruce Miller intentionally caused his own "one person automobile crash and injury" as a result of an intentional and well-thought out plan and conspiracy with Defendants Keller, Bunnell/Woulfe and Coregis to avoid the March 11-15, 2002 jury trial set by the Court.

32. On the evening of March 10, 2002 Defendant Robert Bruce Miller entered his automobile alone with numerous bottles of liquor and with the intent to become drunk to cause self-inflicted injury to himself. Defendant Miller began drinking large quantities of alcohol liquor throughout the evening, left the opened bottles of alcohol liquor in his automobile, then at approximately 1:00 a.m. gunned his automobile with an estimated speed of 70MPH in a 35 MPH zone, and intentionally crashed his automobile into an unoccupied parked car causing his own self-inflicted automobile crash with injury-all with the intent and design the evening of March 10, 2002 before the March 11-15, 2002 jury trial set by the Court to avoid the jury trial on Monday morning at 9:00. The Police found Defendant Miller March 10, 2002 in his automobile as a result of his self-inflicted actions to avoid jury trial with "*open containers of alcohol beverages*."- **See Exhibit F Hollywood, Florida Police Report and Florida Traffic Crash Report March 10, 2002 #72342412 for Robert Bruce Miller DOB 7/11/1957 Vehicle Identification # WBADN53421GC96596 and Florida Department of Highway Safety and Motor Vehicles Division of Driver's Licenses Transcript of Driver's License for Robert Bruce Miller DOB05 7/11/1957 Florida Driver's License #M460-762-57-251-0.**

11

33. These intentional self inflicted acts of Defendant Miller, an attorney facing a jury trial the next day, March 11, 2002, was an intentional scheme with pre-meditation, forethought, and planning to avoid jury trial March 11-15, 2002. And, the Defendants' scheme to commit fraud upon the Court to avoid the jury trial March 11, 2002 worked as the trial March 11-15, 2002 could not proceed without the primary defendant as witness, the suspended attorney, Robert Bruce Miller. But, the Court refused to order any documentation or support of this self-inflicted fraud upon the Court by Defendants in order to avoid trial. Plaintiff sought accident and medical documentation from the Defendants whose response whispered to Plaintiff was "go fuck yourself" then walked out of court after the judge angrily slammed his gavel in Courtroom 4 Dade Circuit Court.

34. Subsequent to this staged fraud upon the Court, the Defendants began on a path of abuse of civil process filing eight (8) duplicative motions to dismiss the case or motions for summary judgment on matters previously considered and denied Defendants Motion for Summary Judgment and Memorandum of Law in Support **See Exhibit G herein**, and the Court continued to hear these matters while the case was re-set for jury trial on six (6) occasions, always cancelled by the Defendants with full cooperation by the judges.

35. Despite the 10th order re-setting the case for trial February 3, 2003 and close of the pleading 15 days prior to February 3, 200 pursuant to an Order of the Court, the Defendants filed their 8th Motion for Summary Judgment on matters previously considered and denied in the Defendants Motion for Summary Judgment and Memorandum of Law in Support. The sixth judge capriciously ignored the fact that the pleadings were closed, held a hearing January 29, 2003, the Friday before the final trial date, Monday, February 3, 2003, the date of the 10th jury trial set by the Court.

36. The Defendants Motion for Summary Judgment previously filed December 7, 2000 and denied by the Court was re-heard by the 6th Judge in the case with utter disregard to the prior 5-years of proceedings, including the fact that both the Motion to Dismiss and

12

the same Motion for Summary Judgment had been denied three (3) years prior and the jury trial had already begun March 11, 2002 with appearance of witnesses and submission of trial evidence.

37. Despite Plaintiff's efforts on appeal, Plaintiff could not bring the case back for the continuation of the trial started March 11, 2002 although the trial had begun when the Defendants engaged in their criminal scheme and conspiracy with fraud upon the Court.

## COUNT I - FRAUD ON THE COURT

38. Plaintiff incorporates Paragraphs 1 - 37 as if stated herein and alleges a cause of action against the Defendants: Robert Bruce Miller, Joel Piotrkowski, Green, Kahn, Piotrkowski, Miller, PA, D. David Keller, Bunnell, Woulfe, et al, Coregis, for their intentional scheme to avoid jury trial with intentional fraud upon the court and corruption of the judicial process, and states:

39. On or about March 2002, the Defendants Miller, Piotrkowski,, Green, Kahn, etal, Keller, Bunnell Woulfe,- all officers of the Court -- and Coregis, sentiently set into motion their unconscionable scheme to commit fraud upon the Court that was calculated to interfere with the judicial systems' ability to impartially adjudicate a matter by improperly influencing the then trial judge or unfairly hampering the presentation of the case by the Plaintiff at the 5-day Special Set Jury Trial March 11 - 15, 2002 at Dade Civil Circuit Court before the jury with witnesses who were subpoenaed and appeared at great expenses and hardship to the Plaintiff to bring her case to justice before the jury.

40. These Defendants intentionally perpetrated fraud upon the Court by Defendant Miller's self-inflicted drunken and intentional high speed crash into an unoccupied parked car the evening immediately prior to the start of the jury trial March 11-15, 2002 resulting in his own self-inflicted injury in order to avoid his appearance for the 5-day jury trial as the primary Defendant in Courtroom 4-B at Dade Civil Circuit Court, and by the corruption of the judicial process thereafter.

13

WHEREFORE, Plaintiff, Theresa B. Bradley, hereby prays for judgment against the Defendants Miller, Piotrkowski,, Green, Kahn, et al, Keller, Bunnell Woulfe, and Coregis for these Defendants fraud upon the Court in an amount in excess of $6,000,000 for her compensatory damages. Further Plaintiff reserves her rights to assert her claims for punitive damages pursuant to Fla. Statute 768.72 in order to punish these attorneys and officers of the Court who have a higher duty and obligation to uphold the integrity of Plaintiff's rights to due process and the integrity of the judicial system. Plaintiff requests this Court void the Judgment entered at the Dade County Circuit Court in Case No. 98-11457-CA as Fraud Upon the Court has no statute of limitations. The Florida Supreme Court has held that Florida Rules of Civ. Procedure Rule 1.540 does not limit the power of a court to entertain an independent action to relieve a party from a judgment, decree, order, or proceeding or to set aside a judgment or decree for fraud upon the court. See Michael Anderson v. Cathy Anderson No. SC00-59 SUPREME COURT OF FLORIDA 845 So. 2d 870;

Plaintiff requests her costs and expenses to bring this matter to the Court and such other relief as this Court deems just and proper.

## COUNT II - FRAUD UPON THE COURT
## CORRUPTION OF THE JUDICIAL PROCESS

41. Plaintiff incorporates Paragraphs 1 - 40 as if stated herein and alleges a cause of action against the Defendants: Robert Bruce Miller, Joel Piotrkowski, Green, Kahn, Piotrkowski, Miller, PA, D. David Keller, Bunnell, Woulfe, et al, Coregis, Siegel and Cohen-Lando for intentional fraud upon the court and corruption of the judicial process, and states:

42. Defendant Miller' calculated scheme to intentionally cause his own self-inflicted injury March 10, 2002 by drinking large quantities of alcohol then driving at high speed into an unoccupied parked automobile 1:00 am the morning prior to the March

14

11, 2002 jury trial was a calculated and pre-meditated scheme with the design and the intent to cause his own injury to avoid the jury trial set the following day on the Court's 5-Day Special Set Calendar March 11 - 15, 2002.

43. Prior to this time, the Court had Judicial Notice by the Plaintiff's 4th Amended Complaint, the Plaintiff's Complaint Bradley v. Miller filed at The Florida Bar, the State of Florida v. Robert Bruce Miller, The Florida Bar v. Robert Bruce Miller and The Florida Supreme Court v. Robert Bruce Miller that Defendant Miller had a history of long term addictions to both alcohol and cocaine, had been arrested, and suspended from the practice of law and was on 3-year probation until mid-2001. In fact, the Plaintiff informed the Court and The Florida Bar that Defendant Miller frequently engaged in bizarre, psychotic like conduct that resulted Plaintiff terminating the attorney client relationship demanding the full return of all monies paid to Defendant Miller and his law firm Green, Kahn, Piotrkowski, Miller, PA, all money held in the attorneys trust account that rightfully belongs to the Plaintiff and the return of 4-boxes of original documents and financial records for Plaintiff's personal, professional, commercial real estate business and her 20 years of excellent banking relationships -- all fully described in the 4th Amended Complaint.

44. At the jury trial March 11, 2002, the Court failed and refused to demand that Defendants provide documents of a Police crash report, medical report, or hospitalization report for Defendant Miller despite the knowledge of Defendant Miller's history of criminal arrest and Florida Supreme Court suspension and the Plaintiff's allegations including civil theft - which unlawful conduct and civil theft of Plaintiff's money held in Miller's trust account can lead to disbarment of an attorney.

45. Defendant Miller's criminal history combined with the matters set for jury trial in the Order Re-Setting the Case for Jury trial March 11, 2002, including civil theft of client's money held in trust, should have caused this Court to immediately order production of Defendants' Police crash report, medical and hospital records – not flippantly dismiss the case.

15

46. With Judicial Notice of Defendant Miller's criminal history, the Court corrupted and degraded the judicial process, which took 5-years to obtain a jury trial, in the midst of the start of the jury trial and failed to exercise judicial prudence with a demand for Defendant Miller's Police Crash Report and medical records. One year later, February 2003, a new judge joined in the corruption of due process, re-heard duplicative motions re-filed by Defendants 2 or 3-years prior and previously denied despite the fact that the pleadings had been closed as a result of the start of the jury trial March 11, 2002 with the appearance of witnesses and submission of Florida Bar Certified evidence for the jury's consideration.

WHEREFORE, Plaintiff, Theresa B. Bradley, hereby prays for judgment against the Defendants Miller, Piotrkowski,, Green, Kahn, et al, Keller, Bunnell Woulfe, Coregis, Paul Siegel and Maxine Cohen-Lando in an amount in excess of $6,000,000 for Plaintiff's compensatory damages. Further Plaintiff reserves her rights to assert her claims for punitive damages pursuant to Fla. Statute 768.72 in order to punish these Defendants - all officers of the Court --who have a higher duty and obligation to uphold the integrity of Plaintiff's rights to due process and the integrity of the judicial system. These Defendants engaged in rampant and on-going corruption amongst the judges and the attorney defendants in the Dade County Circuit Civil Court, the attorneys' insurance company in a criminal conspiracy to defraud the judicial machinery of the Court.

Plaintiff requests her costs and expenses to bring this matter to the Court and such other relief as this Court deems just and proper.

## COUNT II -ABUSE AND PERVERSION OF CIVIL PROCESS

47. Plaintiff incorporates Paragraphs 1-46 as if stated herein and alleges a cause of action against Defendants Miller, Keller, Bunnell et al, Piotrkowski, Coregis and Green, Kahn, et al for abuse and perversion of civil process and states:

16

48. On **March 8, 2000** the Plaintiff filed Fourth Amended Complaint 98-11357-CA with three counts: Count I - Professional Negligence; Count II - Fraud and Count III - Intentional Infliction of Emotional Distress. On **April 30, 2000** the Court entered an Order setting the case for jury trial. **See Exhibit É herein.**

49. On **May 30, 2000**, the Defendants filed their Motion to Dismiss the Fourth Amended Complaint, after hearing from the parties the Court entered its order **August 31, 2000** to DENY the dismissal of the 4th Amended Complaint. On **November 29, 2000**, the Court entered an Order re-setting the case for jury trial April 30, 2001.

50. **On December 7, 2000**, the Defendants filed their Motion for Summary Judgment on all issues, claims and facts contained in Count I - Professional Negligence, Count II - Fraud and Count III - Intentional Infliction of Emotional Distress. -- **See Exhibit G herein**. On December 7, 20000 the Defendants filed a duplicative Motion to Dismiss already heard and denied August 31, 2000.

**51.** On **July 31, 2001,** the Court entered its order granting summary judgment on Count III, thereby removing that Count III for trial. **The Court DENIED Defendants' Motion for Summary Judgment on all issues, claims and facts as to Count I and Count II of the Fourth Amended Complaint and denied Defendant's motion for summary judgment in all other respects..** The Court entered another order re-setting the Jury Trial November 12, 2001.

52. The Defendants began on their path of perversion and abuse of civil process immediate prior to the November 12, 2001 jury trial by re-filing on October 11, 2001 a duplicative Motion for Summary Judgment previously filed, heard and denied August 31, 2000 with an Order of Court.

53. Not content with the Court's order DENYING their Motion to Dismiss and

DENYING their Motion for Summary Judgment as to all issues, facts and claims of Count I Professional Negligence and Count II - Fraud, the Defendants began re-filing duplicative dispositive motions already heard and denied, as follows:

§ **12/07/200** **Motion to Dismiss**

§ **10/11/01** **Motion for Summary Judgment**

§ **10/16/01** **Motion for Summary Judgment**

§ **10/23/01** **Amended Motion for Summary Judgment**

§ **11/08/01** **Motion for Summary Judgment**

§ **11/13/01** **Motion to Dismiss**

§ **10/02/02** **Motion for Summary Judgment**

§ **1/29/03** **Motion for Summary Judgment with affidavit from**

**Howard Teschner filed 12/7/2000 heard and denied.**

54. Not content with fraud upon the Court March 11, 2002, the Defendants engaged in the abuse and perversion of civil process with both judges and attorneys engaged in the corruption of due process. These officers of the Court willfully and gleefully ignored, eviscerated, then incinerated the Florida Rules of Civil Procedure while the Defendants engaged in egregious perversion and abuse of civil process re-filing and the judges re-hearing the exact same motions to dismiss or summary judgment -- duplicative dispositive motions previously denied and re-setting the jury trial although a jury trial had begun on March 11, 2002 and the pleadings were closed as follows:

**1/9/02** **Order setting Jury Trial - pleadings closed**

**2/05/02** **Order of Court setting Jury Trial on the Court's Special**

18

> **Set Calendar March 11 - 15, 2002. Pleadings closed,**
> **Trial began, witnesses appeared and evidence submitted**
> **into the Court**

**9/4/02    Order setting Jury Trial - pleadings closed**

**1/29/03    Court heard the duplicative Motion for Summary**
**Judgment filed 1/9/03 when the pleadings were closed**
**although the motion had been previously filed, heard and**
**denied as early as August        2000 - end of case 2/18/03**

55. The Final Judgment referred to the same 3-small envelopes, in lieu of the four (4) boxes of documents, that had been returned to the Plaintiff at the Bar Hearing years prior and that had been the subject matter in the Motion to Dismiss (denied 8/31/00) and Motion for Summary Judgment (denied 7/31/01) and the 3-envelopes versus 4 boxes of original documents fully described in the 4th Amended Complaint.

56. The Plaintiff's money held in the trust account – stolen.

57. The Plaintiff's motions for sanctions upon Defendants perversion of civil process either denied or ignored as a result of the fraud on the court and corruption amongst the judges and the attorneys at Dade County Circuit Court.

58. The Defendants filed a total of **nine (9) motions** to either dismiss or for summary judgment although the **Motion to Dismiss was denied 8/31/00 and the Motion for Summary Judgment as to Count I and Count II was denied  7/31/01.** The judicial officers Siegel and Cohen-Lando knew that all issues and claims of Count I and Court II of the 4th Amended Complaint were denied under both a Motion to Dismiss and Motion for Summary Judgment.

19

59. The judicial officers Siegel and Lando encouraged and engaged in the corruption and perversion of due process and criminal fraud upon the Court by re-hearing previously denied dispositive motions on issues that fall within the common knowledge exception, which does not require an expert. This, too, had been fully concluded years prior and prior to the start of jury trial March 2002.

60. Further, it should be noted that the case was set for jury trial on six (6) occasions from April 2000 through January 2003 with each Court Order closing the pleadings - all ignored as a result of the ongoing corruption amongst the attorneys and judges at Dade County Circuit Court while the judges continued to entertain and encourage the abuse of civil process and the circus farce of Defendants' perversion of civil process and fraud upon the Court.

61. The Defendants willfully or intentionally made illegal, improper or perverted use of process and engaged in corrupt, convoluted, ridiculous, legal-circus farce in their abuse and perversion of due process.

62. Defendants had ulterior motive or purpose in exercising their perversion of civil process;

63. Defendants' actions caused irreparable harm and injury to the Plaintiff.

WHEREFORE, Plaintiff, Theresa B. Bradley, prays for entry of judgment against the Defendants Miller, Piotrkowski, Green, Kahn, et al, Keller, Bunnell Woulfe, et al , Siegel and Cohen-Lando, and Coregis by this Court for the Defendants criminal conspiracy of fraud on the court with abuse and perversion of civil process for Plaintiff's compensatory damages that exceed $6,000,000.00. Plaintiff reserves the right to assert her claims for punitive damages pursuant to Fla. S. 768.72, and requests her costs and expenses to bring this matter to Court, and such other relief as this Court deems just and proper.

## COUNT III - CRIMINAL CONSPIRACTY FRAUD ON THE COURT

64. Plaintiff incorporates Paragraphs 1 - 63 as if stated herein and alleges a criminal conspiracy fraud on the Court by the Defendants Miller, Piotrkowski, Green. Kahn et al, Keller, Bunnell Woulfe, et al, Siegel, Cohen-Lando, and Coregis, and states:

65. Fraud on the Court is a criminal offense of which neither judges nor attorneys are immune under the law or immune from suit as this criminal offense goes to the very heart of the judicial machinery and the United States Constitution Fifth, Sixth and Seventh Amendments.

66. Plaintiff filed a simple 3-count 4th Amended Complaint. Defendants filed the Motion for Summary Judgment 12/07/00,. Which motion clearly addresses all facts, issues and claims. The Motion for Summary Judgment was denied as to Count I and Count II July 31, 2005, the case-reset for jury trial on all issues of Count I Professional Negligence and Count II - Fraud November 21, 2001 and March 11-15, 2002 on the Court's 5-day special set calendar. On March 11, 2002, the jury trial began and abruptly terminated as a result of the self-inflicted scheme to avoid jury trial.

67.The issue as to no requirement for an expert were fully settled as the issue for jury trial fall within the common knowledge exception - return 4-boxes of client's records, and client's money held in trust. The Court concluded that the issues for trial does not require an expert, thus the jury trial was set on the Court's Special Set Calendar March 11-15, 2002 when the scheme to avoid the jury trial corrupted Plaintiff's rights to due process.

68. These attorneys and judicial officers engaged in a criminal conspiracy to defraud the court, to obliterate the Fla. Rules of Civil Procedure and to defile the court itself by fraud perpetrated by officers of the court so that the judicial machinery can not

21

perform in the usual manner its impartial task of adjudging cases that are presented for adjudication at the jury trial March 11-15, 2002.

WHEREFORE, Plaintiff, Theresa Bradley, hereby requests entry of an order of referral of this criminal conspiracy by the attorneys and judicial officers of the Court to the Office of the State Attorney, to the Florida Supreme Court and to the Judicial Qualifications Commission as these officers of the court by their acts of fraud engaged in theft of client's money held in trust that rightfully belongs to the client, and engaged in criminal destruction of Plaintiff's personal property required for her personal use and business (Brava Real Estate Corporation, and engaged in utter defilement of the Florida Rules of Civil Procedure and fair and impartial judicial process. Further, Plaintiff requests her costs and expenses to bring this matter to the Court and for such other relief as this Court deems just and proper.

## COUNT IV - VIOLATIONS OF FLORIDA CRIMINAL STATUTES
### Fla. Statutes 837.032, 837.06

69. Plaintiff incorporates Paragraphs 1 - 68 as if stated herein and alleges a cause of action against Defendants Miller, Piotrkowski, Keller, Green, Kahn, et al, Bunnell Woulfe, et al and Coregis for violations of Florida Criminal Statute § 837 and states:

70. March , 2002 the Defendants began on a scheme to defraud the Court and to engage in abuse and perversion of civil process, and willfully made false statements to the Court that they knew were false, misleading and intentionally designed as a scheme to self-inflict injury March 10, 2002 to avoid the jury trial specially set for March 11-15, 2002 pursuant to Order of Court Re-Setting Cause for Jury Trial on the Court's Special Set Calendar March 11 – 15, 2002.

71. The Defendants engaged in a scheme to defraud the Court and to pervert civil process with a consistent pattern of abuse and perversion of civil process over a 3-year period in order to avoid fair and just administration of justice to bring the matters

22

in the Fourth Amended Complaint Count I and Count II to the jury trial specially set for March 11-15, 2002.

72. The Defendants criminal schemes are demonstrative of DOUBLE FRAUD -- that is fraud on the client as set forth in Count II of the Fourth Amended Complaint set for jury trial March 11-15, 2002 and later FRAUD and abuse of civil process to cover up the original fraud and civil theft of the Plaintiff's money held in the attorneys' trust account.

WHEREFORE, Plaintiff, Theresa B. Bradley, hereby prays for justice in that this Court will refer this matter to criminal investigation and disciplinary proceedings, including disbarment of the attorney defendants who have a higher duty and obligation to uphold the integrity of the judicial system. Plaintiff requests this Court enter judgment for the Plaintiff's compensatory damages $6,000,000.00, as well as reserving the right to assert her claims for punitive damages under Fla. Statute 678.72 in order to punish these defendants for their failure to uphold the laws thereby damaging the Plaintiff who sought fair and impartial administration of justice before the Dade County Circuit Court March 11-15, 2002 when the jury trial had begun, witnesses under subpoena had appeared and exhibits were admitted into evidence for the jury trial.

## COUNT VI - CIVIL CONSPIRACY

73. Plaintiff incorporates Paragraphs 1 - 72 as if stated herein and alleges a cause of action against Defendants for civil conspiracy, and states:

74. On or about March 11, 2002, the Defendants Miller, Piotrkowski, Green, Kahn et al, Keller, Bunnell Woulfe, et al, and Coregis concocted a conspiracy to do an unlawful act or engage in a scheme to perpetrate an unlawful act by unlawful means in order to avoid the special set jury trial on all claims, facts and issues of Count I and Count II of the Fourth Amended Complaint set for jury trial March 11-15, 2002.

23

75. Plaintiff suffered damages as a result of the conspiracy and of the acts performed through operation of the conspiracy by these Defendants with the malicious motive to defraud the Plaintiff, to defraud the Court and to pervert civil process with willful malice and the intent to avoid the jury trial set March 11-22, 2002.

WHEREFORE, Plaintiff, Theresa B. Bradley hereby prays for judgment by this Court against the Defendants in an amount to exceed $6,000,000.00 as Plaintiff's compensatory damages. Plaintiff reserves the right to assert her claims for punitive damages against these attorneys who have the highest duty to uphold integrity of the judicial process in order to bring this case to due process for the jury trial as contemplated by the Order of the Court setting the case for special set jury trial March 11-15, 2002.

## COUNT VI-FRAUD WITH CONSPIRACY TO ENGAGE IN CIVIL THEFT OF CLIENT'S FUNDS HELD IN TRUST ACCOUNT

76. Plaintiff incorporates Paragraphs 1 - 75 as if stated herein and alleges a cause of action for fraud against the Defendant the Florida Bar, and states:

77. The Florida Bar Rules of Professional Conduct quite clearly state that when a client demands a hearing regarding Plaintiff's money held in an attorneys' trust account the Florida Bar is obligated to hold hearings without obtaining the attorneys' agreement and cooperation.

78. The Plaintiff consistently and continually placed demands upon the Defendant Florida Bar who refused to hold a hearing demanded by the Plaintiff who had submitted trust records of her money held in the attorneys trust account -- all ignored by the Bar.

24

79. The Defendant Bar intentionally ignored the fact that the first hearing concerning the return of 3-envelopes of documents did not address the issue of Plaintiff's money held in the attorneys trust account as the Florida Bar insisted that this matter could not be heard as the attorney had to agree to hear matters concerning funds held in the attorneys trust account. This is a false as hearings are mandatory, particularly given the third party conversion of funds collected by Plaintiff from Harris Holzberg from the attorneys' trust account.

80. The Defendant Bar made false statements regarding a material fact in that the attorney was under no obligation to provide his permission or his refusal to attend any hearing concerning client's funds held in the attorneys trust account.

81. Defendant Bar knew or should have known that the representations made to the Plaintiff were false, misleading and fraudulent designed as a conspiracy to deprive the Plaintiff with her money held in the attorneys trust account for her own behalf.

82. Defendants intended that their false and fraudulent representation that the attorney must "agree to attend a hearing" for the return of client's money held in the attorneys trust account were false.

83. Plaintiff has suffered damages as a result of the false, misleading, fraudulent conspiracy to deprive the Plaintiff with a mandatory hearing concerning funds held in the attorneys trust account that rightfully belong to the Plaintiff.

84. The Defendant Bar has continually engaged in a fraudulent conspiracy with the Defendant attorneys in order to deny the Plaintiff her rights to a compulsory hearing regarding her money being unlawfully held in the attorneys trust account.

WHEREFORE, Plaintiff, Theresa Bradley, prays for entry of Judgment by this Court for $6,000,000 against Defendants for their willful and fraudulent conspiracy, fraud upon the court to avoid jury trial civil theft and aiding civil theft of client's funds held in trust account.    Plaintiff requests her costs and expenses to bring this matter to the Court and such other costs and relief as this Court deems just and proper.

## COUNT VII - FRAUD IN THE INDUCEMENT

85. Plaintiff incorporates paragraphs 1 - 84 as if stated herein an alleges a cause of action against the Defendants Miller, Piotrkowski, Green, Kahn, et al for fraud in the inducement, and states:

86. Defendant Miller represented to the Plaintiff that his legal specialty for which he was certified and had handled hundreds of cases was federal securities arbitration. Therefore, Plaintiff retained the services of Defendant Miller and the law firm of Green, Kahn, et al based upon these representations to represent Plaintiff in two federal securities arbitration matters (1) Prudential Securities and (2) Dean Witter.

87. In February 2002, the Plaintiff subscribed to Westlaw in order to perform federal securities arbitration research as these matters are private and not a matter of public record in preparation for the Judy trial March 11-15, 2002 at Dade County Circuit Court.

88. As a result of this Westlaw research, the Plaintiff discovered that Defendants Miller, Piotrkowski, and Green, Kahn, had NEVER handed a federal securities arbitration matter at any time prior to or during the time period of their engagement for services.

89. In fact, the Plaintiff was the Defendants' "guinea pig" and first client where Defendants Miller and Green, Kahn, et al had handled a federal securities arbitration claim pursuant to U.S.C. Title 9 Federal Arbitration Act.

90.   Had the Plaintiff been informed the truth upon her inquiry as to these Defendants total lack of expertise or experience handling their first federal securities arbitration, the Plaintiff would NEVER have engaged the services of Defendants Miller, Piotrkowski, and Defendant Green, Kahn, in the first place. A simple Securities & Exchange Act 1934 10B10 claim for failure to provide client with confirmation of the trade became a 5-day journey into Defendant Miller's directed chaos. Had Defendant's represented that they had no federal securities arbitration expertise or experience, the Plaintiff would not have become relied upon their representations or engaged the Defendant Miller and his law firm, which representation has caused financial damage as a result.

91.   The evidence will show that the Defendants Miller, Piotrkowski and Green, Kahn, et al at absolutely no experience, training, certification and had NEVER handled a federal securities arbitration claim prior to their false representations leading to their engagement by the Plaintiff. But for these false and fraudulent representations, the Plaintiff would never have engaged Defendant Miller and Green, Kahn, et al at any time to handle her complex federal securities arbitration matters.

92. The Defendants representations were false, fraudulent and misleading and were intended to induce the Plaintiff to engage the Defendants, which engagement has caused irreparable harm, financial damages and protracted litigation nightmare for the Plaintiff causing her to suffer due to the financial harm and injury.   Pursuant to Fla. Statute 95.11 (3)(j) the 4-year statute of limitations for trigger date is February 2002 -- the discovery of Defendants' fraud in the inducement by Plaintiff as a result of her Westlaw research previously unavailable to the Plaintiff, thus these facts were not discoverable until February 2002.

WHEREFORE, Plaintiff, Theresa B. Bradley, hereby prays for entry of judgment against the Defendants Robert Bruce Miller, Joel Piotrkowski, Green, Kahn, et al in am amount to exceed $6,000,000.00.  Plaintiff reserves her right to assert her claims for punitive damages

pursuant to Fla. Statute 768.72 as these attorneys have the highest duty and, in fact, are obligated to truthfully represent their lack of federal securities arbitration experience and not intentionally defraud the Plaintiff so that she would engage their services. The Defendants Miller, Piotrkowski, and Green, Kahn, et al had     a duty to decline representation of the Plaintiff who specifically sought seasoned legal expertise in federal securities laws and federal securities arbitration.  Plaintiff requests her costs and fees to bring this matter to the Court and such other relief as this court deems just and proper.

## COUNT VIII- DEMAND FOR CLIENT'S FUNDS HELD IN ATTORNEYS TRUST ACCOUNT WITH BAR HEARING

93. Plaintiff incorporates Paragraphs 1 - 92 as if stated herein and places her demand for the return of all of Plaintiff's funds held or that should be held in the Defendant attorneys trust account, including interest.

94. The Defendants have engaged in civil theft of client's funds held in trust account and the Florida Bar has continuously stated that Defendant Attorneys must agree to come to a Bar Hearing concerning client's funds held in trust.

95. Defendant attorneys Miller, Piotrkowski, Green/Kahn, et al,  and The Florida Bar Engaged in civil theft of Plaintiff's funds held in attorneys trust account.

WHEREFORE, Plaintiff, Theresa Bradley, hereby demands the Court enter an order requiring Defendant attorneys to appear before hearing officers of The Florida Bar  to conduct hearings concerning the issues set forth in this Complaint, including intentional civil theft of client's held in attorneys trust account and the fraud upon the court, including intentional self-inflicted injury scheme the evening prior to avoid the jury trial set by the Court March 11-15, 2002.

## PLAINTIFF DEMANDS TRIAL BY JURY

28

Respectfully submitted this 21 day of November 2005

Theresa B. Bradley, Pro Se Plaintiff
P.O. Box 70803
Chevy Chase, MD 20813
Mobile Phone; 561-676-2989
e-Mail tbrava@yahoo.com

## CERTIFICATE OF SERVICE OF PROCESS

I hereby certify that one copy of the Complaint has been served by the US Mail
this ___11/2_/ /_0 5____, 2005 upon each of the Defendants at their address as
indicated in Paragraphs 3-9 WITH INITIAL SUMMONS IN CIVIL; NOTICE OF
LAWSUIT; AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS pursuant to
the Fed. R.Civ. Procedure, as follows:

### DEFENDANTS
1. Robert Bruce Miller
2. Joel Piotrkowski
3. Green, Kahn, Piotrkowski, Miller, PA
4. D. David Keller
5. Bunnell Woulfe, et al
6. The Florida Bar
7. Coregis Insurance Company

### INTERESTED PARTIES

1. Attorney General of United States Department of Justice - Demand for
   Investigation of Ongoing Corruption amongst judges and attorneys at
   Dade County Circuit Court.

2. Attorney General State of Florida

3. Judicial Watch - Washington, DC

4. Supreme Court of Florida - Regulatory Division for Florida Bar

Theresa B. Bradley, Pro Se
Plaintiff

30

# **EXHIBITS**

EXHIBIT A………………………………..Plaintiff Bradley Forensic Psychology

EXHIBIT B……………………………..98-11557-CA Dade Civil Circuit Court
                                      Bradley v. Miller docket sheet

EXHIBIT C……………………………..4TH Amended Complaint 98-11457-CA

EXHIBIT D………………………………Attorney Defendants/Trust Records with
                                      Financial spreadsheet of Plaintiff Bradley's
                                      Payments documented by date and check #

EXHIBIT E……………………………….Court Order Re-Setting Case for Jury Trial

EXHIBIT F……………………………….Florida Crash Report March 10, 2005 and
                                      Driver's Record for Defendant Robert Bruce
                                      Miller

EXHIBIT G………………………………Order of Court denying summary Judgment
                                      Count I and II with Defendant's Motion on
                                      All issues of Counts I, II, III

# WORK SAMPLE

# NON-CONFIDENTIAL

# NON-PRIVELEGED

# MATTER OF PUBLIC RECORD

# FORENSIC EVALUATION FOR THE COURT
# PURSUANT TO FLA. STATUE 916

*Bradley*

## IN THE SEVENTEENTH JUDICIAL CIRCUIT COURT
## IN AND FOR BROWARD COUNTY, FLORIDA

### CASE NO:00-20015CF10A

STATE OF FLORIDA
Plaintiff

*NON-CONFIDENTIAL*

V.

*NON-PRIVELEGED*

KEVIN LEXIUS
Defendant

*MATTER OF PUBLIC RECORD*

_____/

### NOTICE OF FILING
### DEPARTMENT OF CHILDREN & FAMLIES REPORT OF
### COMPETENCY TO STAND TRIAL
### MENTAL RETARDATION OR AUTISM REPORT

---

**NAME;       KEVIN LEXIUS**
**DOB;        12/29/1983**
**REFERRAL;  JUDGE GARDINER**
**DATE INTERVIEWED;   8/27/03**
**INTERVIEWER;   Theresa Bradley, MA Psychological Specialist**

---

**SOURCES OF DATA**; Personal interview with Defendant utilizing "Trial Competency Instrument" from Florida Developmental Disabilities Council and Developmental Services Program Office State of Florida; interview of Defendants attorney/public defender; indictment and police report and Weschler Adult Intelligence Scale-III (WAIS-III).

**REFERRAL AND BACKGROUND INFORMATION**; Mr. Lexius was referred to this evaluator pursuant to Order Appointing Experts to Determine Retardation or Autism August 13, 2003 Judge Gardiner Broward Circuit Court Case 00-20015CF10A; 02-01017CF10A.

## MENTAL STATUS

Mr. Lexius could not communicate effectively throughout this interview and kept holding his head or rubbing his forehead as if in pain. His affect was blunted, confused, disoriented. In particular when asked, he stated "that his head was hurting him. He was unable to provide adequate or any answers to a mini mental status examination such as (1) Where are you? Answer – don't know. (2) What month is it? Answer – don't know. (3) What year is it? Answer – don't know (4) Why are you here? Answer – don't know. (5) Who is the President of the United States? Answer -- don't know. Can you repeat these numbers after me ..762 ..? Answer – shrug and silence with head rubbing. (6) Do you have brothers and sisters? Answer – don't know.

Mr. Lexius appeared to fall within the moderate to severe range of mental retardation with significant problems as to either recent or remote memory and at several points during the interview rubbed his head in emotional distress.

## UNDERSTANDING OF LEGAL SITUATION

Mr. Lexius was unable to answer any question with a modicum of comprehension of any items on the Competency to Stand Trial, therefore the test was discontinued and the defendant released as the testing situation was causing him severe distress and agitation. Except for head rubbing, shrugs and a frequent "I don't knows" Mr. Lexius provided no other meaningful information to this examiner, however, his conduct is not attributable to either faking or malingering based upon his disheveled, disoriented and confused appearance.

## CONCLUSIONS CONCERNING COMPETENCY TO STAND TRIAL

Mr. Lexius is not competent to stand trial at this time and does not appear that he will be able to be brought to competency in the future due to the assessment that he falls within the severe to profound range of mental retardation and possible mental illness.

## PSYCHOLOGICAL REPORT CONCERNING INTELLIGENCE/MENTAL RETARDATION

On May 30, 2002 and June 10, 2002 Mr. Lexius was evaluated for his intelligence and/or mental retardation by both Barton Jones, Ph.D. and Leslie N. Alker, MS. With the Weschler Adult Intelligence Scale-III (WAIS-III) and obtained the following scores:

| | |
|---|---|
| **VERBAL IQ** | **56** |
| **PERFORMANCE IQ** | **49** |
| **FULL SCALE IQ** | **48** |

Therefore, Mr. Lexius falls meets the criteria for DSM-IV 318.0 Moderate Mental Retardation. A complete report of these evaluations is included herein as Exhibit A.


### COMMENTS, CONCLUSIONS AND RECOMMENDATIONS

1. **Defendant is not competent to stand trial and will likely not be brought to competency with training.**

2. **Defendant meets the criteria of Mental Retardation DSM-IV 318.0 Moderate Mental Retardation.**

3. **Defendant has reported to previous examiners that he may be dangerous to**
   *ATTEMPTED*
   **Himself by suicide and has a previous report of dangerous to others – See Exhibit A herein.**

4. **It is this examiner's impression that Mr. Lexius is under severe emotional distress due to his incarceration and pending legal matters which has caused deterioration in his current mental capacities that appear to have worsened since he was previously tested by other professionals in May and June 2002. On the basis of the foregoing, this examiner recommends that Mr. Lexius be provided treatment by the Psychiatric Mental Health Providers assigned to correctional and detention facilities.**

**RESPECTFULLY SUBMITTED,**

**Theresa Bradley, MA**
Psychological Specialist
Department of Children & Families
District 10 Developmental Disabilities
1400 West Commercial Blvd. Suite 185
Ft. Lauderdale, FL 33309



FLORIDA DEPARTMENT OF
# CHILDREN
## & FAMILIES

Jeb Bush
Governor

Jerry Regier
Secretary

Department Of Developmental Disabilities

**(954) 267-2000  FAX 267-2036**

## IN THE SEVENTEENTH JUDICIAL CIRCUIT COURT
## IN AND FOR BROWARD COUNTY, FLORIDA

### CASE NO 03-01027CF10A

**STATE OF FLORIDA**
   **Plaintiff**

V.

**CHAD GOSIER**
   **Defendant**

_____/

*NON-PRIVELEGUED*
*NON-CONFIDENTIAL*
*MATTER OF PUBLIC RECORD*

## NOTICE OF FILING
## DEPARTMENT OF CHILDREN & FAMILIES REPORT OF
## COMPETENCY TO STAND TRIAL
## MENTAL RETARDATION OR AUTISM REPORT

| | |
|---|---|
| **NAME:** | **CHAD GOSIER** |
| **CIS NO:** | **Unknown by this Examiner** |
| **DOB:** | **03/03/1972** |
| **AGE:** | **31 years of age** |
| **REFERRAL:** | **JUDGE MURPHY** |
| **DATE INTERVIEWED:** | **October 2, 2003** |
| **DATE OF REPORT:** | **October 2, 2003** |
| **INTERVIEWER:** | **Theresa Bradley, MA Psychological Specialist** |

Developmental Disabilities-District Ten
1400 W. Commercial Boulevard, Suite 185, Ft. Lauderdale, Florida 33309

*The Department of Children and Families is committed to working in partnership with local communities to ensure safety, well-being and self-sufficiency for the people we serve.*

**SOURCES OF DATA**; Personal interview with Defendant utilizing "Trial Competency Instrument" from Florida Developmental Disabilities Council and Developmental Services Program Office State of Florida, speaking with and reviewing documents from Defendants attorney/public defender; indictment and police report.

**REFERRAL AND BACKGROUND INFORMATION**; Defendant was referred to this evaluator pursuant to Order Appointing Experts to Determine Retardation or Autism Broward Circuit Court Date September 4, 2003 Judge John Murphy, III.

**MENTAL STATUS** Defendant communicated effectively throughout this interview and did not hesitate to answer questions. His affect was calm, respectful and focused. He understands the level of seriousness of these matters and is actively engaged in the judicial process. He states that he is learning a great deal, has been seen by a Psychiatrist who is prescribing three medications and that the matter has assisted him greatly in handling previous anxiety. Defendant was oriented as to date, time, place, location and the reasons for the ongoing proceedings.

## COMPETENCY TO STAND TRIAL CONCLUSIONS

In summarizing his performance in connection with the six factors, the Defendant's responses are acceptable. Defendant has no difficulty with respect to appreciating the consequences of conviction and is appropriate scared if he is sent to prison. He appropriately described the meaning of terms, understanding of criminal offenses and conduct in the Courtroom. He described his attorney and indicated a trust and respect that she was trying to help and protect him. His attorney should clarify his understanding of the concept of "plea bargaining" "bailiff" and "court reporter." Defendant is correct in his assessment of the seriousness and the consequences of the charges and the conviction. He explained the circumstances of the charges of assault & battery and described the situation as one of protecting himself from possible harm with a "pointed metal object" by the other party. Based upon this realization and potential loss of his freedom he has expressed that he will

2

report the truth to the Court and understands that he will trust his attorney to explain the circumstances and to communicate with the Court on his behalf as he explained that "he gets tongue tied and no one can understand him."

It is this examiner's clinical impression that Defendant is competent to stand trial for the offense as stated it by the Circuit Court of the Seventeenth Judicial Circuit.

## PSYCHOLOGICAL REPORT CONCERNING INTELLIGENCE/MENTAL RETARDATION

Defendant was tested by the Department of Children & Familesr with the Wechsler Adult Intelligence Scale III (WAIS-III). **The test results indicate a Full Scale IQ Score of 64; therefore, Defendant falls within the Mild Range of Mental Retardation DSM-IV-TR 317.0.**

### MITIGATING CIRCUMSTANCES – Psychiatric Diagnosis and Treatment

Based upon reports by the Defendant he is currently being treated by a Psychiatrist with three medications, including Thorazine (generally prescribed as anti-psychotic psychotropic medication.) These issues should be considered as mitigating circumstances at the time of the charges. The Defendant reports that all information concerning Defendant's Psychiatric Diagnosis and Treatment has been provided to the Office of the Public Defender.

### SUMMARY OF FINDINGS

1. Defendant meets the criteria for Mild Mental Retardation (Full Scale IQ 64. as stated in Florida Statute 393.063 (42)based upon the Department evaluation of Leslie Alker, M.S and review by this examiner.

2. There is no diagnosis of Autism, and Defendant does not display the behavioral characteristics of autism.

report the truth to the Court and understands that he will trust his attorney to explain the circumstances and to communicate with the Court on his behalf as he explained that "he gets tongue tied and no one can understand him."

It is this examiner's clinical impression that Defendant is competent to stand trial for the offense as stated in by the Circuit Court of the Seventeenth Judicial Circuit.

## PSYCHOLOGICAL REPORT CONCERNING
## INTELLIGENCE/MENTAL RETARDATION

Defendant was tested by the Department of Children & Familesr with the Wechsler Adult Intelligence Scale III (WAIS-III). **The test results indicate a Full Scale IQ Score of 64; therefore, Defendant falls within the Mild Range of Mental Retardation DSM-IV-TR 317.0.**

### MITIGATING CIRCUMSTANCES – Psychiatric Diagnosis and Treatment

Based upon reports by the Defendant he is currently being treated by a Psychiatrist with three medications, including Thorazine (generally prescribed as anti-psychotic psychotropic medication. These issues should be considered as mitigating circumstances at the time of the charges. The Defendant reports that all information concerning Defendant's Psychiatric Diagnosis and Treatment has been provided to the Office of the Public Defender.

### SUMMARY OF FINDINGS

1. **Defendant meets the criteria for Mild Mental Retardation (Full Scale IQ 64. as stated in Florida Statute 393.063 (42)based upon the Department evaluation of Leslie Alker, M.S and review by this examiner.**

2. **There is no diagnosis of Autism, and Defendant does not display the behavioral characteristics of autism.**

3. **On October 5, 2001, the Defendant was made eligible for services through the Program Office of Developmental Disabilities under the category of Mild Mental Retardation, DSM-IV-TR 317.0.**

4. **Defendant is currently competent to stand trial based upon this examiner's evaluation as set forth herein pursuant Trial Competency Instrument administered by this examiner October 2, 2003.**

5. **Defendant does not appear to represent a danger to the welfare of others or of his own based upon this examiner's evaluations and interview and does not meet the criteria for involuntary hospitalization.**

I, Theresa Bradley, M.A., Psychological Specialist, Department of Children & Families, certify that I personally conducted this evaluation and prepared this report and all conclusions reflected are those of this expert and not of any third party. I further certify that this evaluation was performed in a manner consistent with Chapter 49, Florida Statutes, as well as with rules and regulations of Florida Rules of Criminal Procedure promulgated thereto.

I appreciate this opportunity to serve the Court. If I may be of any further assistance in this or another case, please do not hesitate to contact me.

**RESPECTFULLY SUBMITTED,**

*Theresa B. Bradley, MA*

**Psychological Specialist**

Department of Children & Families
District 10 Developmental Disabilities
1400 West Commercial Blvd. Suite 185
Ft. Lauderdale, FL 33309

Cc: Judge Murphy, Court Projects, Public Defender, State Attorney

4

IN THE FIFTEENTH JUDICIAL CIRCUIT COURT IN AND FOR
PALM BEACH COUNTY, FL
CASE NO. ▮▮▮▮▮▮

ER

Petitioner

*NON-PRIVELEDGED*
*NON-CONFIDENTIAL*
*MATTER OF PUBLIC*
*RECORD*

v.



Respondent

_____/

## CUSTODY EVALUATION REPORT
## AMENDED RECOMMENDATIONS

### AMENDED RECOMMENDATIONS

1. Emergency Custody Hearing with the Court on the basis of children's reports - See Exhibit A and B of initial Custody Evaluation & Report.

2. Lisa▮▮▮▮ should have Shared Parental Responsibility with the designation as the children's primary residential custodial parent with the suspension of her child support obligations and child support being paid to her by the father.

3. After completion of domestic violence and child development, including discipline and parenting classes at a local public agency or community college and graduation; and further investigation by this Court, this Investigator recommends that the Father be granted Secondary Residential Custody of Danielle and Bryce with a 50/50 co-parenting plan.

4. The parties (Noel ▮▮▮▮ and Lisa ▮▮▮▮) read "Mom's House, Dad's House" written by Isolina Ricci, Ph.D. Licensed Family Therapist, Educator & Mediator now Heads the Statewide office of Family Court Services for the State of California Judicial Branch. ISBN # 0 - 684-83078-7

5. The parties consider individual Psychiatric (M.D.) or Psychological ( Ph.D.) counseling and therapy at either a public agency or private practice.

Respectfully submitted,

Theresa Bradley, MA

8560 Beacon Hill Road Palm Beach Gardens, FL 33410 Phone; 561-694-0633

7100-39 - Airway DR PMB#159
Palm Beach Gardens FL 33418



## BRADLEY, THERESA LEACH vs MILLER, ROBERT BRUCE
* Click on BOOK/PAGE of a particular docket to see the image if it is available *

| Case Number (LOCAL): | | 1998-11457-CA-01 | | Filing Date: 5/19/1998 |
|---|---|---|---|---|
| Case Number (STATE): 13-1998-CA-011457-0000-01 | | | | Dockets Retrieved: 764 |
| | | | | Judicial Section: 27 |

| Date | Book/Page | Docket Entry | Comments |
|---|---|---|---|
| 08/06/04 | | CERTIFIED COPY OF: | PETITION FOR REVIEW IS DISMISSED FROM SUPREME COURT |
| 01/13/04 | | TEXT | SUPREME COURT OF FLORIDA LETTER |
| 08/11/03 | | MANDATE FROM APPEALS COURT | DN01 AFFIRMED |
| 08/11/03 | | NOTICE OF FILING: | INDEPENDENT ACTION FRAUD ON THE COURT, ETC. |
| 07/24/03 | | CERTIFIED COPY OF: | D.C.A. ORD. |
| 04/30/03 | | TEXT | RENEWED AND ON GOING MTN FOR RECUSAL OF JUDGE DUE |
| 04/22/03 | | MOTION: | FOR DISQUALIFICATION OF JUDGE |
| 04/08/03 | | NOTICE OF FILING: | 4TH MTN FRO RECUSAL OF JUDGE |
| 04/08/03 | | NOTICE OF FILING: | AMENDED PETITION FOR WRIT OF MANDAMUS |
| 03/19/03 | | TEXT | 2ND-ADDENDUM TO COMPLAINT |
| 03/19/03 | | TEXT | 2ND-MTN FOR RECONSIDERATION TO VACATE SUM JUDGMENT |
| 03/19/03 | | TEXT | ADDENDUM TO COMPLAINT |
| 03/13/03 | | MOTION TO STRIKE | |
| 03/10/03 | | MOTION: | FOR RECONSIDERATION & REVERSAL OF FINAL SUMMARY JUDGMENT |
| 03/07/03 | | MOTION: | FOR RECONSIDERATION AND REVERSAL |
| 03/03/03 | | NOTICE OF FILING: | TRANSCRIPTS |
| 03/03/03 | | TRANSCRIPT OF PROCEEDINGS TAKEN | 01/29/2003 TAKEN |
| 02/27/03 | | NOTICE OF FILING: | COMPLAINT AND CHARGE OF VIOLATIONS OF CANONS OF JUDICL |
| 02/26/03 | | MOTION: | TO VACATE OR SET ASIDE JUDGMENT ENTERED 1-29-03 |
| 02/26/03 | | NOTICE OF FILING: | ADDENDUM TO MTN TO VACATE JUDGMENT ENTERED 1-29-03 |
| 02/26/03 | | ORDER: | DENYING MTN TO VAC. OR SET |

/

| | | | ASIDE JUDG ENTERED 1-29-03 |
|---|---|---|---|
| 02/24/03 | | NOTICE: | OF FILING ADDENDUM TO MTN TO VACATE JUDGMENT |
| 02/24/03 | | PETITION: | FOR SRIT OF MANDAMUS |
| 02/18/03 | 21012 / 3846 Pages: 4 | FINAL JUDGMENT | J $ 0.00 BK:21012 PG:3846 DN01 DN02 DN03 |
| 02/18/03 | | ORDER: | DENYING PLT'S AMENDED RENEWED MTN FOR RECUSAL |
| 02/18/03 | | TEXT | AMENDED RENEWED MTN FOR RECUSAL AND DISQUALIFICATN/JUG |
| 02/14/03 | | LETTER OF CORRESPONDENCE | 2-10-03, FRM: THERESA BRADLEY, TO: JUDGE COHEN-LANDO |
| 02/14/03 | | TEXT | AMENDED RENEWED MTN FOR RECUSAL &DISQUALIFICTN/JUDGE |
| 02/13/03 | 21032 / 699 Pages: 1 | NOTICE OF APPEAL | BK:21032 PG:0699 |
| 02/11/03 | | ORDER: | DENYING MTN FOR RELIEF FROM JUDGMENT |
| 02/06/03 | 20977 / 2465 Pages: 1 | COURT ORDER | BK:20977 PG:2465 DENYING MOTION TO VACATE ETC. |
| 02/06/03 | | MOTION TO TRANSFER | |
| 02/06/03 | | MOTION: | FOR RECUSAL AND DISQUALIFICATION OF JUDGE |
| 02/06/03 | | MOTION: | FOR RELIEF FROM JUDGMENT ENTERED 1-29-2003 |
| 02/06/03 | | MOTION: | TO VACATE AND FOR RELIEF FROM JUDGMENT |
| 02/06/03 | | ORDER: | DENYING PLTF'S MTN FOR RECUSAL & DISQUALIFICATION |
| 02/06/03 | | ORDER: | DENYING PLTF'S RENEWED MTN FOR RELIEF FROM JUDGMENT |
| 02/06/03 | | TEXT | AMENDED MOTION FOR ARREST OF JUDGMENT |
| 02/04/03 | | MOTION: | FOR ARREST OF JUDGMENT |
| 02/03/03 | | MOTION TO STRIKE | |
| 02/03/03 | | MOTION TO TRANSFER | |
| 02/03/03 | | MOTION: | FOR RECUSAL AND DISQUALIFICATION OF JUDGE |
| 02/03/03 | | MOTION: | FOR REINSTATEMENT OF ISSUES WITH MEMO OF LAW |
| 02/03/03 | | MOTION: | TO VACATE AND FOR RELIEF |
| 02/03/03 | 21012 / 2773 Pages: 2 | NOTICE OF APPEAL | BK:21012 PG:2773 |
| 02/03/03 | | TEXT | PLT'S RENEWED MTN FOR RELIEF |

2

| | | |
|---|---|---|
| 02/03/03 | TEXT | RENEWED MTN FOR PUNITIVE AND NOMINAL DAMAGES |
| 02/03/03 | TEXT | SECOND MTN FOR PUNITIVE AND NOMINAL DAMAGES |
| 01/30/03 | OBJECTION: | TO SUBPOENAS & MTN FOR PROTECTIVE ORDER |
| 01/29/03 | HEARING INFORMATION SHEET | |
| 01/28/03 | NOTICE OF FILING: | REQUESTED JURY INSTRUCTIONS & VERDICT FORM |
| 01/28/03 | NOTICE OF HRG SPECIAL APPT | 01/29/2003 : 10M00 A |
| 01/23/03 | MOTION: | FOR REINSTATEMENT OF ISSUES W/MEMORANDUM OF LAW |
| 01/23/03 | MOTION: | TO CHIEF JUDGE OF CIRCUIT, TRIAL JUDGE & FLORIDA SUPREME |
| 01/23/03 | NOTICE OF UNAVAILABILITY/ABSENCE | |
| 01/17/03 | NOTICE OF TAKING DEPOSITION | |
| 01/16/03 | MOTION: | FOR STATUS CONFERENCE |
| 01/14/03 | ORDER: | GRANTING MTN TO QUASH |
| 01/13/03 | NOTICE OF TAKING DEPOSITION | |
| 01/09/03 | AFFIDAVIT OF: | HOWARD A. TESCHER |
| 01/09/03 | NOTICE: | OF OBJECTION TO ADDITIONAL EXHIBITS FOR TRIAL |
| 01/09/03 | TEXT | FOURTH MTN FOR SUMM JUDG AND MEMORANDUM OF LAW |
| 01/03/03 | TEXT | AMENDED SECOND MTN FOR PUNITIVE AND NOMINAL DAMAGES |
| 12/31/02 | TEXT | CERTIFIED COPY FROM SUPREME COURT |
| 12/30/02 | MEMORANDUM OF LAW | |
| 12/24/02 | TEXT | DEFENDANT'S EXHIBIT LIST FOR TRIAL |
| 12/24/02 | TEXT | DEFENDANT'S FACT WITNESS LIST FOR TRIAL |
| 12/16/02 | MEMORANDUM OF LAW | |
| 12/16/02 | MOTION TO STRIKE | |
| 12/06/02 | TEXT | DEF'S DISCLOSURE OF EXPERT WITNESSES |
| 12/05/02 | MOTION: | FOR DESIGNATION AS SECURITIES |
| 11/29/02 | TEXT | AMENDED PETITION FOR WRIT OF |

| | | MANDAMUS |
|---|---|---|
| 11/12/02 | TEXT | ADDENDUM TO PLTF'S PRE-TRIAL MTN FOR QUALIFICATION |
| 11/08/02 | CERTIFIED COPY OF: | FROM SUPREME COURT OF FLORIDA |
| 11/07/02 | NOTICE: | OF THIRD PARTY SUBPOENA |
| 10/28/02 | MOTION: | FOR RECONSIDERATION AND RELIEF FROM ORDER GRANTING IN PA |
| 10/24/02 | LETTER OF CORRESPONDENCE | OCTOBER 18, 2002 TO JUDGE SIEGEL FROM THERESA BRADLEY |
| 10/24/02 | MOTION: | FOR RECONSIDERATION |
| 10/24/02 | MOTION: | FOR RECONSIDERATION AND RELIEF FROM ORDER GRANTING PART |
| 10/24/02 | TEXT | ACKNOWLEDGMENT OF NEW CASE |
| 10/24/02 | TEXT | PLNTFF.'S CORRECTED & AMENDED MOTION FOR RELIEF |
| 10/23/02 | MOTION: | FOIR DESIGNATION OF EXPERT |
| 10/23/02 | MOTION: | FOR DESIGNATION OF SECURITIES & FINANCIAL EXPERT |
| 10/23/02 | MOTION: | FOR RECONSIDER. & RELIEF FROM ORDR GRANTED/DENIEDINPART |
| 10/21/02 | TEXT | PLAINTIFF'S PRE-TRIAL MTN FOR DESIGNATION FO SEC. |
| 10/21/02 | TEXT | PLAINTIFF'S PRE-TRIAL MTN FOR DESIGNATION OF EXPERT |
| 10/21/02 | TEXT | PLT'S AMENDED MEMO OF LAW |
| 10/18/02  20735 / 3021  Pages: 3 | COURT ORDER | BK:20735 PG:3021 GRANTED/DENIED IN PART MTN FOR SUMMMARY JUDGMENT |
| 10/10/02 | MOTION TO STRIKE | |
| 10/03/02 | NOTICE OF HRG SPECIAL APPT | 10/10/2002 : 01M30 P |
| 10/03/02 | RESPONSE: | TO DEF'S MTN FOR SUMMARY JUDGMENT |
| 10/02/02 | MOTION FOR SUMMARY JUDGMENT | |
| 10/02/02 | NOTICE OF FILING: | EXCERPTS OF DEPOSITION - FILED IN COURT FILE |
| 09/27/02 | MOTION FOR PROTECTIVE ORDER | |
| 09/27/02 | NOTICE OF FILING: | AMENDED EXCERPTS OF DEPOSITION TRANSCRIPTS |

| 09/26/02 | NOTICE: | OF CANCELLATION OF DEPO |
|---|---|---|
| 09/23/02 | ORDER VALIDATING WITNESS SUBPOENAS | |
| 09/16/02 | NOTICE OF HRG SPECIAL APPT | 10/10/2002 : 01M30 P |
| 09/12/02 | ORDER VALIDATING WITNESS SUBPOENAS | |
| 09/11/02 | ORDER DENYING PROTECTIVE ORDER | |
| 09/04/02 | ORDER SETTING JURY TRIAL | 02/03/2003 : 09M00 A |
| 09/03/02 | RESPONSE: | TO MTN FOR PROTECTIVE ORDER |
| 08/30/02 | NOTICE OF HEARING- | MOTIONS 09/11/2002 : 09M00 A |
| 08/30/02 | NOTICE OF TAKING DEPOSITION | |
| 08/30/02 | TEXT | DEF. MOTION FOR PROTECTIVE ORDER |
| 08/29/02 | TEXT | THIRD MTN FOR SUMM JUDG, W/ATTCH. EXHBTS FILED W/DEPOS |
| 08/20/02 | MOTION: | TO SET CASE FOR JURY TRIAL |
| 08/20/02 | NOTICE OF HEARING- | MOTIONS 08/27/2002 : 09M00 A |
| 08/16/02 | NOTICE OF HEARING- | MOTIONS 08/27/2002 : 09M00 A |
| 08/16/02 | TEXT | FAX COPY, MOTION TO SET CASE FOR JURY TRIAL |
| 05/15/02 | LETTER OF CORRESPONDENCE | -COPY- DATED 3/9/00 TO FROM THRESA BRADLEY |
| 05/15/02 | LETTER OF CORRESPONDENCE | 2/16/02 TO JUDGE FRIEDMAN FROM THERESA BRADLEY |
| 05/15/02 | MEMORANDUM OF LAW | |
| 05/15/02 | MOTION FOR CONTEMPT | AND FINANCIAL SANCTIONS |
| 05/15/02 | MOTION TO COMPEL | |
| 05/15/02 | MOTION: | FOR RECONSIDERATION OF HEARING |
| 05/15/02 | RESPONSE: | TO DENY MOTIONS TO DISMISS |
| 05/15/02 | RESPONSE: | TO MOTION TO DISMISS, FOR PROTECTIVE ORDER. ETC. |
| 05/15/02 | TEXT | 2ND MOTION TO TRANSFER AND CONSOLIDATE |
| 05/15/02 | TEXT | FOURTH AMENDED COMPLAINT W/ATTCH. EXHBTS FILED W/DEPOS |
| 04/12/02 | ORDER: | ON PLTF'S MTN TOREQUIRE DEF'S NOTIFICATION TO COURT ETC |
| 04/09/02 | SUBPOENA RETURNED | |
| 04/05/02 | NOTICE: | AS TO ROBERT B MILLER CAPACITY |

| | | TO APPEAR AT TRIAL |
|---|---|---|
| 04/01/02 | TEXT | INDEX OF TRIAL EXHIBITS MARKED BY CT'S CLERK ON 3/11/02 |
| 03/22/02 | NOTICE OF PRODUCTION | |
| 03/21/02 | MOTION: | TO REQUIRE DEFT'S NOTIFICATION TO COURT |
| 03/20/02 | MOTION: | TO REQUIRE DEF. NOTIFICATION, ETC. |
| 03/20/02 | NOTICE OF HEARING- | MOTIONS 04/02/2002 : 09M00 A |
| 03/20/02 | NOTICE OF HEARING- | MOTIONS 04/02/2002 : 09M00 A |
| 03/20/02 | TEXT | PLT. MOTION TO REQUIRE DEF. NOTIFICATION |
| 03/19/02 | SUBPOENA RETURNED | |
| 03/18/02 | SUBPOENA RETURNED | |
| 03/13/02 | CERTIFIED COPY OF: | FROM THIRD DISTRICT COURT OF APPEAL |
| 03/13/02 | SUBPOENA RETURNED | |
| 03/12/02 | TEXT | DEFT'S FIFTH EXHIBIT LIST FOR TRIAL |
| 03/11/02 | REQUEST: | FOIR COURT TO TAKE JUDICIAL NOTICE |
| 03/08/02 | MOTION: | FOR PARTIAL PROTECTIVE ORDER |
| 03/08/02 | MOTION: | IN LIMINE OF DEFENDANTS |
| 03/08/02 | SUBPOENA RETURNED | |
| 03/08/02 | TEXT | 6DEF'S INDEX TO DEPOSITION EXHIBITS |
| 03/08/02 | TEXT | DEF'S FOURTH AMENDED EXHIBIT LIST FOR TRIAL |
| 03/04/02 | NOTICE OF HEARING- | MOTIONS 03/08/2002 : 09M00 A |
| 03/04/02 | NOTICE OF HEARING- | MOTIONS 03/07/2002 : 09M00 A |
| 03/04/02 | OBJECTION: | TO ISSUANCE OF 3RD-PARTY SUBPOENA |
| 03/01/02 | MOTION: | FOR MODIFICATION OF ORDER RE-SETTING TRIAL |
| 03/01/02 | NOTICE OF TAKING DEPOSITION | |
| 03/01/02 | SUBPOENA RETURNED | |
| 02/28/02 | NOTICE OF HEARING- | MOTIONS 03/07/2002 : 09M00 A |
| 02/28/02 | TEXT | DEFT'S THIRD AMENDED EXHIBIT LIST FOR TRIAL |
| 02/27/02 | MOTION FOR PROTECTIVE ORDER | |
| 02/27/02 | NOTICE OF HEARING- | MOTIONS 03/07/2002 : 09M00 A |

| 02/27/02 | NOTICE: | OF SUBPOENA |
|----------|---------|-------------|
| 02/27/02 | SUBPOENA RETURNED | |
| 02/26/02 | NOTICE OF FILING: | SUPPLEMENTAL AUTHORITY IN SUPPORT OF THIS COURT'S |
| 02/26/02 | NOTICE OF HEARING- | MOTIONS 03/07/2002 : 09M00 A |
| 02/26/02 | TEXT | FAX COPY, OBJECTION OF MHM SERVICES TO THIRD PARTY, ETC. |
| 02/22/02 | MOTION: | FOR SUPPRESSION |
| 02/20/02 | TEXT | THIRD AMENDED WITNESS LIST FOR TRIAL |
| 02/19/02 | NOTICE OF TAKING DEPOSITION | |
| 02/15/02 | TEXT | 2ND-AMENDED WITNESS LIST OF DEFENDANTS |
| 02/15/02 | TEXT | AMENDED EXHIBIT LIST OF DEFENDANTS |
| 02/15/02 | TEXT | DEFT'S SECOND AMENDED EXHIBIT LIST FOR TRIAL |
| 02/14/02 | NOTICE: | OF CANCELLATION OF DEPOSITION |
| 02/14/02 | NOTICE: | OF SUBPOENA FOR TRIAL |
| 02/14/02 | SUBPOENA RETURNED | |
| 02/13/02 | NOTICE OF FILING: | QUESTIONNAIRE FOR JURORS |
| 02/13/02 | SUBPOENA RETURNED | |
| 02/08/02 | NOTICE OF PRODUCTION | |
| 02/08/02 | TEXT | DEF'S SUPPL. REQUEST FOR PRODUCTION |
| 02/07/02 | NOTICE OF PRODUCTION | |
| 02/07/02 | NOTICE OF TAKING DEPOSITION | |
| 02/07/02 | NOTICE: | OF ADDITIONAL WITNESS AND MTN TO AMEND PRETRIAL ORDER |
| 02/07/02 | SUBPOENA RETURNED | |
| 02/05/02 | ORDER SETTING JURY TRIAL | 03/11/2002 : 09M00 A |
| 02/01/02 | RESPONSE: | TO PLT'S SECOND MOTION FOR PUNITIVE DAMAGES COUNT I & II |
| 01/31/02 | NOTICE OF PRODUCTION | |
| 01/29/02 | TEXT | DEFT'S BRIEF STATEMENT REGARDING REMAINING ISSUES |
| 01/23/02 | MEMORANDUM OF LAW | |
| 01/17/02 | MEMORANDUM OF LAW | |
| 01/14/02 | NOTICE OF PRODUCTION | |
| 01/14/02 | NOTICE: | OF STATUS CONFERENCE: WED. |

|  |  |  | 01/30/02 @14:15 |
|---|---|---|---|
| 01/09/02 |  | LETTER OF CORRESPONDENCE | TO MS. BRADLEY ON 01-04-2002 |
| 01/09/02 |  | **MEMORANDUM OF LAW** |  |
| 01/09/02 |  | MOTION FOR PROTECTIVE ORDER |  |
| 01/09/02 |  | **OBJECTION:** | **TO NON-PARTY PRODUCTION** |
| 01/09/02 |  | ORDER SETTING JURY TRIAL | 01/03/2002 : 08M45 A |
| 01/09/02 |  | **TEXT** | **2ND MTN FOR PUNITIVE DAMAGES COUNT I AND II** |
| 01/08/02 |  | ENTERED OR DUPLICATED IN ERROR | NAPP |
| 01/08/02 |  | **MOTION:** | **TO SET SPECIAL SET TRIAL CALENDAR** |
| 12/26/01 |  | MOTION: | TO SET CASE FOR TRIAL |
| 12/26/01 |  | **NOTICE OF HEARING-** | MOTIONS 01/03/2002 : 09M00 A |
| 12/21/01 |  | NOTICE OF HEARING- | MOTIONS 01/03/2002 : 09M00 A |
| 12/03/01 |  | **MOTION:** | **TO SET CASE FOR TRIAL ON THE COURT'S SPECIAL SET** |
| 12/03/01 |  | **TEXT** | NOTIFICATION OF FILING EXHIBIT LIST FOR TRIAL |
| 11/28/01 |  | **MOTION:** | **TO SET CASE FOR TRIAL** |
| 11/26/01 | 20031 / 3718 Pages: 2 | COURT ORDER | BK:20031 PG:3718 GRANTING AMD MTN FOR PARTIAL SUMMARY JUDGMENT |
| 11/26/01 |  | **NOTICE OF ANSWER TO INTERROGATORIES** |  |
| 11/26/01 |  | ORDER: | DENYING MOTION FOR RECONSIDERATION OF COUNT III |
| 11/26/01 |  | **ORDER:** | **DENYING MOTION TO ASSERT CLAIM FOR PUNITVE DAMAGES** |
| 11/26/01 |  | ORDER: | DENYING MOTIONS FOR FINANCIAL SANCTIONS ETC. |
| 11/26/01 |  | **ORDER:** | **DENYING MTN TO SET ASIDE ORDR OR MTN TO SET COSE FOR TRL** |
| 11/19/01 |  | RESPONSE: | TO DEF'S MTN FOR BETTER ANSWER TO INTERROGATORIES |
| 11/16/01 |  | **NOTICE OF ANSWER TO INTERROGATORIES** |  |
| 11/16/01 |  | NOTICE OF FILING: | EXHIBIT LIST OF PLAINTIFF |
| 11/13/01 |  | **MOTION FOR SANCTIONS** |  |
| 11/13/01 |  | MOTION TO DISMISS | COMPLAINT |
| 11/13/01 |  | **NOTICE OF ANSWER TO INTERROGATORIES** |  |



| | | |
|---|---|---|
| 11/09/01 | MOTION TO STRIKE | |
| 11/08/01 | MOTION FOR SUMMARY JUDGMENT | |
| 11/08/01 | NOTICE OF ANSWER TO INTERROGATORIES | |
| 11/08/01 | RESPONSE: | AND REQUEST TO DENY DEFS 'S 2ND MTN FOR SUMMARY JUDGMENT |
| 11/07/01 | MOTION TO COMPEL | |
| 11/07/01 | NOTICE OF HEARING- | MOTIONS 11/20/2001 : 09M15 A |
| 11/07/01 | RESPONSE: | AND REQUEST TO DENY DEF'S 2ND MTN FOR SUMM/JUDGMENT |
| 10/29/01 | NOTICE OF PRODUCTION | |
| 10/25/01 | MOTION TO COMPEL | |
| 10/25/01 | MOTION: | TO SET ASIDE ORDER |
| 10/25/01 | NOTICE OF HEARING- | MOTIONS 11/05/2001 : 03M45 P |
| 10/25/01 | NOTICE: | OF FILING EMERGENCY APPEAL |
| 10/25/01 | TEXT | REPLY TO RESPONSE TO MTN FOR SANCTIONS - PLAINTIFF |
| 10/23/01 | NOTICE OF HRG SPECIAL APPT | 11/08/2001 : 04M00 P |
| 10/23/01 | ORDER OF CONTINUANCE | : M |
| 10/23/01 | TEXT | AMENDED MTN FOR SUMM. JUDGMENT & MEMO OF LAW |
| 10/22/01 | ENTERED OR DUPLICATED IN ERROR | RESE |
| 10/22/01 | NOTICE OF HEARING- | MOTIONS 11/05/2001 : 03M45 P |
| 10/18/01 | NOTICE OF FILING: | EXECUTED APPROVAL TO MOTION TO CONTINUE, ETC. |
| 10/18/01 | TEXT | AMENDED WITNESS LIST FOR TRIAL - DEFTS |
| 10/17/01 | LETTER OF CORRESPONDENCE | 10/13/01 TO CLERK OF COURT FROM THERESA BRADLEY |
| 10/17/01 | NOTICE: | OF APPLICATION TO CLERK OF COURT FOR ISSUANCE-SUBPOENA |
| 10/16/01 | MOTION FOR SUMMARY JUDGMENT | |
| 10/15/01 | NOTICE NOT TIMELY FILED | 10/18/2001 : 09M00 A |
| 10/15/01 | NOTICE OF HEARING- | MOTIONS 11/08/2001 : 04M00 P |
| 10/11/01 | MOTION FOR CONTINUANCE | |
| 10/11/01 | MOTION FOR SUMMARY JUDGMENT | |
| 10/10/01 | NOTICE OF FILING: | COPYOF MTN CONTAINS |

| | | SIGNATURE OF JOEL PIOTRKOWSKI |
|---|---|---|
| 10/10/01 | REQUEST: | FOR EMERGENCY 20-MINUTE SPECIAL SET HEARING |
| 10/05/01 | EXHIBIT LIST | FOR TRIAL - DEFTS |
| 10/05/01 | WITNESS LIST | DN01 DN02 FOR TRIAL - DEFTS |
| 10/04/01 | RESPONSE: | AND OBJECTION TO DEFTS REQUEST TO CANCEL THIRD TRIAL DAT |
| 10/01/01 | MOTION: | TO ASSERT CLAIM FOR PUNITIVE DAMAGES |
| 10/01/01 | NOTICE OF HEARING- | MOTIONS 10/04/2001 : 09M00 A |
| 09/28/01 | NOTICE OF FILING: | ATTACHED PARTIALLY EXECUTED MTN TO CONTINUE |
| 09/26/01 | NOTICE OF HEARING- | MOTIONS 10/04/2001 : 09M00 A |
| 09/24/01 | NOTICE OF HEARING- | MOTIONS 10/02/2001 : 09M00 A |
| 09/21/01 | MOTION FOR CONTINUANCE | |
| 09/21/01 | MOTION: | FOR TEMPORARY INJUNCTION |
| 09/21/01 | NOTICE OF HEARING- | MOTIONS 10/18/2001 : 09M00 A |
| 09/21/01 | NOTICE OF HEARING- | MOTIONS 10/02/2001 : 09M00 A |
| 09/21/01 | RESPONSE: | TO MOTION FOR FINANCIAL SANCTIONS FOR FAILURE TO APPEAR |
| 09/19/01 | NOTICE OF HEARING- | MOTIONS 10/02/2001 : 09M00 A |
| 09/17/01 | TEXT | DISCLOSURE OF EXPERT WITNESSES |
| 09/13/01 | NOTICE NOT TIMELY FILED | 09/19/2001 : 09M00 A |
| 09/13/01 | NOTICE OF CHANGE OF ADDRESS | |
| 09/13/01 | NOTICE: | AS TO BRADLEY V. COREGIS INSUR. CO FILED AT FEDERALCT. |
| 09/13/01 | TEXT | ADDENDUM TO MTN FOIR FINANCIAL SANCTIONS F/FAILURE TO AP |
| 09/13/01 | TEXT | ADDENDUM TO MTN FOR FINANCIAL SANCTIONS |
| 09/05/01 | MOTION FOR SANCTIONS | |
| 09/05/01 | NOTICE OF CHANGE OF ADDRESS | |
| 09/04/01 | CANCELLATION NOTICE | 09/12/2001 : 09M00 A |
| 09/04/01 | MOTION FOR SANCTIONS | |
| 09/04/01 | NOTICE OF CHANGE OF ADDRESS | |

| | | |
|---|---|---|
| 09/04/01 | NOTICE OF NON-JURY TRIAL | : M |
| 09/04/01 | NOTICE: | EXPERT FOR TRIAL |
| 08/23/01 | MEDIATORS REPORT | |
| 08/20/01 | NOTICE OF ANSWER TO INTERROGATORIES | |
| 08/10/01 | COPY OF: | FAX HEARING NOT PROCESSED/ NOT TIMELY FILED/8-16-01. |
| 08/02/01 | MOTION: | FOR FINANCIAL SANCTIONS ABUSIVE PRE-TRIAL CONDUCT |
| 08/02/01 | MOTION: | FOR FINANCIAL SANCTIONS, ETC. |
| 08/02/01 | NOTICE: | OF AVAILABILITY PLTF'S TRIAL EXHIBITS |
| 08/02/01 | NOTICE: | OF EXPERTS FOR TRIAL - PLTF |
| 08/02/01 | TEXT | ADDENDUM TO MOTION FOR RECONSIDERATION AS TO III, ETC. |
| 08/02/01 | TEXT | SECOND MOTION FOR FINANCIAL SANCTIONS, ETC. |
| 07/31/01   19803 / 4285 Pages: 2 | COURT ORDER | BK:19803 PG:4285 GRANTING IN PART DEF'S SUMM/JUDGMENT AS COUNT III OF PLF |
| 07/27/01 | NOTICE OF HRG SPECIAL APPT | 10/10/2001 : 10M30 A |
| 07/27/01 | NOTICE OF UNAVAILABILITY/ABSENCE | |
| 07/25/01 | MOTION: | FOR RECONSIDERATION |
| 07/25/01 | TEXT | PLAINTIFF'S ADDITIONAL EXHIBITS FOR TRIAL |
| 07/25/01 | TEXT | PLAINTIFF'S ADDITIONAL WITNESSES FOR TRIAL |
| 07/17/01 | MOTION TO STRIKE | |
| 07/12/01 | TEXT | AMENDED SECOND NOTIFICATION OF TRIAL EXHIBITS |
| 07/12/01 | TEXT | PRELIMINARY EXHIBIT LIST FOR TRIAL |
| 07/11/01 | ENTERED OR DUPLICATED IN ERROR | ORDD |
| 07/11/01 | NOTICE OR STIPULATION DESIGNATING MEDIATOR | X |
| 07/11/01 | ORDER APPOINTING MEDIATOR | CHARLES TETUNIC |
| 07/09/01 | TEXT | SECOND MODIFICATION OF FILING TRIAL EXHIBITS |
| 07/06/01 | NOTICE OF CHANGE OF ADDRESS | |

//

| 06/20/01 | | TEXT | NOTIFICATION OF TEMPORARY MAIL/PHONE CHANGE |
|---|---|---|---|
| 06/14/01 | | NOTICE OF APPT OF MEDTR&CNFRNCE | 08/17/2001 : 01M30 P CHARLES N. TETUNIC |
| 06/14/01 | | NOTICE OF HRG SPECIAL APPT | 07/16/2001 : 01M30 P |
| 06/11/01 | | NOTICE OF HRG SPECIAL APPT | 07/16/2001 : 01M30 P |
| 05/11/01 | | ORDER OF REFERRAL TO GENERAL MAGISTRATE | |
| 05/11/01 | | ORDER OF REFERRAL TO MEDIATION UNIT | X |
| 05/11/01 | | ORDER SETTING JURY TRIAL | 11/12/2001 : 09M00 A |
| 04/30/01 | | MOTION: | FOR EMERGENCY HEARING TO RE-SET THIRD TIME FOR TRIAL |
| 04/19/01 | | ORD OF RECUSAL/ORD OF REASSIGN | SECTION: 27 FM:25 00136 ORDER OF RECUSAL |
| 04/19/01 | | TEXT | LETTER TO RECORDSCOPE INC/ANDREW 4/17/01 |
| 04/11/01 | | MOTION TO STRIKE | |
| 04/10/01 | | MOTION: | FOR ADDITIONAL 30 DAY STAY OF PROCEEDINGS |
| 04/09/01 | | NOTICE OF PRODUCTION | |
| 04/04/01 | | MOTION TO STRIKE | AFF. OF STANLEY BUKY & MEMO OF LAW |
| 04/03/01 | | NOTICE OF HRG SPECIAL APPT | 04/17/2001 : 07M30 A |
| 04/03/01 | | ORDER: | ON MTN FOR APPNT. OF COMMISSIONER |
| 04/02/01 | | MOTION: | FOR APPOINTMNT OF COMMISSIONER TO TAKE OUT OF STATE DEPO |
| 04/02/01 | | NOTICE OF HEARING- | MOTIONS 04/19/2001 : 08M00 A |
| 03/30/01 | | NOTICE OF HEARING- | MOTIONS 04/19/2001 : 08M00 A |
| 03/26/01 | 19563 / 4628 Pages: 4 | RECORDED DOCUMENT | BK:19563 PG:4628 NOTI OF FILING COPY ORDER DISMISSING CASE |
| 03/23/01 | | AFFIDAVIT OF: | SWORN - STANLEY BUKY |
| 03/23/01 | | MEMORANDUM OF LAW | |
| 03/23/01 | | PETITION: | FOR WRIT OF MANDAMUS |
| 03/23/01 | | RESPONSE: | TO DEF'S MTN FOR SUMMARY JUDGMENT |
| 03/23/01 | | TEXT | SUPPLEMENTAL CASES TO SUPPORT DENIAL OF SUMM/JGMT. |
| 03/22/01 | | MULTIPLE SUBPOENAS FILED | 3 |

/2

| 03/22/01 | NOTICE OF FILING: | DEFENDANT'S AFFIDAVIT OF SERVICE |
|---|---|---|
| 03/21/01 | MOTION: | TO REQUIRE PLT. TO RTD BATE STAMPED DOCUMENTS |
| 03/12/01 | SUBPOENA RETURNED | |
| 03/09/01 | MOTION FOR SANCTIONS | |
| 03/09/01 | MOTION: | FOR RECUSAL OF JUDGE |
| 03/09/01 | MOTION: | TO TRANSFER AND CONSOLIDATE CASE |
| 03/08/01 | MOTION TO STAY | |
| 03/07/01 | MOTION: | FOR RECUSAL OF JUDGE |
| 03/07/01 | MOTION: | RETRACT PLTS' MOTION TO TRANSFER &CONSOLIDATE CASE,ETC |
| 03/06/01 | MOTION: | FOR RECUSAL OF JUDGE |
| 03/06/01 | MOTION: | TO RETRACT MOTION TO TRANSFER ETC |
| 03/06/01 | NOTICE OF FILING: | PLT'S INTENT NOT TO CALL LEGAL EXPERTS AT TRIAL |
| 03/05/01 | NOTICE OF HRG SPECIAL APPT | 04/17/2001 : 07M30 A |
| 03/01/01 | OBJECTION: | TO MOTION FOR ORDER TO CONSOLIDATE ACTIONS EX. ATTACHED |
| 02/26/01 | LETTER OF CORRESPONDENCE | DATED FEB. 20 TO MR. SALAS TO MR SALAS FROM RACHEL P RAY |
| 02/23/01 | MOTION FOR SANCTIONS | |
| 02/22/01 | MOTION: | FOR ORDER TO CONSOLIDATE ACTIONS |
| 02/21/01 | ORD OF RECUSAL/ORD OF REASSIGN | SECTION: 25 FM:02 00137 ORDER OF RECUSAL |
| 02/15/01 | MOTION FOR CONTEMPT | |
| 02/15/01 | ORDER: | DENYING MTN TO QUASH SUBPOENA |
| 02/14/01 | MOTION: | FOR CONTEMPT OF COURT AND SANCTIONS |
| 02/14/01 | NOTICE: | TO THE COURT OF FLA BAR COMPLAINT AGAINST DFT'S COUNSEL |
| 02/09/01 | MOTION: | FOR EX PARTE ORDER TO CONSOLIDATE ACTIONS |
| 02/09/01 | MOTION: | FOR ORDERTO CONSOLIDATE ACTIONS |
| 02/08/01 | NOTICE OF HEARING- | MOTIONS 02/15/2001 : 09M00 A |

/3

| | | |
|---|---|---|
| 02/06/01 | NOTICE OF ANSWER TO INTERROGATORIES | |
| 02/06/01 | NOTICE OF HEARING- | MOTIONS 02/15/2001 : 09M00 A |
| 02/06/01 | TEXT | FAX COPY, PLT. MOTION TO QUASH, ETC. |
| 01/30/01 | MOTION: | FOR CONTEMPT & SANCTIONS ETC.. |
| 01/30/01 | MOTION: | FOR CONTEMPT OF COURT AND SANCTIONS |
| 01/30/01 | NOTICE OF HEARING- | MOTIONS 02/06/2001 : 09M00 A |
| 01/26/01 | NOTICE OF HEARING- | MOTIONS 02/06/2001 : 09M00 A |
| 01/26/01 | TEXT | FAX COPY MOTION FOR CONTEMPT, ETC. |
| 01/24/01 | COPY OF: | OF LETTER: 1-19-01, FRM:RACHEL P RAY, TO:THERESA LEACH |
| 01/23/01 | NOTICE: | OF DESIGNATION OF MEDIATOR |
| 01/22/01 | NOTICE OF PRODUCTION | |
| 01/19/01 | MOTION: | FOR SANCTION AND RESE AND OBJE TO NOTICE OF HEARING |
| 01/18/01 | ORDER: | ON 2ND-AMENDED MTN FOR SANCTIONS- DEFERRED |
| 01/16/01 | NOTICE: | OF DESIGNATION OF MEDIATOR |
| 01/12/01 | NOTICE HAS WRONG TIME | 02/06/2001 |
| 01/04/01 | NOTICE OR STIPULATION DESIGNATING MEDIATOR | STUART STERN |
| 01/02/01 | MOTION TO QUASH | |
| 12/29/00 | NOTICE OF CHANGE OF ADDRESS | |
| 12/26/00 | MOTION: | TO MAINTAN DATE CERTAIN FOR TRAIL & STANDARD PRE-TRIAL |
| 12/26/00 | TEXT | SECOND MOTION FOR SANCTIONS |
| 12/22/00 | NOTICE OF HRG SPECIAL APPT | 01/17/2001 : 01M30 P |
| 12/21/00 | MOTION: | TO MAINTAIN DATE CERTAIN FOR TRIAL |
| 12/20/00 | NOTICE OF FILING: | SWORN AFFIDAVIT S. BUKY, ATTY. AT LAW |
| 12/19/00 | NOTICE OF FILING: | SWORN AFF. STANLEY BUKY, ATTY. AT LAW |
| 12/19/00 | TEXT | PLTFS. EXHIBIT FOR TRIAL |
| 12/18/00 | RESPONSE: | TO MTN. FOR SUMMARY JUDGMENT, EXHIBITS FILED WITH DEPOS |
| 12/15/00 | NOTICE: | OF INDEPTENDENT MEDICAL |



/4

| | | EXAMINATION |
|---|---|---|
| 12/15/00 | OBJECTION: | TO NOTICE TO SET ACTION FOR TRIAL |
| 12/15/00 | RESPONSE: | TO MOTION FOR PRE-TRIAL |
| 12/12/00 | NOTICE OF UNAVAILABILITY/ABSENCE | |
| 12/08/00 | NOTICE OF JURY TRIAL | : M |
| 12/07/00 | MEMORANDUM OF LAW | |
| 12/07/00 | MOTION FOR SUMMARY JUDGMENT | AND MEMO OF LAW, EXHIBITS FILED WITH DEPOS |
| 12/07/00 | MOTION TO DISMISS | COMPLAINT |
| 12/07/00 | MOTION TO STRIKE | |
| 12/07/00 | NOTICE OF HRG SPECIAL APPT | 12/27/2000 : 01M30 P |
| 12/07/00 | TEXT | 2ND-AMENDED MTN FOR SANCTIONS |
| 12/07/00 | TEXT | EXHIBIT "E" |
| 12/07/00 | TEXT | EXHIBIT "Z" |
| 12/07/00 | TEXT | EXHIBITS "P" |
| 12/07/00 | TEXT | EXHIBITS "S" |
| 12/07/00 | TEXT | EXHIBITS "X" |
| 12/07/00 | TEXT | SUPP. ANSWERS TO INTERROGATORIES |
| 12/07/00 | TRANSCRIPT OF PROCEEDINGS TAKEN | 08/30/2000 FILED IN COURT FILE |
| 12/05/00 | TEXT | EXHIBITS FOR TRIAL |
| 12/01/00 | MOTION: | FOR PRE-TRIAL DISCOVERY SANCTIONS |
| 11/30/00 | NOTICE OF ANSWER TO INTERROGATORIES | |
| 11/30/00 | TEXT | SUPPLEMENTAL ANSWER TO INTERROGATORIES |
| 11/29/00 | MOTION FOR DEFAULT | |
| 11/29/00 | MOTION: | TO SET CASE FOR MEDIATIN ON DATE CERTAIN |
| 11/29/00 | NOTICE OF FILING: | REQUESTED JURY INSTRUCTIONS |
| 11/29/00 | ORDER OF REFERRAL TO MEDIATION UNIT | X |
| 11/29/00 | ORDER SETTING JURY TRIAL | 04/30/2001 : 09M00 A |
| 11/29/00 | TEXT | JOINT PRE-TRIAL STIPULATION |
| 11/29/00 | TEXT | VERDICT FORM |
| 11/28/00 | NOTICE OF ANSWER TO | |

/5

| | INTERROGATORIES | |
|---|---|---|
| 11/28/00 | NOTICE OF JURY TRIAL | : M |
| 11/27/00 | MOTION: | FOR ENTRY OF DEFAULT JUDGMENT ORDER, ETC. |
| 11/27/00 | MOTION: | TO SET CASE FOR MEDIATION ON DATE CERTAIN |
| 11/27/00 | NOTICE OF FILING: | PLAINTIFF'S REQUESTED JURY INSTRUCTIONS |
| 11/27/00 | NOTICE OF JURY TRIAL | : M |
| 11/27/00 | TEXT | JOINT PRE-TRIAL STIPULATION |
| 11/09/00 | ORDER ON MOTION TO COMPEL | |
| 11/08/00 | MOTION TO COMPEL | |
| 11/03/00 | TEXT | 2ND NOTIFICATION OF AVAILABILITY OF DOCS. |
| 10/30/00 | NOTICE: | OF AVAILABILITY OF PLTF'S DOCUMENTS REQUESTED BY DEFS. |
| 10/13/00 | NOTICE: | OF CHANGE OF MAIL/PHONE |
| 10/12/00 | NOTICE OF FILING: | REPORT OF STEPEHN HOWARD, M.D. |
| 10/10/00 | NOTICE OF FILING: | REPORT OF STEPHEN HOWARD, MD |
| 10/10/00 | NOTICE OF UNAVAILABILITY/ABSENCE | |
| 10/10/00 | NOTICE: | OF DOCUMENTS AVAILABILTY |
| 10/02/00 | NOTICE: | OF INDEPENDENT MEDICAL EXAMINATION |
| 10/02/00 | RESPONSE: | TO NOTICE OF DATE/LOCATION OF AVAILABILITY FOR IME, ETC. |
| 09/27/00 | TEXT | PLTF'S 2ND MOTION FOR FINANCIAL SANCTIONS |
| 09/26/00 | NOTICE: | SUPPLEMENTAL INTERROGATORY TO PLAINTIFF |
| 09/26/00 | RESPONSE: | TO MOTION FOR SANCTIONS |
| 09/26/00 | TEXT | SECOND MOTION FOR FINANCIAL SANTIONS, ETC |
| 09/21/00 | NOTICE OF ANSWER TO INTERROGATORIES | |
| 09/21/00 | NOTICE: | OF AVAILABILITY FOR FINAL DEPOSITION |
| 09/21/00 | NOTICE: | OF AVAILABILTY OF DOCS. FOR INSPECTION, ETC |
| 09/21/00 | NOTICE: | OF DATES/LOCATION OF |

/6

| | | |
|---|---|---|
| | | AVAILABILTY FOR FINAL DEPOSITION |
| 09/14/00 | NOTICE OF CHANGE OF ADDRESS | |
| 09/14/00 | NOTICE: | OF AVAILABILTY OF DOCUMENT |
| 09/01/00 | MOTION TO COMPEL | |
| 08/31/00 | ORDER DENYING MOTION TO DISMISS | |
| 08/31/00 | ORDER: | GRANTING MOTION TO DISPENSE WITH MEDIATION |
| 08/31/00 | ORDER: | GRANTING MTN TO REQUIRE RELEASE OF RECORDS |
| 08/31/00 | ORDER: | ON REQ. FOR ITEMIZATION OF DAMAGE ELEMENTS |
| 08/30/00 | MOTION: | FOR PRETRIAL SANCTIONS |
| 08/23/00 | COPY OF: | OF MTN FOR OMNIBUS PROTECTIVE ORDER AS FOURTH DEPOSITION |
| 08/23/00 | LETTER OF CORRESPONDENCE | AUGUST 15, 2000 TO MR. KELLER FROM THERESA BRADLEY |
| 08/18/00 | MOTION FOR EXTENSION OF TIME | |
| 08/18/00 | NOTICE OF HEARING- | MOTIONS 08/31/2000 : 09M00 A |
| 08/18/00 | TEXT | ADDENDUM TO AMENDED MTN FOR SANCTIONS |
| 08/10/00 | MOTION: | TO REQUIRE RELEASE OF RECORDS OR DEPOSITION OF PSYCHIATR |
| 08/10/00 | NOTICE: | OF HEARING 8/22/00 @ 9:00 AM, LIMITED CALENDAR FULL |
| 08/09/00 | NOTICE OF HRG SPECIAL APPT | 08/30/2000 : 01M30 P |
| 08/08/00 | NOTICE NOT PROCESSED, CAL FULL | : M |
| 08/07/00 | NOTICE OF TAKING DEPOSITION | |
| 08/07/00 | OBJECTION: | TO EXPERT INTERROGATORIES |
| 08/07/00 | RESPONSE: | TO DENY MTN TO DISMISS 4TH-AM. COMPLAINT - THERESA BRADL |
| 08/04/00 | RESPONSE: | AND OPPOSITION TO NOTICE OF UNAVAILABILITY |
| 08/03/00 | OBJECTION: | TO INDEPNDENT MEDICAL EXAMINER & MTN TO DENY REQU F/IME |
| 08/02/00 | NOTICE OF HEARING- | SPECIAL APPT 08/09/2000 : 01M30 P |

/7

| 08/02/00 | TEXT | AMENDED MOTION FOR SANCTIONS, EXHIBITS ATTACHED |
|---|---|---|
| 07/31/00 | NOTICE OF UNAVAILABILITY/ABSENCE | |
| 07/27/00 | NOTICE: | OF INDEPENDENT MEDICAL EXAMINATION |
| 07/27/00 | RESPONSE: | AND OBJECTIONS TO ABUSIVE DISCOVERY AND SANCTIONS |
| 07/24/00 | NOTICE OF INTERROGATORY | |
| 07/18/00 | MOTION TO COMPEL | |
| 07/18/00 | NOTICE OF HRG SPECIAL APPT | 08/09/2000 : 01M30 P |
| 07/18/00 | RESPONSE TO REQUEST FOR PRODUCTION | |
| 06/23/00 | MOTION TO COMPEL | |
| 06/23/00 | NOTICE OF HRG SPECIAL APPT | 07/06/2000 : 08M45 A |
| 06/16/00 | ORDER DENYING PROTECTIVE ORDER | |
| 06/13/00 | NOTICE OF INTERROGATORY | |
| 06/13/00 | REQUEST FOR PRODUCTION | |
| 06/09/00 | NOTICE OF TAKING DEPOSITION | |
| 06/01/00 | NOTICE OF PRODUCTION | |
| 06/01/00 | TEXT | EXHIBIT LIST OF PLAINTIFF |
| 05/30/00 | DEPOSITION OF | THERESA LEACH BRADLEY - WITH EXHIBITS ATTACHED |
| 05/30/00 | MOTION FOR SANCTIONS | |
| 05/30/00 | MOTION TO DISMISS | ROBERT BRUCE MILLER GREEN, KAHN, PIOTRKOWSKI, P.A. ETC. |
| 05/30/00 | NOTICE OF FILING DEPOSITION | |
| 05/22/00 | NOTICE OF HRG SPECIAL APPT | 06/14/2000 : 01M30 P |
| 05/18/00 | NOTICE OF INTERROGATORY | |
| 05/18/00 | REQUEST FOR PRODUCTION | |
| 05/15/00 | NOTICE OF HRG SPECIAL APPT | 05/31/2000 : 01M30 P |
| 05/09/00 | MOTION TO COMPEL | |
| 05/04/00 | NOTICE: | OF CANCELLATION OF MILLER DEPOSITION 5-10-2000 |
| 05/04/00 | NOTICE: | OF CONFLICT- 10-16-2000 |
| 04/24/00 | MOTION: | TO BE EXCUSED FROM MEDIATION |



| 04/18/00 | MOTION: | FOR PROTECTIVE ORDER |
|---|---|---|
| 04/13/00 | ORDER OF REFERRAL TO MEDIATION UNIT | X |
| 04/13/00 | ORDER SETTING JURY TRIAL | 10/16/2000 : 09M00 A |
| 04/10/00 | NOTICE OF JURY TRIAL | : M |
| 04/03/00 | OBJECTION: | TO NOTICE OF PRODUCTION |
| 03/30/00 | SUBPOENA RETURNED | |
| 03/28/00 | MOTION FOR PROTECTIVE ORDER | |
| 03/28/00 | NOTICE NOT TIMELY FILED | 03/30/2000 : 09M00 A |
| 03/28/00 | OBJECTION: | TO NOTICE OF DEPOSITION |
| 03/27/00 | TEXT | FAX COPY OF NOTICE OF HEARING - NOTICE NOT TIMELY FILE |
| 03/20/00 | MOTION TO STRIKE | |
| 03/20/00 | MOTION: | TO SET CAUSE FOR TRIAL |
| 03/20/00 | NOTICE NOT TIMELY FILED | 03/23/2000 : 09M00 A |
| 03/20/00 | NOTICE OF HEARING- | MOTIONS 03/23/2000 : 09M00 A |
| 03/20/00 | NOTICE OF TAKING DEPOSITION | |
| 03/17/00 | ORDER: | DENYING MTN FOR PARTIAL SUMMARY JUDGMENT & RTD OF FUNDS |
| 03/17/00 | ORDER: | ON MTN FOR 2ND-ORDER OF REFERRAL TO MEDIATION |
| 03/17/00 | ORDER: | ON MTN FOR SANCTIONS |
| 03/16/00 | NOTICE OF TAKING DEPOSITION | |
| 03/15/00 | MOTION FOR PROTECTIVE ORDER | |
| 03/15/00 | NOTICE NOT TIMELY FILED | 03/16/2000 : 09M00 A |
| 03/14/00 | LETTER OF CORRESPONDENCE | TO THE FLORIDA BAR EXECUTIVE DIRECTOR, ETC., 3-9-00 |
| 03/14/00 | NOTICE OF HEARING- | MOTIONS 03/23/2000 : 09M00 A |
| 03/10/00 | COPY OF: | OF FAX 3-10-00 NOTICE NOT TIMELY FILE 3-16-2000 |
| 03/09/00 | TEXT | RENOTICE OF HEARING SET FOR 2-23-00 AT 1:30 P.M. |
| 03/08/00 | ANSWER AND AFFIRMATIVE DEFENSE | ATTORNEY:00288799 DN01 DN02 |
| 03/08/00 | TEXT | AMENDED MOTI/PARTIAL SUMMARY JUDGMENT |
| 03/08/00 | TEXT | FOURTH AMENDED COMPLAINT |
| 03/08/00 | TEXT | SECOND AMENDED MOTION FOR |

/9

| | | | |
|---|---|---|---|
| | | | PARTIAL SUMMARY JUDGMENT |
| 03/06/00 | | NOTICE OF FILING: | ORIG AFF OF ROBERT BRUCE MILLER IN OPOSS TO MOTN FOR S.J |
| 02/23/00 | | MEMORANDUM OF LAW | |
| 02/23/00 | | NOTICE OF FILING: | AFFIDAVIT OF ROBERT BRUCE MILLER |
| 02/23/00 | | TEXT | OPPOSITION TO MTN FOR SECOND ORDER OF REFERRAL |
| 02/22/00 | | MOTION FOR SUMMARY JUDGMENT | |
| 02/22/00 | | NOTICE OF HRG SPECIAL APPT | 02/23/2000 : 01M30 P |
| 02/18/00 | | AMENDED COMPLAINT | |
| 02/17/00 | 18989 / 2920 Pages: 2 | COURT ORDER | BK:18989 PG:2920 DISMISSING COUNT II,III,IV,VI/DENYING COUNT I |
| 02/15/00 | | MOTION FOR SUMMARY JUDGMENT | |
| 02/15/00 | | TEXT | SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION |
| 02/15/00 | 18985 / 3926 Pages: 1 | VOLUNTARY DISMISSAL | BK:18985 PG:3926 DN07 |
| 02/10/00 | | NOTICE OF HRG SPECIAL APPT | 02/23/2000 : 01M30 P |
| 02/09/00 | | CERTIFICATE OF MAILING | |
| 02/09/00 | | MEDIATORS REPORT | THE PARTIES HAVE REACHED IN IMPASSE |
| 02/04/00 | | MOTION FOR SANCTIONS | |
| 02/04/00 | | MOTION: | FOR 2ND-ORDER OF REFERRAL TO MEDIATION |
| 01/25/00 | | NOTICE: | OF HEARING - 01-26-00@1:30 - CANCELLED |
| 01/24/00 | | NOTICE OF APPT OF MEDTR&CNFRNCE | 02/07/2000 : 02M30 P CANNER, GARY F. |
| 01/24/00 | | NOTICE OF HRG SPECIAL APPT | 02/09/2000 : 01M30 P |
| 01/21/00 | | NOTICE OF ANSWER TO INTERROGATORIES | |
| 01/21/00 | | NOTICE OF HRG SPECIAL APPT | 02/09/2000 : 01M30 P |
| 01/20/00 | | ORDER: | DENYING MTN FOR CONTEMPT |
| 01/20/00 | | TEXT | SUPPLEMENTAL RESPONSE TO REQUEST TO PRODUCE |
| 01/18/00 | | MOTION: | FOR RECONSIDERATION OF |

|  |  | CONTEMPT |
| --- | --- | --- |
| 01/18/00 | NOTICE OF HRG SPECIAL APPT | 01/19/2000 : 01M30 P |
| 01/18/00 | NOTICE OF HRG SPECIAL APPT | 01/26/2000 : 01M30 P |
| 01/14/00 | NOTICE OF HRG SPECIAL APPT | 01/26/2000 : 01M30 P |
| 01/14/00 | NOTICE OR STIPULATION DESIGNATING MEDIATOR | MR. GARY CANNER DADE MEDIATION ASSOCIATES |
| 01/10/00 | MOTION: | FOR RECONSIDERATION OF CONTEMPT OF COURT |
| 01/10/00 | NOTICE OF HRG SPECIAL APPT | 01/19/2000 : 01M30 P |
| 01/03/00 | ORDER OF CONTEMPT | |
| 01/03/00 | ORDER OF REFERRAL TO MEDIATION UNIT | X |
| 01/03/00 | ORDER: | GRANTING PLTF'S MTN FOR MEDIATION PERMITTED BY TELEPHONE |
| 12/22/99 | LETTER OF CORRESPONDENCE | 12-15-99 |
| 12/22/99 | LETTER OF CORRESPONDENCE | 9-13-99 |
| 12/17/99 | NOTICE OF HEARING- | MOTIONS 12/30/1999 : 09M00 A |
| 12/09/99 | MOTION: | FOR ORDER OF REFERRAL TO MEDIATION |
| 12/09/99 | NOTICE OF HRG SPECIAL APPT | 12/09/1999 : 08M30 A |
| 12/02/99 | MOTION: | FOR ORDER OF REFERRAL TO MEDIATION WITH ALL DEFENDANTS |
| 12/02/99 | NOTICE: | OF HRG 12-9-99 AT 8:30 AM - LIMITED CALENDAR FULL |
| 12/01/99 | NOTICE OF CHANGE OF ADDRESS | |
| 11/30/99 | NOTICE OF CHANGE OF ADDRESS | |
| 11/29/99 | MOTION TO DISMISS | ROBERT B. MILLER |
| 11/29/99 | MOTION TO STRIKE | |
| 11/23/99 | ORDER: | GRANTING MOTION TO WITHDRAW COUNSEL FOR PLAINTIFF |
| 11/05/99 | NOTICE OF HEARING- | MOTIONS 11/23/1999 : 09M00 A |
| 10/29/99 | NOTICE NOT TIMELY FILED | 11/04/1999 : 09M00 A |
| 09/27/99 | NOTICE OF UNAVAILABILITY/ABSENCE | |

| 09/15/99 | NOTICE: | OF REPRESENTATION BY LEGAL COUNSEL |
|---|---|---|
| 09/13/99 | NOTICE: | PLTF'S REPRESENTATION BY LEGAL COUNSEL |
| 08/30/99 | NOTICE OF APPEARANCE | ATTORNEY: 00503649 PN01 |
| 08/24/99 | NOTICE OF HRG SPECIAL APPT | 09/22/1999 : 01M30 P |
| 08/09/99 | NOTICE OF HRG SPECIAL APPT | 09/22/1999 : 01M30 P |
| 08/04/99 | NOTICE OF HRG SPECIAL APPT | 08/18/1999 : 01M30 P |
| 08/04/99 | RESPONSE: | TO MOTI TO STRIKE |
| 07/30/99 | NOTICE OF HRG SPECIAL APPT | 08/18/1999 : 01M30 P |
| 07/13/99 | RESPONSE: | TO ORDER ON DEFT. MOTION TO COMPEL |
| 07/12/99 | MOTION FOR EXTENSION OF TIME | |
| 07/12/99 | NOTICE OF APPEARANCE | ATTORNEY: 00288799 DN01 |
| 07/07/99 | ORDER ON MOTION TO COMPEL | |
| 07/06/99 | MOTION TO COMPEL | |
| 07/02/99 | REQUEST: | FOR JUDICIAL NOTICE |
| 07/01/99 | MOTION TO DISMISS | DEFTS |
| 06/29/99 | ANSWER TO AMENDED COMPLAINT | DN07 |
| 05/25/99 | MOTION FOR EXTENSION OF TIME | |
| 05/25/99 | REQUEST FOR PRODUCTION | |
| 05/19/99 | ORDER DENYING MOTION TO DISMISS | |
| 05/19/99 | REQUEST FOR PRODUCTION | |
| 05/07/99 | MOTION TO STRIKE | |
| 05/07/99 | NOTICE OF HEARING- | MOTIONS 05/20/1999 : 09M00 A |
| 05/05/99 | NOTICE: | OF AVAILABILITY OF DOCUMENTS |
| 04/27/99 | ENTERED OR DUPLICATED IN ERROR | TEXT |
| 04/27/99 | THIRD PARTY COMPLAINT | |
| 04/20/99 | CANCELLATION NOTICE | 04/14/1999 : 01M30 P |
| 04/20/99 | LETTER OF CORRESPONDENCE | APRIL 14, 99 TO JUDGE FRIEDMAN FROM THERESA BRADLEY |
| 04/20/99 | MOTION: | FOR RECONSIDERATION OF HEARING ON PLTF'S MTN TO |

$Z$ $Z$

| | | COMPEL |
|---|---|---|
| 04/20/99 | NOTICE OF HRG SPECIAL APPT | 05/05/1999 : 01M30 P |
| 04/20/99 | NOTICE: | OF PLAINTIFF'S MAILING ADDRESS |
| 04/20/99 | TEXT | THIRD AMENDED COMPLAINT |
| 04/15/99 | NOTICE OF HEARING- | SPECIAL APPT 04/15/1999 : 09M00 A |
| 04/14/99 | NOTICE OF HEARING- | SPECIAL APPT 05/05/1999 : 01M30 P |
| 04/14/99 | ORDER ON MOTION TO COMPEL | |
| 04/13/99 | MEMORANDUM OF LAW | |
| 03/22/99 | NOTICE OF HEARING- | SPECIAL APPT 04/14/1999 : 01M30 P |
| 03/12/99 | NOTICE OF HEARING- | MOTIONS 04/15/1999 : 09M00 A |
| 03/08/99 | NOTICE OF HEARING- | MOTIONS 03/23/1999 : 09M00 A |
| 03/03/99 | MOTION TO COMPEL | |
| 03/03/99 | MOTION TO CONSOLIDATE | |
| 03/02/99 | MOTION TO CONSOLIDATE | |
| 03/02/99 | MOTION: | FOR STAY OF DISOVERY |
| 03/02/99 | MOTION: | TO DENY MTN TO DISMISS, ETC. |
| 03/02/99 | NOTICE OF CHANGE OF ADDRESS | |
| 03/02/99 | TEXT | LETTER TO DAVID KELLER 2/25/99 |
| 02/26/99 | NOTICE OF HEARING- | MOTIONS 03/23/1999 : 09M00 A |
| 02/25/99 | MOTION FOR PROTECTIVE ORDER | |
| 02/25/99 | MOTION: | TO DENY DEFT. MOTION TO DISMISS |
| 02/25/99 | NOTICE OF HEARING- | MOTIONS 03/09/1999 : 09M00 A |
| 02/18/99 | MOTION TO DISMISS | DEFTS |
| 02/17/99 | NOTICE OF APPEARANCE | ATTORNEY: 00288799 DN02 DN03 DN04 DN05 DN06 |
| 02/10/99 | MOTION TO STRIKE | |
| 02/10/99 | STIPULATION AND ORDER SUBSTITUTING COUNSEL | ATY:00311154 DN01 |
| 02/10/99 | TEXT | ANSWER TO 2ND AMENDED COMPLAINT - ROBERT BRUCE MILLER |
| 02/08/99 | MOTION TO DISMISS | |
| 02/08/99 | NOTICE OF HEARING- | MOTIONS 03/02/1999 : 09M00 A |
| 02/08/99 | NOTICE OF PRODUCTION | |
| 02/02/99 | NOTICE OF INTERROGATORY | |
| 02/02/99 | REQUEST FOR PRODUCTION | |

23

| 01/28/99 | ORDER TO AMEND COMPLAINT | |
|----------|--------------------------|---|
| 01/28/99 | TEXT | SECOND AMENDE COMPLAINT |
| 01/26/99 | NOTICE OF HEARING- | SPECIAL APPT 01/27/1999 : 01M30 P |
| 01/15/99 | NOTICE OF HEARING- | MOTIONS 02/02/1999 : 09M00 A |
| 01/15/99 | TEXT | PLTF'S ADDITIONAL RESPONSE TO MTN TO LIMIT INTERROGATORY |
| 01/06/99 | RESPONSE: | TO OBJECTION TO INTERROGATORIES |
| 12/31/98 | MEMORANDUM OF LAW | |
| 12/22/98 | NOTICE OF HEARING- | SPECIAL APPT 01/13/1999 : 01M30 P |
| 12/22/98 | OBJECTION: | TO PLTF'S 2ND SET OF INTERROGATORIES TO DEFT'S |
| 12/18/98 | MOT TO FILE AMENDED COMPLAINT | |
| 12/18/98 | NOTICE OF CHANGE OF ADDRESS | |
| 12/18/98 | NOTICE OF HEARING- | MOTIONS 01/14/1999 : 09M00 A |
| 11/24/98 | MOTION TO DISMISS | HARRIS S. HOLZBERG |
| 11/24/98 | MOTION TO STRIKE | |
| 11/24/98 | NOTICE OF HEARING- | SPECIAL APPT 01/13/1999 : 01M30 P |
| 11/23/98 | NOTICE OF INTERROGATORY | |
| 11/23/98 | TEXT | LETTER TO ROBERT B. MILLER & MS. FEINBERG 11/18/98 |
| 11/17/98 | SERVICE RETURNED | BADGE # 218 P 11/05/1998 DN07 |
| 11/16/98 | LETTER OF CORRESPONDENCE | 11-13-98 TO MR. DESMOND FROM THERESA B BRADLEY |
| 11/06/98 | MOTION: | TO RESCIND JUDGE SIMON'S TELEPHONE ORDER DENYING OBJECT. |
| 11/03/98 | ORDER DENYING PROTECTIVE ORDER | |
| 11/02/98 | LETTER OF CORRESPONDENCE | TO MR. JOEL PIOTRKOWSKI, 10-20-98 |
| 10/22/98 | LETTER OF CORRESPONDENCE | 10-19-98 TO MS LEACH-BRADLEY FROM NICHOLAS DESMOND |
| 10/22/98 | SUMMONS RETURNED - NO SERVICE | DN07 |
| 10/21/98 | ORD OF RECUSAL/ORD OF REASSIGN | SECTION: 02 FM:20 00159 ORDER OF RECUSAL |
| 10/21/98 | ORD OF RECUSAL/ORD OF REASSIGN | SECTION: 22 FM:02 00137 |
| 10/21/98 | ORDER OF TRANSFER (REASSIGNMENT) SECTION: | 02 FM:22 00120 |

| 10/21/98 | TEXT | REASSIGNED IN ERROR (DUPLICATED ORDER) |
|---|---|---|
| 10/19/98 | LETTER OF CORRESPONDENCE | 10-15-98 TO MR. DESMOND FROM THERESA BRADLEY |
| 10/19/98 | TEXT | LIST OF WITNESSES |
| 10/16/98 | MOTION: | TO DISQUALIFY JUDGE |
| 10/15/98 | NOTICE OF TAKING DEPOSITION | |
| 10/14/98 | LETTER OF CORRESPONDENCE | TO MS. FEINBERG DATED 10/6/98 FROM THERESA LEACH BRADLEY |
| 10/13/98 | LETTER OF CORRESPONDENCE | DATED 10/8/98 FROM THERESA B. BRADLEY |
| 10/13/98 | MOTION: | FOR RECONSIDERATION TO COMPEL DISCOVERY, ETC. |
| 10/13/98 | MOTION: | TO DISQUALIFY JUDGE |
| 10/09/98 | ORDER: | GRANTING MTN TO VACATE ORD. SIGNES ON 9-10-98 |
| 10/06/98 | LETTER OF CORRESPONDENCE | SEPTEMBER 29, 98 TO MR. DESMOND FROM THERESA BRADLEY |
| 10/06/98 | NOTICE OF TAKING DEPOSITION | |
| 10/02/98 | MOTION FOR CONTEMPT | |
| 10/01/98 | MOTION: | FOR CLARIFICATION OF ORDER EXECUTED ON 9/10/98 |
| 09/29/98 | AFFIDAVIT OF: | NICHOLAS J. DESMOND |
| 09/29/98 | MOTION FOR CONTEMPT | |
| 09/29/98 | NOTICE OF TAKING DEPOSITION | RE-NOTICE OF TAKING CONTINUATION DEPOSITIONS |
| 09/28/98 | MOTION FOR EXTENSION OF TIME | |
| 09/28/98 | NOTICE OF HEARING- | MOTIONS 10/06/1998 : 09M15 A |
| 09/28/98 | NOTICE OF HEARING- | MOTIONS 10/06/1998 : 09M15 A |
| 09/23/98 | NOTICE OF FILING: | COPY OF AFFID. OF NICHOLAS J. DESMOND |
| 09/23/98 | NOTICE OF HEARING- | MOTIONS 09/24/1998 : 09M15 A |
| 09/23/98 | TEXT | SUPPLEMENTAL MOTION FOR CLARIFICATION |
| 09/22/98 | LETTER OF CORRESPONDENCE | TO MS. BRADLEY DATED 9/18/98 FROM LEE H. SCHILLINGER |
| 09/18/98 | NOTICE OF HEARING- | MOTIONS 09/24/1998 : 09M15 A |
| 09/18/98 | NOTICE OF INTERROGATORY | |
| 09/17/98 | LETTER OF CORRESPONDENCE | FRASER SCHU, ROBERT MILLER ETC 9/10/98 |

25

| 09/16/98 | LETTER OF CORRESPONDENCE | LETTER FROM THERESA BRADLEY - 9-14-98 |
|---|---|---|
| 09/16/98 | MOTION: | FOR CLARIFICATION OF ORD. EXCUTED ON SEPT. 10, 1998 |
| 09/15/98 | MOTION: | FOR CLARIFICATION OF ORDER EXECUTED ON 9-10-98 |
| 09/15/98 | NOTICE OF HEARING- | MOTIONS 09/24/1998 : 09M15 A |
| 09/14/98 | MOTION TO QUASH | |
| 09/14/98 | NOTICE OF TAKING DEPOSITION | |
| 09/11/98 | ORDER: | GRANTING MOTION FOR RELIEF UNDER RULE 1.380 |
| 09/10/98 | ENTERED OR DUPLICATED IN ERROR | MQUA |
| 09/10/98 | ORDER ON MOTION TO COMPEL | |
| 09/10/98 | ORDER: | DENYING MTN FOR TELEPHONE DEPOSITION |
| 09/10/98 | TEXT | AMENDED RESPONSE TO MTN FOR RELIEF |
| 09/09/98 | LETTER OF CORRESPONDENCE | TO MS. THERESA LEACH BRADLEY, 9/4/98 |
| 09/04/98 | LETTER OF CORRESPONDENCE | 9-1-98 TO JUDGE POSTMAN FROM ARLENE K. SANKEL |
| 09/04/98 | NOTICE NOT TIMELY FILED | 09/10/1998 : 09M15 A |
| 09/04/98 | NOTICE: | OF SERVICE OF PROPOSAL FOR SETTLEMENT-ROBERT BRUCE MILLE |
| 09/04/98 | TEXT | SERVICE RTD ON DONALD JEFFREY KAHN 8/28/98 |
| 09/04/98 | TEXT | SERVICE RTD ON JOEL PIOTRKOWSKI 8/28/98 |
| 09/04/98 | TEXT | SERVICE RTD. ON GREEN, KAHN, PIOTRKOWSKI, P.A. |
| 09/04/98 | TEXT | SERVICE RTD. ON GREEN, KAHN, PIOTROWSKI, MILLER, P.A. |
| 09/04/98 | TEXT | SERVICE RTD. ON MARVIN GREEN, 08-28-98 |
| 09/03/98 | LETTER OF CORRESPONDENCE | LETTER FROM THERESA BRADLEY - 8-28-98 |
| 09/02/98 | AMENDED COMPLAINT | |
| 09/02/98 | LETTER OF CORRESPONDENCE | LETTER FROM THERESA B. BRADLEY - 8-29-1998 |
| 09/02/98 | LETTER OF CORRESPONDENCE | TO JUDGE POSTMEN 8/29/98 FROM BRADLEY |

| 09/02/98 | LETTER OF CORRESPONDENCE | TO MESSERS ETC. DATED 8/29/98 FROM THERESA B. BRADLEY |
|---|---|---|
| 09/02/98 | LETTER OF CORRESPONDENCE | TO MESSRS,GREEN, KAHN 8/29/98 FROM BRADLEY |
| 09/02/98 | MOTION: | FOR HEARING TO IMPOSE SANCTIONS |
| 09/02/98 | MOTION: | FOR TELEPHONE DEPOSITION |
| 08/31/98 | MOTION: | FOR HEARING TO IMPOSE SANCTIONS |
| 08/31/98 | NOTICE NOT TIMELY FILED | 09/03/1998 : 09M15 A |
| 08/25/98 | AMENDED COMPLAINT | |
| 08/25/98 | MOTION: | TO STRIKE & SANCTIONS |
| 08/25/98 | NOTICE NOT TIMELY FILED | 08/31/1998 : 09M15 A |
| 08/25/98 | NOTICE OF TAKING DEPOSITION | |
| 08/25/98 | TEXT | SUPPLEMENTARY MTN FOR RELIEF UNDER RULE 1.380 |
| 08/21/98 | MOTION: | TO THE COURT TO SUBPOENA RECORDS |
| 08/19/98 | LETTER OF CORRESPONDENCE | DATED AUG. 12 TO MS KENNERLY FROM THERESA B BRADLEY |
| 08/14/98 | LETTER OF CORRESPONDENCE | AUGUST 12, 98 TO MS. KENNERLY FROM THERESA BRADLEY |
| 08/14/98 | LETTER OF CORRESPONDENCE | AUGUST 8, 98 TO MR. HARKNESS & MILLER FROM TERESA BRADLE |
| 08/13/98 | RESPONSE: | TO PLTF'S PRO SE ISSUANCE OF SUBPOENA |
| 08/07/98 | MOTION: | TO DISQUALIFY JUDGE |
| 08/06/98 | LETTER OF CORRESPONDENCE | TO JOHN HARKNESS 8/3/98 FROM THERESA B. BRADLEY |
| 08/06/98 | LETTER OF CORRESPONDENCE | TO ROBERT MILLER 8/3/98 FROM THERESA BRADLEY |
| 08/06/98 | REQUEST: | FOR SIXTY DAY EXTENSION OF TIME |
| 08/06/98 | RESPONSE: | TO PRO SE ISSUANCE OF SUBPOENA |
| 08/05/98 | LETTER OF CORRESPONDENCE | TO ARLENE SANKET 7/31/98 FROM THERESA BRADLEY |
| 08/05/98 | ORD OF RECUSAL/ORD OF REASSIGN | SECTION: 20 FM:05 00092 ORDER OF RECUSAL |
| 08/04/98 | NOTICE OF PRODUCTION | |
| 08/04/98 | NOTICE: | OF FILING DEPO EXCERPT OF THERESA LEACH BRADLEY |
| 08/04/98 | NOTICE: | OF HEARING: CANCELLATION |

27

| | | HEARING SCHEDULED ON 8-6-98 |
|---|---|---|
| 08/04/98 | OBJECTION: | TO PRODUCTION FROM NON-PARTY |
| 08/04/98 | RESPONSE: | TO SUBPOENA |
| 07/30/98 | ORDER: | DENYING MTN FOR FINANCIAL SANCTIONS FOR PROTECTIVE ORDER |
| 07/23/98 | AFFIDAVIT OF: | N. FRASER SCHUH,III |
| 07/23/98 | MOTION FOR DEFAULT | |
| 07/23/98 | MOTION FOR SANCTIONS | |
| 07/23/98 | NOTICE OF HEARING- | MOTIONS 07/30/1998 : 09M30 A |
| 07/23/98 | NOTICE OF HEARING- | MOTIONS 08/06/1998 : 09M30 A |
| 07/23/98 | NOTICE OF TAKING DEPOSITION | |
| 07/23/98 | TEXT | MOTION FOR RELIEF, ETC |
| 07/23/98 | TEXT | MOTION TO COMPEL FINANCIAL SANCTIONS |
| 07/21/98 | LETTER OF CORRESPONDENCE | LETTER FROM ARLENE K. SANKEL - 7-17-98 |
| 07/21/98 | MOTION TO QUASH | |
| 07/21/98 | ORDER: | GRANTING MTN TO QUASH SUBPOENA |
| 07/20/98 | LETTER OF CORRESPONDENCE | MR. LEE SCHILLINGER, DATED 07-16-98 |
| 07/20/98 | NOTICE: | OF MOTION FOR DEFAULT |
| 07/14/98 | MOTION FOR EXTENSION OF TIME | |
| 07/13/98 | LETTER OF CORRESPONDENCE | 7-8-98 FR THERESA L. BRADLEY - WON'T BE AVAILABLE 4 DEPO |
| 07/13/98 | NOTICE OF TAKING DEPOSITION | |
| 07/13/98 | NOTICE OF UNAVAILABILITY/ABSENCE | |
| 07/10/98 | NOTICE OF TAKING DEPOSITION | |
| 07/10/98 | RESPONSE: | TO SUBPOENA |
| 07/10/98 | TEXT | SUBPOENA FOR PRODUCTION OF DOCUMENTS TO SCHILLINGER |
| 07/07/98 | NOTICE OF TAKING DEPOSITION | |
| 07/07/98 | RESPONSE: | & OBJECTIONS TO 1,2,3 & 4TH REQUEST FOR PRODUCTION |
| 07/06/98 | ORDER ON MOTION TO COMPEL | |

28

| 07/06/98 | TEXT | SUBPOENA FOR PRODUCTION OF DOCUMENTS |
|---|---|---|
| 07/01/98 | TEXT | SUBPOENA WITHOUT AFFIDAVIT |
| 06/30/98 | AFFIDAVIT OF: | OF MICHELLE A. MILLER |
| 06/30/98 | LETTER OF CORRESPONDENCE | 6-30-98 TO MR. SCHUFAKKE FROM THERESA BRADLEY |
| 06/30/98 | NOTICE OF FILING: | AFFIDAVIT OF MICHELLE A. MILLER |
| 06/30/98 | NOTICE OF HEARING- | MOTIONS 07/02/1998 : 09M30 A |
| 06/29/98 | LETTER OF CORRESPONDENCE | TO FRASER SCHUH THERESA B. BRADLEY |
| 06/29/98 | SUBPOENA RETURNED | |
| 06/26/98 | LETTER OF CORRESPONDENCE | TO MR. MILLER DATED 6/23/98 FROM THERESA LEACH BRADLEY |
| 06/26/98 | MOTION FOR PROTECTIVE ORDER | |
| 06/26/98 | MOTION TO COMPEL | |
| 06/26/98 | REQUEST FOR PRODUCTION | |
| 06/25/98 | AMENDED COMPLAINT | |
| 06/25/98 | LETTER OF CORRESPONDENCE | JUNE 19, 98 TO ROBERT MILLER FROM THERESA BRADLEY |
| 06/25/98 | NOTICE OF HEARING- | MOTIONS 07/02/1998 : 09M30 A |
| 06/25/98 | REQUEST FOR PRODUCTION | |
| 06/25/98 | SUBPOENA RETURNED | |
| 06/25/98 | TEXT | PLTF'S 2ND REQUEST FOR PRODUCTION |
| 06/23/98 | MOTION FOR PROTECTIVE ORDER | |
| 06/23/98 | TEXT | MOTION FOR AMENDED COMPLAINT |
| 06/11/98 | REQUEST FOR PRODUCTION | |
| 06/08/98 | SERVICE RETURNED | BADGE # 459 P 06/02/1998 DN01 |
| 06/05/98 | MOTION FOR EXTENSION OF TIME | |
| 06/05/98 | NOTICE OF TAKING DEPOSITION | |
| 06/05/98 | REQUEST FOR PRODUCTION | |
| 05/19/98 | CIVIL COVER | |
| 05/19/98 | COMPLAINT | |
| 05/19/98 | DEMAND FOR JURY TRIAL | |
| 05/19/98 | SUMMONS ISSUED | DN01 |
| BEGIN NEW SEARCH | ALL PARTIES | RETURN TO SAME SEARCH |

29

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY FLORIDA
CASE NO. 98-11457-CA-02

THERESA BRADLEY, Pro Se
    Plaintiff

v.

ROBERT BRUCE MILLER BAR NO. 305685,
GREEN, KAHN, PIOTRKOWSKI, PA
(FORMERLY GREEN, KAHN,
PIOTRKOWSKI, MILLER, PA)
    Defendants

**C. JACOBY**

_____/

## FOURTH AMENDED COMPLAINT

Plaintiff, Theresa Bradley, Pro Se, hereby sues the Defendants, Robert Bruce Miller
(hereinafter Miller) Bar NO. 305685, Green, Kahn, Piotrkowski, PA (hereinafter "Green,
et al") formerly Green, Kahn, Piotrkowski, Miller, PA , both parties hereinafter
"Defendants" and allege as follows:

## GENERAL ALLEGATIONS APPLICATION TO ALL COUNTS

1.  Plaintiff, Theresa Bradley, was at all times material hereto, a resident of Dade County
Florida, Palm Beach County, Florida and Fulton County, Georgia, over the age of 18 and
sui juris in all respects.

2.  On information and belief, Robert Bruce Miller is an attorney licensed to practice law
in the State of Florida Bar NO. 305685 who engages in the practice of law in Dade
County, Florida. During the timeframe 1995 to 1997 the State of Florida Supreme Court
suspended Robert Bruce Miller in 1997 from the practice of law for criminal arrest for
possession and long term cocaine/alcohol addiction -- Florida Bar File No. 96-70,203
(11d), Disciplinary File No. 96-71,842 (11D), Supreme Court Case No. 90,804. Robert
Bruce Miller is currently under probation by the State of Florida Supreme Court and The
Florida Bar for a period of three years after his arrest and suspension from the practice of
law by the Florida Supreme Court.

3. On information and belief, Green, Kahn, Piotrkowski, Miller PA, now Green, Kahn, Piotrkowski, PA was a professional corporation organized and existing pursuant to Chapter 621, Florida Statutes, with its principal place of business in the City of Miami Beach, Dade County, Florida now doing business as Green, Kahn, Piotrkowski, PA.

4. On information and belief, Green, Kahn, Piotrkowski, PA formerly Green, Kahn, Piotrkowski, Miller, PA is a professional corporation organized and existing pursuant to Chapter 621, Florida Statutes with its principal place of business in the City of Miami Beach, Dade County, Florida.

5. All conditions precedent, if any, to the filing or maintenance of this action have been performed, have occurred, or have been waived.

6. The causes of action alleged herein is for damages in excess of $2,000,000.00 exclusive of interest, costs, and attorney's fees.

7. The causes of action alleged herein accrued in Dade County, Florida.

## COUNT I PROFESSIONAL NEGLIGENCE
## AND LEGAL MALPRACTICE

8. Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 - 7 of this Complaint as if set forth herein.

9. On or about July 1992, Bradley originally contracted with Defendants to provide professional services in securities arbitration matter (Prudential Securities, Inc.) and Defendants were fully paid in advance for services rendered. Shortly thereafter, November 4, 1992, entered into a second agreement for services with Defendants for Bradley V. Samkoff/Dean Witter, Bradley V. Dean Witter/Evansen, and miscellaneous monetary collection matters: Justus Doering rental/security deposit refund, Hanzman

refund, Grattagliano/employer collection of funds,  Fernandez security deposit refund --
hereinafter "Contract" dated November 4, 1992 attached herein Exhibit A) and
Defendants were paid 50% of advance fees or $7,500.

10.  In the second agreement for services dated November 4, 1992 (the "Contract"
attached herein Exhibit A) the Defendants agreed to represent the Plaintiff in pending
lawsuits  valued in excess of $1,000,000 against Bernice Samkoff/Dean Witter for
unlicensed investment advisor services resulting in unauthorized transactions, excessive
churning and  unsuitable trading of Plaintiff's account  by and between Bernice Samkoff
with Marc Schectman of Dean Witter Reynolds, No. Miami Beach, FL Feb. to May 1992,
refund of $15,000 security deposit and  paid rentals  for condo rental for a unit with
inoperative appliances and no curtains as promised at No. Miami Beach between Plaintiff
and Doering Landlord;  unauthorized, excessive churning, unsuitable investments, and
unauthorized options account opening  in violation of compliance procedures and
unauthorized trading of Plaintiff's bond portfolio by  Dean Witter/Evansen at Lighthouse
Pt.,. Florida May to October 1992 destroying a $700,000 bond portfolio generating
Plaintiff over $60,000 in fixed income as she retired after working over 30 years,  and
several miscellaneous  money collection matters from various parties: Hanzman,
Fernandez, Grattagliano.

11. The Defendants were careless and negligent and breached their duty of care owed to
Plaintiff to handle in a prudent, skilled, and diligent manner, and forever jeopardized her
legal rights in the second contract dated November 4, 1992 "Samkoff & Dean Witter,
etc." underlying litigation by failing to provide Plaintiff with her entire contents of four
boxes of original files,  original evidence, original spiral bound notebook containing
investment advisor handwritten notes, original faxes from investment advisors (Samkoff,
Schectman, Evansen and Dean Witter); failure to remit documents in the first contracted
matter destroying Plaintiff's rights to appeal;  and failure to provide Plaintiff with money
collected on her behalf from third parties; and failure to return money held on Plaintiff's
behalf by the law firm in bank accounts and / or trust accounts, and failure to perform
numerous acts, including but not limited to the following:

a.   Failure to meet with Plaintiff in any pre-trial preparations and conferences for four days as previously agreed leaving Plaintiff to sit in a Miami Beach motel room with Defendant Miller constantly canceling appointments, then forcing Plaintiff to sit for 10 hours in Defendants reception area for one full day without any meaningful discussions concerning legal matters despite the fact that Plaintiff had flown into Miami, Fl specifically for the purpose of meeting.

b.   Failure to consult with local South Florida witnesses on Plaintiff's behalf concerning her reliance upon two professional advisors during a ten-year period.

c.   Failure to investigate and research the securities laws, securities compliance Manual violations, NASD Manual violations governing her securities matters against Samkoff, Schectman, Evansen, Dean Witter, and miscellaneous matters referenced in Second Contract for services.

d.   Failure to remit money to Plaintiff collected by Defendants and unilaterally declaring miscellaneous money collected from third party as "bonus" resulting in outright theft of client's money and breach of written agreement between the parties in November 4, 1992 contract.

e.   Failure to provide Plaintiff with return of all personal property, original evidence, documents, four boxes of files, irreplaceable faxes and evidence as Bradley requested to be sent by UPS to her address in Atlanta, GA where Plaintiff resided; and failure to return all documents to Plaintiff when she personally flew into Miami, FL from Atlanta, GA to plead with Defendants for the return of her original evidence, documents and property in order to protect her rights of appeal in Prudential Securities, Inc., to protect her rights to pursue suit against unlicensed investment advisor actions by Samkoff/Dean Witter in US District Court,  her rights to obtain original evidence and files in order to proceed with NASD arbitration matter against Evansen/Dean Witter at the NASD, failure to remit Plaintiff's money collected on her behalf in miscellaneous collection

matters, and failure to remit money belonging to Plaintiff held in the law firm's bank and/or trust accounts, and failure to protect her legal interests in all other matters referenced in the second agreement dated November 4, 1992 between the parties.

f.  Subsequent to Plaintiff's request for documents by personal visit to Defendants offices, failure to obtain Plaintiff's authorization or to inform Plaintiff that portions of her documents for both Prudential Securities and various documents referenced in November 4, 1992 "Samkoff/Dean Witter, etc. contract" were shipped to an attorney who Plaintiff briefly interviewed but NEVER RETAINED as her attorney.

g.  Failure for a 20 month period while Bar Hearing to retrieve documents was pending to inform Plaintiff as to the whereabouts of her original evidence while repeatedly writing to the Plaintiff during the pending Bar Hearing abusing her for her attempts to obtain her personal property, original evidence, documents, and money collected on her behalf, and held in trust on her behalf.

h.  Failure for over a two year period during the pending Bar Hearing October 24, 1996 (Documents Hearing) to April 1995 (Defendants Refusal to attend Bar Hearing on monetary Trust matters) to provide a full return money and all documents to Plaintiff with the intentional attempt to forever damage her rights to appeal Prudential and proceed to prosecute Samkoff/Dean Witter, Evansen/Dean Witter, and other miscellaneous matters with the intentional withholding, loss, destruction of irreplaceable original evidence, original files, documents, handwritten investment advisor notes, original faxes, rental contracts -- all necessary for the full prosecution of her cases and the foundation and proof to prosecute her cases.

i.  Failure to return money collected and money held in Trust Account on Plaintiff's behalf upon termination of services for just cause, attempts at outright civil theft by unilateral declaration of "bonus" outside of contract between the parties, conversion from trust account to third party (Holzberg and Fee for Services) in violation of contract and written instruction by Plaintiff, abusive and repeated bizarre behavior by Defendants

leading the Plaintiff to be greatly concerned for her own personal welfare and the responsible prosecution of her cases.

j.   Failure to properly represent Defendants legal credentials and securities expertise by stating that Defendants engaged full time in securities matters and prosecuted over 30 securities cases per month, thus inducing Plaintiff's to engage Defendants as "securities attorneys".

k.   Failure to provide true and correct credentials of securities expert "Holzberg" who intentionally defrauded the Plaintiff with accurate educational credentials, accurate undergraduate degrees, accurate graduate degrees, accurate employment history — the entire Holzberg resume was a SHAM with full knowledge by Defendants of deceit and fraud.

l.   Failure to conduct themselves as a responsible professional by repeatedly verbally abusing Plaintiff referring to her as "a Georgia Peach," a "liar," engaging in "an auto auction with Orlando car dealer" in the midst of attorney-client meeting, and frequently "dozing off" demonstrating an inability to concentrate, remain awake and/or continually race around the law firm's conference room with repeated outbursts of uncontrollable giggles and laughter while flapping hands in the air alarming the Plaintiff; demonstrating repeated failures to engage in any productive attorney-client informative meetings for any significant time greater than 3-5 minutes without bizarre behaviors or abrupt termination of attorney-client meetings without sound reason.  These cumulative unprofessional, egregious, unethical conduct precluded any productive professional attorney-client communications between attorney- Plaintiff in complex securities matters valued in excess of $1,000,000 and other cases referenced in second contract dated November 4, 1992.

12. As a direct and proximate result of Defendants carelessness, bizarre, insane and abusive behavior, unethical conduct and egregious negligence handling the matters referenced in Contract dated November 4, 1992, outright civil theft of money, and loss,

destruction or intentional withholding of Plaintiff's original evidence, original faxes, notebooks, files and documents for major securities matter, unilateral self-declared "bonus" outside of contract between the parties, the Plaintiff has been unable to fully protect her legal interests in the meritorious legal matters referenced in Contract November 4, 1992 "Samkoff, Dean Witter, etc.", and other matters; and Plaintiff has been unable to collect funds that belong to her withheld by Defendants and intentionally converted to third-parties subsequent to termination of Defendants by Plaintiff -- all such conduct to be the proximate cause of damage to the Plaintiff's vital legal interests and damage to the protection of her legal interests without benefit of original evidence, original documents and numerous files provided to Defendants as a result of Contract dated November 4, 1992. Such egregious unethical conduct, conversion from trust account, civil theft, violations of the Bar Code of Professional conduct and negligence in handling Plaintiff's complex securities matters constitutes legal malpractice under the laws of the State of Florida governing attorneys in the practice of law.

WHEREFORE, Plaintiff prays for judgment in the amount in excess of $3,000,000 together with court costs, fees, expenses, and any further relief as the court deems just and proper. Plaintiff also reserves her right to assert a claim for punitive damages upon establishing her evidentiary basis pursuant to Fla.Statute 768.72.

## COUNT II - FRAUD

13. Plaintiff realleges and incorporate by reference as though fully set forth herein each and every allegation set forth in paragraphs 1 - 12 herein.

14. On October 26, 1994, The Florida Bar assisted the Plaintiff to retrieve a small portion of her original files and documents provided to Defendants under both the first and second contract for services.

15. Plaintiff discovered at the Bar Hearing, as the facts were not discoverable until the

Hearing, that Defendants had intentionally misrepresented to the Plaintiff the material facts:

(1) lack of securities expertise to handle Plaintiff's complex securities matters at both the NASD and in United States Federal District Court for Samkoff/Dean Witter due to diversity of jurisdiction between Plaintiff and Samkoff/Dean Witter,

(2) Defendants had knowledge that they falsely represented to the Plaintiff that Defendants handled over 30 securities cases per month,

(3) Defendants had a duty to disclose their lack of securities expertise and this duty was heightened by the fact that Plaintiff had the ability to prosecute her case against Samkoff/Dean Witter in US District Court;

(4) Defendants intended to fraudulently induce the Plaintiff to rely upon their false representations to engage Defendants;

(5) Plaintiff actually and justifiably relied upon false representations by the Defendants, and;

(6) such reliance resulted in financial damages to the Plaintiff, damages to her meritorious cases, damage due to destruction or loss of original evidence, documents and files provided to Defendants.

16. At the Bar Hearing, the Plaintiff discovered that Defendants engaged in a conspiracy to defraud the Plaintiff as to securities expert Harris S. Holzberg/Fee for Services of South Florida by fraudulently concealing the true educational and employment history of Holzberg. Defendants had an affirmative duty to disclose to the Plaintiff their actual knowledge of Holzberg's true educational and employment history. In fact, the Defendants conspired with Holzberg to (1) intentionally and fraudulently induce the Plaintiff to engage the services of Holzberg by intentionally "switching Holzberg

resume" concealing true employment history and different employers, (2) concealing true educational/employment history with full knowledge that the Plaintiff justifiably relied upon, (3) Plaintiff reasonably relied upon Defendants conspiracy to defraud the Plaintiff to Plaintiff's detriment  (4) As a direct and proximate result of Defendants fraud and misrepresentations, Plaintiff has suffered financial damages as enumerated herein.

17. Plaintiff discovered after the filing of this lawsuit as the facts were not discoverable until the 1997 Florida Supreme Court suspension of Defendant Robert Bruce Miller from the practice of law that Miller was a long term cocaine addict and alcoholic who had been arrested  March 1995 due to relapse of cocaine/alcohol addiction.  This arrest led to a 6-month drug rehabilitation outside of the State of Florida, and suspension from the practice of law by the Florida Supreme Court in 1997.

18.  Defendants had an affirmative duty to disclose to the Plaintiff that Defendant Miller engaged in illegal substance abuse.  As a further direct and proximate result of Defendants breach of duty to reveal Defendants mental incapacity, Plaintiff was forced to endure Miller's bizarre  and "psychotic-like" behaviors  alarming the Plaintiff and resulting in the termination of contract between the parties.  Defendants fraudulently concealed Miller's illegal substance abuse.  Defendants had a duty to disclose these material facts.  Defendants constructively defrauded the Plaintiff by their failure to disclose material facts concerning Defendant Miller's mental incapacity due to long-term alcoholism/cocaine addictions and relapse.  As a direct and proximate result of Defendants constructive fraud,  Plaintiff has suffered financial damages, damages to her personal property and meritorious cases as enumerated herein.

WHEREFORE,  Plaintiff prays for judgment against Defendants Robert Bruce Miller, Green, Kahn, Piotrkowski, PA (formerly Green, Kahn, Piotrkowski, Miller, PA) in an amount in excess of $15,000, pre-judgment interest, costs, fees, expenses and such other relief as the Court deems proper.  Plaintiff reserves her right to assert a claim for punitive damages upon establishing her evidentiary basis pursuant to Fla.Statute 768.71.

## COUNT III - INTENTIONAL INFLICTION
## OF EMOTIONAL DISTRESS

19.  Plaintiff hereby incorporates by reference all of the allegations set forth herein in
Paragraphs 1 - 18 of this Complaint as if set forth herein.

20.  The acts of Defendants enumerated herein Paragraphs 1 - 18 were done willfully,
maliciously, outrageously, deliberately, and purposely with the intention to inflict
severe emotional distress upon Plaintiff and were done in reckless disregard of the
probability of causing Plaintiff severe harm and severe emotional distress, and these
acts did in fact result in severe and extreme emotional distress as Plaintiff was forced
to plead and beg for her personal property, original evidence substantiating claims in
excess of $2,000,000 and intentional withholding of 10 years of her original financial
documents despite the fact that Defendants were fully paid under the first contract,
justifiably terminated under the second contract with unearned fees remaining on
deposit belonging to Plaintiff in Defendants trust/bank accounts. Plaintiff has
discovered recently after the Third Court Order for Plaintiff's documents, that many
documents Defendants stated no longer existed with Miller or at the Green, et al law
firm, DID EXIST despite Defendants lying about their existence at the Florida Bar
Hearing and throughout the matter pending before the Court.

21.  Plaintiff had fully paid Defendants under the first contract but they refused to
provide Plaintiff with her documents by UPS delivery or by hand-delivery to the
Plaintiff when she flew to Miami to personally retrieve her personal property.
Plaintiff had just cause for termination of Defendants under the second contract for
the egregious acts enumerated herein; and Defendants had no right to place any
fraudulent lien upon her personal property damaging numerous cases valued in excess
of $2,000,000, such conduct was outrageous, reckless and lacked care, sense of duty
and with great indifference to the magnitude of damages to Plaintiff's legal rights

under the second contract.  Defendants displayed conduct with great indifference to
Plaintiff's pleas for documents  and  were calculated to cause severe financial and
emotional distress.    Moreover,  Defendants had a duty for over 20 months when
"documents" was pending at the Bar Hearing  to advise Plaintiff the whereabouts of
her documents or the fact that a portion of documents had been  negligently sent to
third-party attorney who Plaintiff NEVER ENGAGED FOR SERVICES, such
conduct was outrageous, malicious  and reckless and has caused the Plaintiff severe
emotional distress by the intentional withholding of document necessary to protect
her legal interests in cases valued in excess of $2,000,000 constituting her entire life's
savings.

22. As a direct and proximate result of the Defendants acts alleged herein, Plaintiff was
caused to incur severe and grievous mental and emotional suffering, fright, anguish,
shock, nervousness, anxiety,  shock over loss of her entire life's savings resulting in
Plaintiff  living in a homeless Shelter as a result of the magnitude of the financial
losses incurred and her inability to properly prosecute her cases valued in excess of
$2,000,000 against Samkoff/Dean Witter in US District Court and at the NASD
intentionally withheld out of malice or lost and destroyed by Defendants when they
could have easily been given to the Plaintiff in order to fully protect her legal rights.
Plaintiff continues to be fearful, anxious, nervous, distraught and remains homeless
despite the fact that Plaintiff previously had  in 1992 $700,000 generating her fixed
income in excess of $60,000.  Plaintiff is a 55 year old single woman who  was ready
to retire  after working over 30 years and placing her entire life's savings under the
investment advisor Samkoff/Dean Witter and Evansen/Dean Witter where the entire
bond portfolio and her retirement fixed income was destroyed in less than 6 months.

23. As a direct and proximate result of Defendants malicious and intentional  acts alleged
herein,  Plaintiff was caused to bring her case to The Florida Bar to retrieve small
portions of her documents,  abandon filing lawsuit in US District Court against
Samkoff/Dean Witter as a result of loss/destruction of original evidence
substantiating her claims,  and the Plaintiff was forced to expend over $30,000 and

over five years of litigation at the NASD with Evansen/Dean Witter despite the fact that Plaintiff could never obtain her original evidence and 10-years of original files and numerous documents substantiating her claims against these parties.

24. As a direct and proximate result of Defendants malicious and intentional acts alleged herein, Plaintiff was caused to live in a homeless shelter, suffer severe emotional distress over the loss of her 30 years of life's savings, work outside of her 30 year profession, obtain medical, psychiatric and psychological treatment on numerous occasions 1993 to date, which medical, psychological and psychiatric treatment will continue for an indeterminable length of time.

WHEREFORE, Plaintiff, Theresa Bradley, prays for judgment against Defendants Robert Bruce Miller and Green, Kahn, Piotrkowski, PA (formerly Green, Kahn, Piotrkowski, Miller, PA) in an amount in excess of $15,000, pre-judgment interest, costs, fees, expenses and such other relief as the Court deems proper. Plaintiff reserves her right to assert a claim for punitive damages upon establishing her evidentiary basis pursuant to Fla.Statute 768.71.


Respectfully submitted:
This 15th day of February 2000 by

Theresa Bradley, Pro Se
Plaintiff
8560 Beacon Hill Road
Palm Beach Gardens, FL 33410 561-694-0633



| BRADLEY V. GREEN, KAHN, PIOTRKOWSKI, MILLER, PA | | | | |
|---|---|---|---|---|
| CASE NO. 98-11457-CA | | | | |
| **DEPOSITS BY PLAINTIFF TO DEFENDANTS BANK/TRUST ACCOUNT** | | | | |
| Jul-92 | Plaintiff Intercontinental Bank | | $ | 8,500.00 | ($7500 Miller/$1000 Holzberg) |
| Nov. 92 | David Falk, Sr. Wachovia | 2788 | $ | 4,250.00 | |
| Dec. 1992 | Plaintiff Intercontinental Bank | | $ | 6,000.00 | |
| Jan-93 | Plaintiff Oppenheimer | 20302 | $ | 5,000.00 | |
| Jan-93 | Plaintiff Oppenheimer | | $ | 800.00 | |
| Jan-93 | Plaintiff Oppenheimer | 20306 | $ | 2,500.00 | |
| Hanzman | Hanzman&Criden | | $ | 1,000.00 | |
| Prudential | Prudential | | $ | 128.00 | |
| | | TOTAL | $ | 28,178.00 | |
| | TREBLE DAMAGES | | $ | 84,519.00 | |
| | 8% Statutory 10 Years | | $ | 182,470.00 | |
| | 10% Statutory 10 Years | | $ | 219,221.00 | |
| | 12% Statutory 10 Years | | $ | 262,503.00 | |

```
========================= Green, Kahn & Piotrkowski =========================
As of: 10/26/94          City National Bank of Miami                    Page
Client Number:  92-7348                              System Number:   193
Client Name:    Leach Vs. Dean Witter                Date Entered:   12/08/9
Client Officer: & Robert B. Miller                   Last Active:    08/17/9
------------------------------------------------------------------------------
Total Deposits:      6,379.84    4        Closing Balance:      3,823.5
Total Checks:        2,556.30    7        Actual Balance:       3,823.5
Commitments:             0.00    0        Uncommitted:          3,823.5
==============================================================================

 Tran Status    Type  RefNr TrCode      Amount To/From

08978 12/08/92  Chk   6868  121          -79.84 Pacific Photocopy And Research
      PRINTd (12/08/92 02:26p Printed)         >Inv. 137876 11/25/92

15093 12/11/92  Dep   7049  121           79.84 Green,Kahn & Piotrkowski
      POSTed (12/11/92 12:53p Entered)         >Costs

16457 01/05/93  Chk   7113  121         -600.00 American Arbitration Associati
      *VOID* (01/05/93 07:56a Printed)         >Arbitrator' S Fee

15602 01/06/93  Dep   7233  2004       5,000.00 Teresa B. Leach
      POSTed (01/06/93 02:20p Entered)         >Fee Retainer

16282 01/08/93  Dep   7261  2005         800.00 Theresa Leach
      POSTed (01/08/93 12:02p Entered)         >Fee Retainer

04967 02/03/93  Dep   7444  2003         500.00 Fee For Services Of South Flor
      POSTed (02/03/93 03:00p Entered)         >Fee RBM

16539 02/24/93  Chk   7416  121       -2,000.00 Harris Holzberg
      PRINTd (02/24/93 03:12p Printed)         >Expert Witness Fee

16631 02/26/93  Chk   7438  121           -4.31 Sue Ann Korestky
      PRINTd (02/26/93 09:49a Printed)         >Reimb. Pictures

16274 03/25/93  Chk   7892  121         -338.35 Royal Palm Reporting
      PRINTd (03/25/93 08:15a Printed)         >Inv. 19138 Orig. And Transcrip

01688 04/12/93  Chk   8059  121          -97.80 Copy Service Of Miami
      PRINTd (04/12/93 01:55p Printed)         >#6771 (Partial)

-22297 08/17/94 Chk   13518 121          -24.00 Caplan/Markowitz & Kaye
      PRINTd (08/17/94 12:19p Printed)         >Case #32-136-0321  Aff. #17160

22298 08/17/94  Chk   13519 121          -12.00 Caplan/Markowitz & Kaye
      PRINTd (08/17/94 12:22p Printed)         >Case #32-136-0321-92-DW  Aff.

============================== End of Report ==============================
```

money received $6300

money spent $3156.30
or costs

fee - $3143.70

```
======================== Green, Kahn & Piotrkowski ========================
As of: 07/01/94              City National Bank of Miami              Page
Client Number:  SP-7304                          System Number:    1$
Client Name:    Leach vs/Prudential              Date Entered:   10/22/
Client Officer: & Robert B. Miller               Last Active:    06/02/
===========================================================================

   Tran Status      Type  RefNr  TrCode      Amount  To/From

  16463 01/05/93  Chk    7114  121.          -23.00 Car 54 Messenger Service, Inc
        PRINTd (01/05/93 12:16p Printed)            >Delivery

  15100 01/06/93  Cmm           1007           62.65 Choice # 317 12/28/92
        SAVEd  (01/06/93 09:18a Entered)            >To Mr. Growing

  16184 01/07/93  Chk    7142  121           -350.00 Securities Arbitration Commen
        PRINTd (01/07/93 02:57p Printed)

  16369 01/11/93  Chk    7151  121            -60.00 Caplan/ Markowitz & Kaye
        PRINTd (01/11/93 09:40a Printed)            >Subpoenas (5)

  16381 01/11/93  Chk    7153  121            -74.88 Robert B. Miller
        PRINTd (01/11/93 09:44a Printed)            >Reimb. ( Meals)

  16653 01/20/93  Dep    7346  121          1,189.53 Teresa . Leach
        POSTed (01/20/93 09:19a Entered)            >Costs
               (01/29/93 02:55p Changed)

  16654 01/20/93  Dep    7347  2026         1,310.47 Teresa B. Leach
        POSTed (01/20/93 09:20a Entered)            >Fee RETAINER
               (01/29/93 02:56p Changed)

  16667 01/20/93  Chk    7237  121         -1,200.00 American Arbitration Associati
        PRINTd (01/20/93 09:55a Printed)            >Arbitration Fee

  16668 01/20/93  Chk    7238  121            -90.00 William O'Neill
        PRINTd (01/20/93 09:56a Printed)            >Courier Fee

  16712 01/21/93  Chk    7276  121            -24.00 Caplan/ Markowitz & Kaye
        PRINTd (01/21/93 07:34a Printed)            >#32-136-0321 Aff. 17160

  16716 01/21/93  Chk    7280  121           -346.10 Copy Service Of Miami
        PRINTd (01/21/93 08:05a Printed)            >#6963

  16829 01/27/93  Chk    7328  121            -12.00 Caplan / Markowitz & Kaye
        PRINTd (01/27/93 10:16a Printed)            >Case 32-136-0321-92 Dw #13391

  16391 02/22/93  Chk    7586  121            -10.00 Car 54 Messenger Service, Inc.
        PRINTd (02/22/93 10:55a Printed)            >Tick. 254934 1/13/93

  16627 02/26/93  Chk    7435  121            -45.00 Car 54 Messenger Service Inc.
        PRINTd (02/26/93 08:47a Printed)            >Inv. 384210 2/4/93 And 382194

  01962 06/02/93  Dep    8323  121            128.50 Green,Kahn & Piotrkowski
        POSTed (06/02/93 01:03p Entered)            >Costs

========================== End of Report ==========================
```

```
======================= Green, Kahn & Piotrkowski ==========================
 ; of: 07/01/94            City National Bank of Miami                    Page  1
  lient Number:  92-7348                          System Number:      1939
  lient Name:    Leach Vs. Dean Witter            Date Entered:    12/08/92
 :lient Officer: & Robert B. Miller               Last Active:     04/12/93
----------------------------------------------------------------------------
 Total Deposits:        6,379.84      4          Closing Balance:    3,859.54
 Total Checks:          2,520.30      5          Actual Balance:     3,859.54
 Commitments:               0.00      0          Uncommitted:        3,859.54
============================================================================

  Tran Status     Type   RefNr TrCode     Amount To/From

 08978 12/08/92  Chk    6868 121      -79.84 Pacific Photocopy And Research
       PRINTd (12/08/92 02:26p Printed)       >Inv. 137876 11/25/92

 15093 12/11/92  Dep    7049 121       79.84 Green,Kahn & Piotrkowski
       POSTed (12/11/92 12:53p Entered)       >Costs

 16457 01/05/93  Chk    7113 121     -600.00 American Arbitration Associati
       *VOID* (01/05/93 07:56a Printed)       >Arbitrator' S Fee

 15602 01/06/93  Dep    7233 2004   5,000.00 Teresa B. Leach
       POSTed (01/06/93 02:20p Entered)       >Fee Retainer

 16282 01/08/93  Dep    7261 2005     800.00 Theresa Leach
       POSTed (01/08/93 12:02p Entered)       >Fee Retainer

 04967 02/03/93  Dep    7444 2003     500.00 Fee For Services Of South Flor
       POSTed (02/03/93 03:00p Entered)       >Fee RBM

 16539 02/24/93  Chk    7416 121   -2,000.00 Harris Holzberg
       PRINTd (02/24/93 03:12p Printed)       >Expert Witness Fee

 16631 02/26/93  Chk    7438 121       -4.31 Sue Ann Korestky
       PRINTd (02/26/93 09:49a Printed)       >Reimb. Pictures

 16274 03/25/93  Chk    7892 121     -338.35 Royal Palm Reporting
       PRINTd (03/25/93 08:15a Printed)       >Inv. 19138 Orig. And Transcrip

 01688 04/12/93  Chk    8059 121      -97.80 Copy Service Of Miami
       PRINTd (04/12/93 01:55p Printed)       >#6771 (Partial)
========================== End of Report ===================================
```

*Danzman Check? 1,137.50 ? where ?*

GKM002179

P-4

10/16/

======================= Green, Kahn & Piotrkowski ========================
As of: 10/26/94          City National Bank of Miami                    Page   1
Client Number:   92-7304                          System Number:     1900
Client Name:     Leach vs/Prudential              Date Entered:   10/22/92
Client Officer: 6 Robert B. Miller                Last Active:    06/02/93

| Total Deposits: | 10,128.50 | 7 | Closing Balance: | 7,268.52 |
| Total Checks: | 2,859.98 | 13 | Actual Balance: | 7,268.52 |
| Commitments: | 7,556.65 | 10 | Uncommitted: | -288.13 |

Tran  Status    Type  RefNr TrCode        Amount To From

15747 10/22/92  Chk   6427 121         -25.00 William O'Neill
      PRINTd (10/22/92 06:56a Printed)        >Hand Delivery

15813 10/23/92  Cmm        1147          10.00 Fax, Transmittal 10/22/92
      SAVEd  (10/23/92 01:07p Entered)        >Toharris Holzberg

15814 10/23/92  Cmm        1148          10.00 Fax, Transmittal 10/22/92
      SAVEd  (10/23/92 01:08p Entered)        >To Theresa Leach

15816 10/23/92  Cmm        1150          10.00 Fax, Transmittal 10/22/92
      SAVEd  (10/23/92 01:09p Entered)        >To Harris Holzberg

15818 10/23/92  Cmm        1151          10.00 Fax, Transmittal 10/22/92
      SAVEd  (10/23/92 01:10p Entered)        >To Harris Holzberg

15873 10/27/92  Dep   6704 121          65.00 Green,Kahn & Piotrkowski
      POSTed (10/27/92 11:05a Entered)        >Costs

15874 10/27/92  Dep   6705 2036      3,685.00 Green,Kahn & Piotrkowski
      POSTed (10/27/92 11:05a Entered)        >Fee PBM

15875 10/27/92  Cmm        3023       3,685.00 Fee Billing
      SAVEd  (10/27/92 11:06a Entered)

09184 12/10/92  Cmm        1015          10.00 Fax, Transm,ittal 12/2/92
      SAVEd  (12/10/92 01:22p Entered)        >To Harris Halzberg

11631 12/10/92  Cmm        1062          16.00 Federal Express 12/3/92 619681
      SAVEd  (12/10/92 02:15p Entered)        >To Theresa Leach

15103 12/11/92  Dep   7051 121          26.00 Green,Kahn & Piotrkowski
      POSTed (12/11/92 12:55p Entered)        >Costs

15105 12/11/92  Dep   7052 2008      3,724.00 Green,Kahn & Piotrkowski
      POSTed (12/11/92 12:55p Entered)        >Fee Pbm

15106 12/11/92  Cmm        3003       3,724.00 Fee Billing
      SAVEd  (12/11/92 12:56p Entered)

06244 12/21/92  Cmm        1102          12.00 Fax, Transmittal 12/18/92
      SAVEd  (12/21/92 12:40p Entered)        >To Delmer C. Gaving III Esq.

16462 01/05/93  Chk   7113 121        -600.00 American Arbitration Associati
      PRINTd (01/05/93 11:46a Printed)        >Arbitrator'S Fee

==================== Continued Next ....

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

**THERESA LEACH BRADLEY,**
**PRO SE,**

CASE NO.: 98-11457 CA (27)

Plaintiff,

JUDGE PAUL SIEGEL

vs.

**ROBERT BRUCE MILLER,**
**ET AL.,**

Defendants.

_____/

## ORDER RESETTING CAUSE FOR TRIAL

The captioned action is specially reset for jury trial on March 11, 2002 at 9:00 a.m., and currently is the only case expected to be tried during that period. There will be no further calendar call. The parties and counsel shall comply with the time periods in the prior order setting this case for trial if they have not already done so. All trial subpoenas issued by any party will remain in full force and effect for the new trial date so long as a copy of this order is served by mail upon any witness previously personally served with a trial subpoena.

The issues remaining for trial under the Fourth Amended Complaint are:

(a)   Whether defendants failed to return to plaintiff her records thereby prejudicing plaintiff in her case against Dean Witter.

(b)   Whether defendants wrongfully converted money returned to them by the Hanzman lawfirm; with respect to this claim only, if plaintiff is able to prove the conversion, the Court will permit plaintiff to claim punitive damages.

(c)   Whether plaintiff is entitled to the return of any portion of the $15,000 fee paid pursuant to the November 4, 1992 retainer agreement, including claims for breach of contract and fraud on that subject.

*DE 02/05/02*

(d)    Whether plaintiff is entitled to the return of fees advanced for the retention of Harris Holzberg as an expert witness or any relief based upon alleged fraud in connection with Mr. Holzberg's retention.

Notwithstanding the fact that plaintiff is a pro se litigant, she has the burden of proof on each of these claims and in order to prevail, must present admissible, competent, substantial evidence to support each of the claims, and also be in a position to demonstrate that each of the defenses that the defendant will attempt to prove are not valid.

ORDERED at Miami-Dade County, Florida this 31st day of January, 2002.

PAUL SIEGEL
CIRCUIT JUDGE

_____
PAUL SIEGEL
Circuit Judge

Copies furnished to:

Theresa Leach Bradley, Pro se
D. David Keller, Esq.



# FLORIDA TRAFFIC CRASH REPORT
## LONG FORM
MAIL TO: DEPT. OF HIGHWAY SAFETY & MOTOR VEHICLES, TRAFFIC CRASH RECORDS, NEIL KIRKMAN BUILDING, TALLAHASSEE, FL 32399-0537

**DO NOT WRITE IN THIS SPACE**

### Time & Location

| DATE OF CRASH | TIME OFFICER NOTIFIED | TIME OFFICER ARRIVED | INVEST. AGENCY REPORT NUMBER | HSMV CRASH REPORT NUMBER |
|---|---|---|---|---|
| 03/10/02 | 1:33 ☒AM ☐PM | 1:34 ☒AM ☐PM | 02-039046 | 72342412 |

| COUNTY / CITY CODE | FEET or MILE(S) | N S E W | of | CITY OR TOWN | (Check if in City or Town) | COUNTY |
|---|---|---|---|---|---|---|
| 10-44 | | | | Hollywood | ☑ | BROWARD |

| AT NODE NO. or FEET or MILE(S) | FROM NODE NO. | NEXT NODE NO. | NO. OF LANES | 1. DIVIDED 2. UNDIVIDED | ON STREET, ROAD OR HIGHWAY |
|---|---|---|---|---|---|
| | | | 4 | 1 | N. Federal Hwy. |

| AT THE INTERSECTION OF (street, road or highway) or FEET MILE(S) | N S E W | FROM INTERSECTION OF (street, road or highway) |
|---|---|---|
| Young Circle | | |

### Vehicle 1

| DRIVER ACTION | YEAR | MAKE | TYPE | USE | VEH. LICENSE NUMBER | STATE | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|---|---|---|---|
| 3 (2. Hit & Run) | 01 | BMW | 01 | 01 | WXL39G | Fl | WBADN53421GC96596 |

TRAILER OR TOWED VEHICLE INFORMATION

| VEHICLE TRAVELING N S E W | ON | AT | Est. MPH | Posted Speed | EST. VEHICLE DAMAGE | 1. Disabling 2. Functional 3. No Damage | EST. TRAILER DAMAGE |
|---|---|---|---|---|---|---|---|
| N. Fed. Hwy | | | 70 | 35 | 6,000- | 1 | 1 |

| MOTOR VEHICLE INSURANCE COMPANY (LIABILITY OR PIP) | POLICY NUMBER | VEHICLE REMOVED BY: |
|---|---|---|
| State Farm. | 640-1784-595 | Tobin's |

NAME OF VEHICLE OWNER (Check Box if Same As Driver) ☒

### Pedestrian / Driver 1

| NAME OF DRIVER (Take From Driver License) / PEDESTRIAN | CURRENT ADDRESS (Number and Street) | CITY, STATE & ZIP CODE | DATE OF BIRTH |
|---|---|---|---|
| Robert Bruce Miller | 1710 NE 199 St. | Miami Fl. 33179 | 01.11.57 |

| DRIVER LICENSE NUMBER | STATE | DL TYPE | REQ. END. | ALC/DRUG TEST TYPE | RESULTS | ALC/DRUG | PHYS.DEF. | RES. | RACE | SEX | INJ. | S. EQUIP. | EJECT. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| M460-76257-251-0 | Fl | 5 | 2 | 5 | 5 | 1 | 3 | 1 | 1 | 3 | 2 | 4 | 1 |

DRIVER'S PHONE NO. 305, 932-8049

### Vehicle 2

| DRIVER ACTION | YEAR | MAKE | TYPE | USE | VEH. LICENSE NUMBER | STATE | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|---|---|---|---|---|
| 3 (2. Hit & Run) | 98 | FORD | 01 | 01 | U437VN | Fl | 1FAFP13P5WW255727 |

TRAILER OR TOWED VEHICLE INFORMATION

| VEHICLE TRAVELING N S E W | ON | AT | Est. MPH | Posted Speed | EST. VEHICLE DAMAGE | 1. Disabling 2. Functional 3. No Damage | EST. TRAILER DAMAGE |
|---|---|---|---|---|---|---|---|
| Young Circle | | | 0- | 25 | 8,000- | 1 | 8 |

| MOTOR VEHICLE INSURANCE COMPANY (LIABILITY OR PIP) | POLICY NUMBER | VEHICLE REMOVED BY: |
|---|---|---|
| United | 011006-29 | Tobin's |

| NAME OF VEHICLE OWNER (Check Box if Same As Driver) ☐ | CURRENT ADDRESS (Number and Street) | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| Norma Vsquez | 2903 NE 163 St. 205 | Miami Fl. | 33160 |

### Pedestrian / Driver 2

| NAME OF DRIVER (Take From Driver License) / PEDESTRIAN | CURRENT ADDRESS (Number and Street) | CITY, STATE & ZIP CODE | DATE OF BIRTH |
|---|---|---|---|
| ISenget Unassigned | | | |

### Code Information

| VEHICLE TYPE | VEHICLE USE | TRAILER TYPE | RESIDENCE (Driver / Ped.) | PHYSICAL DEFECTS | ALCOHOL / DRUG USE | LOCATION |
|---|---|---|---|---|---|---|
| 01 Automobile | 01 Private Transportation | 01 Single Sem Trailer | 1 County of Crash | 1 No Defects Known | 1 Not Drinking or Using Drugs | IN VEHICLE |
| 02 Van | 02 Commercial Passengers | 02 Tandem Sem Trailer | 2 Elsewhere in State | 2 Eyesight Defect | 2 Alcohol - Under Influence | |
| 03 Light Truck / P.U.- 2 or 4 rear tires | 03 Commercial Cargo | 03 Tank Trailer | 3 Non-Resident Out of State | 3 Fatigue / Asleep | 3 Drugs - Under Influence | 1 Front Left |
| 04 Medium Truck - 4 rear tires | 04 Public Transportation | 04 Saddle Mount / Flatbed | 4 Foreign   5 Unknown | 4 Hearing Defect | 4 Alcohol & Drugs - Under Influence | 2 Front Center |
| 05 Heavy Truck - 2 or more rear axles | 05 Public School Bus | 05 Boat Trailer | DL TYPE / RACE | 5 Illness | 5 Had Been Drinking | 3 Front Right |
| 06 Truck Tractor (Cab-Bobtail) | 06 Private School Bus | 06 Utility Trailer | 1 A   2 B   3 C / 1 White | 6 Seizure, Epilepsy, Blackout | 6 Pending ALC/DRUG Test Results | 4 Rear Left |
| 07 Motor Home (RV) | 07 Ambulance | 07 House Trailer | 4 Of Chauffeur / 2 Black | 7 Other Physical Defect | | 5 Rear Center |
| 08 Bus ( driver + seats for 9-15) | 08 Law Enforcement | 08 Pole Trailer | 5 Of Operator / 3 Hispanic | INJURY SEVERITY | SAFETY EQUIPMENT IN USE | 6 Rear Right |
| 09 Bus ( driver + seats for over 15) | 09 Fire / Rescue | 09 Towed Vehicle | 6 Of Oper.-Rest. / 4 Other | 1 None | 1 Not in use | 7 In Body Of Truck |
| 10 Bicycle | 10 Military | 10 Auto Transport | 7 None | 2 Possible | 2 Seat Belt / Shoulder Harness | 8 Bus Passenger |
| 11 Motorcycle | 11 Other Government | 77 Other | REQUIRED / SEX | 3 Non-Incapacitating | 3 Child Restraint | 9 Other |
| 12 Moped | 12 Demo | | ENDORSEMENTS / 1 Male | 4 Incapacitating | 4 Air Bag - Deployed | |
| 13 All Terrain Vehicle | 13 Concrete Mixer | | 1 Yes / 2 Female | 5 Fatal (Within 30 Days) | 5 Air Bag - Not Deployed | EJECTED |
| 14 Train | 14 Garbage or Refuse | | 2 No | 6 Non-Traffic Fatality | 6 Safety Helmet | 1 No |
| 15 Low Speed Vehicle | 15 Cargo Van | | 3 No Endorsement | | 7 Eye Protection | 2 Yes |
| 77 Other | 77 Other | | Required | | | 3 Partial |

HSMV-90003 (REV. 01/02)

Page 1 of 4

**Section 3 — Vehicle / Pedestrian**

| DRIVER ACTION | 1. Phantom | YEAR | MAKE | TYPE | USE | VEH. LICENSE NUMBER | STATE | VEHICLE IDENTIFICATION NUMBER |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 2. Hit & Run | | | | | | | |
| | 3. | | | | | | | |

18. Undercarriage
19. Overturn
20. Windshield
21. Trailer
SHOW FIRST POINT OF VEHICLE

TRAILER & TOWED VEHICLE INFORMATION · TRAILER TYPE

VEHICLE TRAVELLING — N E S W · ON · AT · Est. MPH · Posted Speed · EST. VEHICLE DAMAGE · 1. Disabling 2. Functional 3. No Damage · EST. TRAILER DAMAGE

MOTOR VEHICLE INSURANCE COMPANY (LIABILITY OR PIP) · POLICY NUMBER · VEHICLE REMOVED BY: · 1. Tow Rotation List · 2. Tow Owner's Request · 3. Driver 4. Other

NAME OF VEHICLE OWNER (Check Box if Same As Driver) · CURRENT ADDRESS (Number and Street) · CITY AND STATE · ZIP CODE

NAME OF OWNER ( Trailer or Towed Vehicle) · CURRENT ADDRESS (Number and Street) · CITY AND STATE · ZIP CODE

NAME OF MOTOR CARRIER (Commercial Vehicle Only) · CURRENT ADDRESS (Number and Street) · CITY, STATE AND ZIP CODE · US DOT or ICC MC IDENTIFICATION NUMBERS

NAME OF DRIVER ( Take From Driver License) / PEDESTRIAN · CURRENT ADDRESS (Number and Street) · CITY, STATE & ZIP CODE · DATE OF BIRTH

DRIVER LICENSE NUMBER · STATE · DL TYPE · REQ. END. · ALC/DRUG TEST TYPE (1 Blood 3 Urine 5 None 2 Breath 4 Refused) · RESULTS · ALC/DRUG · PHYS.DEF. · RES. · RACE · SEX · INJ. · S. EQUIP. · EJECT.

HAZARDOUS MATERIALS BEING TRANSPORTED · PLACARDED · IF YES, INDICATE NAME OR 4 DIGIT NUMBER FROM DIAMOND OR BOX ON PLACARD, AND 1 DIGIT NUMBER FROM BOTTOM OF DIAMOND · MAX HAZARDOUS MATERIAL SPILLED? · RECOMMEND DRIVER RE-EXAM IF YES EXPLAIN IN NARRATIVE · DRIVER'S PHONE NO.

| # 1 | PROPERTY DAMAGED - OTHER THAN VEHICLES | EST. AMOUNT | OWNER'S NAME | ADDRESS | CITY | STATE | ZIP |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | GARGRIS | ,2000- | City of Hollywood | Hwd. H. | | | |

| # 2 | PROPERTY DAMAGED - OTHER THAN VEHICLES | EST. AMOUNT | OWNER'S NAME | ADDRESS | CITY | STATE | ZIP |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | TRAFFIC SIGNS | ,2000- | TRAFFIC ENGINEERING - Broward Cty | | | | |

**CONTRIBUTING CAUSES – DRIVER / PEDESTRIAN**

01 No Improper Driving / Action
02 Careless Driving (Explain In Narrative)
03 Failed To Yield Right - of - Way — 12 01
04 Improper Backing
05 Improper Lane Change
06 Improper Turn
07 Alcohol - Under Influence — 14
08 Drugs - Under Influence
09 Alcohol & Drugs - Under Influence
10 Followed Too Closely — 77
11 Disregarded Traffic Signal
12 Exceeded Safe Speed Limit
13 Disregarded Stop Sign
14 Failed To Maintain Equip. / Vehicle
15 Improper Passing
16 Drove Left of Center
17 Exceeded Stated Speed Limit
18 Obstructing Traffic
19 Improper Load
20 Disregarded Other Traffic Control
21 Driving Wrong Side / Way
22 Fleeing Police
23 Vehicle Modified
24 Driver Distraction (Explain In Narrative)
77 All Other (Explain In Narrative)

**VEHICLE DEFECT**
01 No Defects
02 Def. Brakes — 01 01
03 Worn / Smooth Tires
04 Defective / Improper Lights
05 Puncture / Blowout
06 Steering Mech.
07 Windshield Wipers
08 Equipment / Vehicle Defect 77 All Other (Explain In Narrative)
**POINT OF COLLISION**
01 On Road — 01 03
02 Not On Road
03 Shoulder
04 Median
05 Turn Lane
**WORK AREA**
01 None
02 Nearby
03 Entered — 01 01

**VEHICLE MOVEMENT**
01 Straight Ahead
02 Slowing / Stopped / Stalled
03 Making Left Turn — 01 02
04 Backing
05 Making Right Turn
06 Changing Lanes
07 Entering / Leaving / Parking Space
08 Properly Parked
09 Improperly Parked
10 Making U-Turn
11 Passing
12 Driverless or Runaway Vehicle
77 All Other (Explain In Narrative)

**PEDESTRIAN ACTION**
01 Crossing Not at Intersection
02 Crossing at Mid-block Crosswalk
03 Crossing at Intersection
04 Walking Along Road With Traffic
05 Walking Along Road Against Traffic
06 Working on Vehicle In Road
07 Working In Road
08 Standing/Playing In Road
09 Standing In Pedestrian Island
77 All Other (Explain In Narrative)
88 Unknown

**VEHICLE SPECIAL FUNCTIONS**
1 None
2 Fare
3 Police Pursuit
4 Recreational
5 Emergency Operation
6 Construction / Maintenance — 1 1
**SOURCE OF CARRIER INFORMATION**
1 Not Applicable
2 Shipping Papers
3 Vehicle Side
4 Driver
5 Other

**LOCATION TYPE**
1 Primarily Business
2 Primarily Residential — 1
3 Open Country

**FIRST / SUBSEQUENT HARMFUL EVENT(S)**

01 Collision With MV in Transport (Rear End)
02 Collision With MV in Transport (Head On)
03 Collision With MV in Transport (Angle)
04 Collision With MV in Transport (Left Turn)
05 Collision With MV in Transport (Right Turn)
06 Collision With MV in Transport (Sideswipe)
07 Collision With MV in Transport (Backed Into)
08 Collision With Parked Car
09 Collision With MV on Roadway
10 Collision With Pedestrian
11 Collision With Bicycle
12 Collision With Bicycle (Bike Lane)
13 Collision With Moped
14 Collision With Train
15 Collision With Animal
16 MV Hit Sign / Sign Post
17 MV Hit Utility Pole / Light Pole
18 MV Hit Guardrail
19 MV Hit Fence
20 MV Hit Concrete Barrier Wall
21 MV Hit Bridge/Pier/Abutment/Rail
22 MV Hit Tree /Shrubbery
23 Collision With Construction Barricade Sign
24 Collision With Traffic Gate
25 Collision With Crash Attenuators
26 Collision With Fixed Object Above Road
27 MV Hit Other Fixed Object
28 Collision With Moveable Object On Road
29 MV Ran Into Ditch/Culvert
30 Ran Off Road Into Water
31 Overturned
32 Occupant Fell From Vehicle
33 Tractor/Trailer Jackknifed
34 Fire
35 Explosion
36 Downhill Runaway
37 Cargo Loss or Shift
38 Separation of Units
39 Median Crossover
77 All Other (Explain In Narrative)

Values: 16, 08

**ROAD SYSTEM IDENTIFIER**
01 Interstate
02 U.S.
03 State
04 County
05 Local
08 Turnpike / Toll
07 Forest Road
08 Private Roadway
77 All Other (Explain In Narrative) — 02

**ROAD SURFACE CONDITION**
01 Dry
02 Wet
03 Slippery
04 Icy
77 All Other (Explain In Narrative) — 01

**WEATHER**
01 Clear
02 Cloudy
03 Rain
04 Fog
77 All Other (Explain In Narrative) — 01

**LIGHTING CONDITION**
01 Daylight
02 Dusk
03 Dawn
04 Dark (Street Light)
05 Dark (No Street Light)
06 Dark (Street Light)
Downgrade — 04

**ROAD SURFACE TYPE**
01 Slag/Gravel/Stone
02 Blacktop
03 Brick/Block
04 Concrete
05 Dirt
77 All Other (Explain In Narrative) — 02

**ROAD CONDITIONS AT TIME OF CRASH**
01 No Defects
02 Obstruction With Warning
03 Obstruction Without Warning — 01
04 Road Under Repair / Construction
05 Loose Surface Materials
06 Shoulders - Soft / Low / High
07 Holes / Ruts / Uneven Paved Edge
08 Standing Water
09 Worn / Polished Road Surface
77 All Other (Explain In Narrative)

**VISION OBSTRUCTED**
01 Vision Not Obscured
02 Inclement Weather
03 Parked / Stopped Vehicle
04 Trees / Crops / Bushes
05 Load On Vehicle
06 Building / Fixed Object
07 Signs / Billboards
08 Fog
09 Smoke
10 Glare
77 All Other (Explain In Narrative) — 01

**TRAFFIC CONTROL**
01 No Control
02 Special Speed Zone
03 Speed Control Sign
04 School Zone
05 Traffic Signal
06 Stop Sign
07 Yield Sign
08 Flashing Light -
09 Railroad Signal
10 Officer / Guard / Flagperson
11 Posted No U-Turn
12 No Passing Zone
77 All Other (Explain In Narrative) — 07

**SITE LOCATION**
01 Not At Intersection / RR X-ing / Bridge
02 At Intersection
03 Influenced by Intersection
04 Driveway Access
05 Railroad
06 Bridge
07 Entrance Ramp
08 Exit Ramp
09 Parking Lot - Public
10 Parking Lot - Private
11 Private Property
12 Toll Booth
13 Public Bus Stop Zone
77 All Other (Explain In N.) — 02

**TRAFFICWAY CHARACTER**
01. Straight - Level
02. Straight - Upgrade / Downgrade
03. Curve - Level
04. Curve - Upgrade / Downgrade
**TYPE SHOULDER**
01. Paved
02. Unpaved
03. Curb — 01

**Violator(s)**

| SECTION # | NAME OF VIOLATOR | FL STATUTE NUMBER | CHARGE | CITATION NUMBER |
| --- | --- | --- | --- | --- |
| 1 | Robert Bruce Miller | 316.183(4) | FAILED TO USE DUE CARE - SPEED | 7260BKQ |
| 1 | Robert Bruce Miller | 316.1956 | Open container - Alcohol beverages | 7261BKQ |
| | | | | |
| | | | | |

**FLORIDA TRAFFIC CRASH REPORT**
**NARRATIVE/DIAGRAM**
MAIL TO: DEPARTMENT OF HIGHWAY SAFETY & MOTOR VEHICLES, TRAFFIC CRASH
RECORDS SECTION, NEIL KIRKMAN BUILDING, TALLAHASSEE, FL 32399-0500

**DO NOT WRITE IN THIS SPACE**

| TIME EMS NOTIFIED (FATALITIES ONLY) | TIME EMS ARRIVED (FATALITIES ONLY) | DATE OF CRASH | COUNTY / CITY CODE | INVEST. AGENCY REPORT NUMBER | HSMV CRASH REPORT NUMBER |
|---|---|---|---|---|---|
| ☐ AM ☐ PM | ☐ AM ☐ PM | 03 10 02 | 10-44 | 02-039046 | 72342412 |

(NARRATIVE)

Investigation revealed V#2 was correctly parked and unattended, facing south at parking area on inside road of Young Circle at intersection of North Federal Hwy. V#1 was traveling southbound on North Federal Hwy. approaching to the intersection of Young Circle. V#1 failed to control vehicle due to speed and went straight through the traffic island and crossed Young Circle lanes. V#1 continued its ride exiting into inside road of Young Circle, to struck rear end of V#2. V#1 remained at parking area was occupied by V#2, and V#2 was launched 120 feet inside Young Circle. Inside V#1 were found open containers of alcohol beverages.

| SEC# | PASS# | PASSENGER'S NAME | CURRENT ADDRESS | CITY & STATE | ZIP CODE | DATE OF BIRTH | RACE | SEX | LOC | INJ | S. EQUIP. | EJECT. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

| | SECTION # | NAME OF VIOLATOR | FL STATUTE NUMBER | CHARGE | CITATION NUMBER |
|---|---|---|---|---|---|
| Violator(s) | SECTION # | NAME OF VIOLATOR | FL STATUTE NUMBER | CHARGE | CITATION NUMBER |
| | | | | | |

| WITNESS NAME (1) | CURRENT ADDRESS | CITY & STATE | ZIP CODE | WITNESS NAME (2) | CURRENT ADDRESS | CITY & STATE | ZIP CODE |
|---|---|---|---|---|---|---|---|
| Constantine Vargamis | 1360 Tyler St. (954) 923-8793 | | | Butler Ted | 5110 Cleveland St. (954) 966-3350 | | |

| FIRST AID GIVEN BY - NAME | 1. Physician or Nurse 2. Paramedic or EMT 3. Police Officer | INJURED TAKEN TO: | BY - NAME |
|---|---|---|---|
| Recoue -105 | 4. Certified 1st Aider 5. Other  [2] | Memorial | B-105 |

| WAS INVESTIGATION MADE AT SCENE? | 1. YES ☑ 2. NO | IF NO, THEN WHERE? | IS INVESTIGATION COMPLETE? | 1. YES ☑ 2. NO | IF NO, THEN WHY? | DATE OF REPORT 03 10 02 | PHOTOS TAKEN | 1. YES ☑ 2. NO | IF YES, BY WHOM? 1. INVESTIGATING AGENCY ☑ 2. OTHER |
|---|---|---|---|---|---|---|---|---|---|

| INVESTIGATOR - RANK & SIGNATURE | ID/BADGE NUMBER | DEPARTMENT | | FHP | SO | PD | OTHER |
|---|---|---|---|---|---|---|---|
| C20. Nadi | 2803 | Hollywood | | ☐ | ☐ | ☐ | ☑ |

HSMV-90005 (Rev. 1/02)          Page  3  of  4



**STATE OF FLORIDA**
**DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES**
**DIVISION OF DRIVER LICENSES TRANSCRIPT OF DRIVER RECORD**

PAGE: 1
DATE: 31-OCT-2005 14:34:43

| REQUEST FIRST | BRUCE MIDDLE OR MAIDEN | | KELLER LAST | SUFFIX | CITY | 07/11/57 DOB | 5 9 HEIGHT | M RACE | M SEX | | DRIVER EDUCATION | | 10/31/05 SEARCH DATE | 646 REQUESTOR | | 3711 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

UNAVAILABLE ADDRESS

| | COUNTY/STATE | REINSTATEMENT DATE | INFORMATION COUNTY/STATE | ZIP | | 8 CLASS | 06/04/03 DATE ISSUED | 07/11/07 DATE EXPIRED | M RULES | ENDORSEMENTS | FLORIDA DRIVER LICENSE/ID NUMBER | | COL ISSUE DATE | PRIOR STATE AND DRIVER LICENSE NUMBER | | CURRENT BATCH |

DUPLICATE LICENSE  071995808 082489810 052384A99

11/20/72 DATE DMV/DL ISSUED    032687807

050399255 PREVIOUS BATCH   060403803

\*\*\* EXPIRES BELOW COVER THIS PERSONS ENTIRE RECORD \*\*\* \*\*\* BLOCKED PERSONAL INFORMATION \*\*\* \*\*\* BLOCKED FOR MAILING LIST \*\*\* --> \*\* THIS PERSON HAS A DIGITAL IMAGE \*\*

| CRASH/OFFENSE EFFECTIVE DATE | CONVICTION DATE | COURT | ENTRY | DESCRIPTION | DOCKET/TICKET NUMBER | DEPT USE ONLY BATCH |
|---|---|---|---|---|---|---|
| 03/10/02 10/19/89 | 11/01/89 | County | CRASH ADJ WITHHELD CLERK COURT | INVESTIGATED BY : POLICE DRIV TOO FAST FOR CONDITIONS | 2304OCT | 72342412 003493 |
| 04/24/95 08/27/96 06/20/96 01/11/98 | 11/13/95 08/27/96 09/26/96 02/03/98 | County Magistrate County | ADJ WITHHELD CLERK COURT CONV- 4.0 PTS ADJ WITHHELD ADJ WITHHELD CLERK COURT | RECKLESS DRIVING UNLAWFUL SPEED 085/55 UNLAWFUL SPEED-INTERSTATE HWY 066/55 UNLAWFUL SPEED 056/40 | 7550181 6307 9243708 0872817 | 532993 96262444 6311PE 803995 |
| 07/06/00 03/10/02 03/10/02 07/18/02 | 07/10/00 05/13/02 05/13/02 08/02/02 | County County County County | CONV- 3.0 PTS CONV- 3.0 PTS CONV- 3.0 PTS ADJ WITHHELD CLERK COURT | FAILURE TO OBSERVE STOP SIGN DRIV TOO FAST FOR CONDITIONS OTH CONTR-VEH-ALCOHOLIC BEV -OPR FAILURE TO OBSERVE STOP SIGN | 1944ARP 7260BRO 7261BRO 6461BRM | 00189993 02139995 02139995 02139995 |
| 11/13/02 06/11/04 | 12/04/02 07/07/04 | County County | CONV- 3.0 PTS ADJ WITHHELD CLERK COURT | IMPROPER LANE CHANGING UNLAWFUL SPEED 050/35 | 1619BRM 6396CEC | 02350995 04190993 |

END OF RECORD

**LICENSE CLASSES**

CLASS A: ANY TRACTOR-TRAILER WITH A GVWR OF 26,001 POUNDS OR MORE

CLASS B: ANY SINGLE VEHICLE WITH A GVWR OF 26,001 POUNDS OR MORE

CLASS C: ANY SINGLE VEHICLE WITH A GVWR OF LESS THAN 26,001 POUNDS

CLASS D: ANY SINGLE VEHICLE OF 8,000 POUNDS OR MORE VEHICLE THAT 26,001 POUNDS OVER, OR MORE WITH A TRAILER

CLASS E: REGULAR OPERATOR'S LICENSE

CLASS EL: LEARNER'S LICENSE

**RESTRICTIONS**
A. CORRECTIVE LENSES
B. OUTSIDE REARVIEW MIRROR
C. BUSINESS PURPOSES
D. EMPLOYMENT PURPOSES
E. DAYLIGHT DRIVING ONLY
F. AUTOMATIC TRANSMISSION
G. POWER STEERING
H. DIRECTIONAL SIGNALS
I. GRIP ON STEERING WHEEL
J. SEAT CUSTOM
K. HEARING AID
L. LEFT FOOT ACCELERATOR
P. PROBATION-INTERLOCK DEVICE
Q. RESTRICTED
R. OTHER RESTRICTIONS
S. NO PASSENGERS OR MOTORCYCLE
T. MEDICAL ALERT BRACELET
U. EDUCATION PURPOSES
V. VEHICLES W/O AIR BRAKES
W. CDL INTRASTATE ONLY
X. MUST HAVE
Y. APPARATUS
Z. PROSTHETIC AID
1. ONV + 3'S OIL LENS, APPR.
2. NO TRACTOR-TRAILER
3. NO TRACTOR-TRAILER
4. NO CLASS A PASSENGER VEHICLE
5. NO CLASS B PASSENGER VEHICLE

**REPRESENTATIVE CODES**   **CITATION/CRASH CODES**
C. APPEARANCE BY COUNSEL    C. INDICATES CITATION
W. COUNSEL WAIVED           A. INDICATES CRASH

**DISPOSITION CODES**        **ACTION CODES**
1. GUILTY                    D. DEPARTMENT ACTION
2. AFFIRMANCE                C. COURT ACTION
3. FORFEITURE
4. LANGUAGE DELINQUENT
5. ADJUDICATION WITHHELD

**[DIRECTOR signature]**
DIRECTOR

IN COMPLIANCE WITH SECTION 322.201, F.S., SANDRA C. LAMBERT, DIRECTOR, DIVISION OF DRIVER LICENSES, DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, STATE OF FLORIDA, DO HEREBY CERTIFY THAT I AM THE CUSTODIAN OF THE RECORDS OF SAID DIVISION OF DRIVER LICENSES AND THAT THIS IS A TRUE AND CORRECT COPY OF THE ABOVE NAMED SUBJECT'S DRIVING RECORD AS TAKEN FROM THE OFFICIAL RECORDS ON FILE IN THE DEPARTMENT.

NOTE: SOME LICENSES ISSUED BY THE STATE OF FLORIDA ARE VALID IN FLORIDA ONLY. THIS RESULTS FROM APPLICANT RETAINING A VALID LICENSE FROM ANOTHER JURISDICTION.
\*\*\* THIS VIOLATION CANNOT BE USED TO SURCHARGE AN AUTOMOBILE LIABILITY INSURANCE POLICY F.S. 626.9741

**Identification**

| | |
|---|---|
| **Name:** | ROBERT MILLER |
| **Source:** | Florida |
| **Sex:** | MALE |
| **Date of Birth:** | 07/11/1957 |
| **Race:** | WHITE (INCLUDES MEXICANS) |

**Offense**

| | |
|---|---|
| **County Charged:** | DADE |
| **Case Number:** | F95012806 |
| **Offense ID** | FL_AOC10989371 |
| **Offense Date** | 04/24/1995 |
| **Offense Code** | 089313006A1 |
| **Offense** | UNSPECIFIED OFFENSE |
| **Offense Type** | FELONY |
| **Offense County** | DADE |
| **Original Plea** | NOT GUILTY/DENY |
| **Verdict Finding** | PRE-TRIAL DIVERSION |

Jul-02-03
JUL. 1. 2003  3:18PM   FLORIDA BAR
Case 1:05-cv-21807-RH-WCS   Document 1   Filed 04/28/05   Page 103 of 126
NO. 4192   P. 2/6

342    30    05-1280G

**DEFENDANT'S NAME**
MILLER, ROBERT BRUCE   07/11/57   M/W   509 190 BLK BRN

**LOCAL ADDRESS**
1915 NE 214 TR  MIAMI FL  33179   932-8049

**PERMANENT ADDRESS**
N/A

**BUSINESS ADDRESS**
317 MIAMI BEACH  MIAMI BEACH  FL 33179   LAWYER   MIAMI,

**DRIVER'S LICENSE NO.**
M460-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 FL

04/24/95   335   172 ST & NE GAVE (ROADWAY)

Z   U SA

N/A

| CHARGES | | | STATUTE | | | |
|---|---|---|---|---|---|---|
| 1. POSSESSION OF CONTROL SUBSTANCE | N | N | I | 893.13 | | 21814 |
| 2. DVI | N | N | I | 316.193 | 295 037 | |
| 3. | | | | | | |
| 4. | | | | | | |

On the 24 day of APRIL, 19 95 - 1912 □AM □PM   172 ST & NE GAVE (ROADWAY)

THIS OFFICER WAS NORTHBOUND ON NE GAVE
FROM 167 ST.  AS THIS OFFICER APPROACHED 172 ST HE NOTICED
A 94 CADILLAC GREEN IN COLOR FACING EASTBOUND ON 172 ST.
THE DRIVER OF THE VEHICLE WAS SLUMPED OVER IN THE
DRIVERS SEAT.  A CHECK OF THE VEHICLE REVEALED
THAT THE ENGINE WAS RUNNING, TRANSMISSION IN DRIVE.
THIS OFFICER WAS UNABLE TO WAKE THE DEF UP AND
REQUESTED RESCUE.  RESCUE 32  LT. TAMAYO RESPONDED 1 OF 5

VANAMM, E

MDPD   2035  (61)

Jul-02-03  From-KINKO'S TUPE  FLORIDA BAR  NU. 4152  P. 3/6
JUL. 1. 2003  3:19PM  FLORIDA BAR  P. 3/6

| | | | 3 | 9 | 2 | 1 | 3 | 203533 |
|---|---|---|---|---|---|---|---|---|

OBJ/DEBITS NAME: MILLER ROBERT BRUCE

BEFORE RESCUE ARRIVED OFF. V. ABBOTT, NORTH MIAMI
BEACH P.D. ID #109, RESPONDED AND ASSISTED. THIS OFFICER.
OFFICER ABBOTT PLACED HIS VEHICLE IN FRONT OF DEF
VEHICLE TO PREVENT DEF VEHICLE FROM MOVING INTO
TRAFFIC ON NE 6 AVE.
    THIS OFFICER AND. SGT. M. ANDRILL THEN TRYED TO
WAKE DEF UP AGAIN.  DURING THE PROCESS OF WAKEING
DEF UP THIS OFFICER NOTED A BUDWEISER 12:02 ADD
CAN IN DEF LEFT HAND.  AS DEF WOKE UP HE DROPPED
THE CAN IN THE DRIVERS SEAT.  DEF WAS CHECKED OUT
BY RESCUE AND RESCUE RELATED DEF TO THIS OFFICER.
DEF WAS SWAYING WHILE STANDING AND AN ODOR OF
ALCOHOLIC BEVERAGE COULD BE DETECTED ON DEF BREATH.
    DEF WAS ADVISED THAT ANYTHING HE SAID COULD BE
USE AGAINST HIM IN A COURT OF LAW EVENTHOUGH NO
QUESTIONS WHERE ASKED.  DEF WAS ASKED IF HE WOULD
CONDUCT A FST.  DEF STATED THAT HE WOULD.
FST WERE CONDUCTED WITH THE FOLLOWING   PAGE 2 OF 5

COURT COPY

| | ☑ Felony ☐ Misdemeanor ☐ Traffic | | | | 3 4 2 1 3 | 2 0 3 5 3 3 2 | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | ☐ Juvenile ☐ Bypass | | | | | | |
| | | 30 | | | | | 45-12306 |

DEFENDANT'S NAME MILLER, ROBENT BRUCE          07/11/152

RESULTS:

HGN: ONSET AT 45°

WAER OP SMOOTH PURSUIT.

WAT: DEF TOOK THREE STEPS AND ALMOST FELL TO THE GROUND. DEF STATED THAT HE COULD NOT PERFORM TEST.

OLS: DEF COUNTED TO 3 AND STOPPED.
DEF STARTED TEST TWO MORE TIMES BUT COULD NOT CONTINUE PAST COUNTING TO 1.

FTN: LEFT - MIDDLE OF FINGER TO TIP OF NOSE.
RIGHT - PADDED TO TIP OF NOSE.
LEFT - PADDED TO TIP OF NOSE.
RIGHT - PADDED TO BRIDGE OF NOSE
RIGHT - PADDED TO TIP OF NOSE

PAGE 3 OF 5

COURT COPY

LEFT - BROKED TO TIP OF NOSE.

DEF WAS ARRESTED. SEARCH OF VEHICLE AFTER
ARREST REVEALED THE FOLLOWING.

THE BUDWEISER 1202. CAN HAD NUMEROUS
LITTLE HOLES IN THE CENTER OF THE CAN
WITH ASH RESIDUE. THE CAN ALSO HAD
A SMALL HOLE NEAR ITS BASE.

IN THE CENTER CONSOLE THREE SMALL BAGGIES
WITH A WHITE POWDERY SUBSTANCE WAS FOUND.
ALSO FOUND WAS TWO SMALL PLASTIC PIECES
WITH A WHITE POWDERY SUBSTANCE. A
YELLOW WITH WIR ALSO FOUND CONTAINING
A WHITE POWDERY RESIDUE.

DEF WAS GIVEN A MIRANDA WARNING FORM WHICH
HE SIGNED. DEF THEN WROTE OUT A STATEMENT
INCLUDED IN PAGE FIVE. DEF WAS TRANSPORTED TO JAIL + o.5

JUL-02-03   11:14am   From-MNKO-3-1076   FLORIDA BAR

JUL. 1. 2003  3:20PM   FLORIDA BAR          NO. 4152   P. 5/6

3Y213          2035331Z

3D          FO-12806

MILLER, ROBERT BRUCE          02/11/57

COURT COPY



IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR DADE COUNTY,
FLORIDA.

THERESA LEACH BRADLEY,
PRO SE
                Plaintiff,

v.

ROBERT BRUCE MILLER,
BAR NO. 305685, GREEN, KAHN,
PIOTRKOWSKI, P.A., (FORMERLY
GREEN, KAHN, PIOTRKOWSKI,
MILLER, P.A.),

                Defendants.
_____/

CASE NO. 98-11457-CA-27

ORDER AND PARTIAL FINAL
SUMMARY JUDGMENT IN FAVOR
OF DEFENDANTS

THIS CAUSE, having come on to be heard on Defendants, ROBERT BRUCE MILLER and

GREEN, KAHN, PIOTRKOWSKI, P.A.'s Motion for Summary Judgment, the Court having heard

argument of Plaintiff *Pro se* and counsel for Defendants, and being otherwise fully advised in the

premises it is hereby

      ORDERED AND ADJUDGED as follows:

      1.      Defendants' Motion for Summary Judgment be and the same is hereby granted in

part  with respect to any claims arising out of Plaintiff's arbitration claims against Prudential

Securities.

      2.      Defendants' Motion be and the same is hereby granted as to Count III of Plaintiff's

Complaint for Intentional Infliction of Emotional Distress.

      3.      Defendants' Motion for Summary Judgment is denied in all other respects.



EXHIBIT B

4.     Partial Final Summary Judgment is hereby entered in favor of the Defendants ROBERT BRUCE MILLER, Miller & Schuh, P.A., 20803 Biscayne Boulevard, Suite 200, Aventura, FL 33180, and GREEN, KAHN, PIOTRKOWSKI, P.A., 317-71st Street, Miami, FL 33141 and against Plaintiff, THERESA LEACH BRADLEY, *Pro se*, 6418 Old Post Court, Columbus, GA 31909 and 7100 39 Fairway Drive, PMB#149, Palm Beach Gardens, Florida 33418, on all issues related to the Prudential Securities claim and Plaintiff shall take nothing on that claim and Defendants shall go hence without day.  Final Summary Judgment is also entered in favor of Defendants ROBERT BRUCE MILLER, Miller & Schuh, P.A., 20803 Biscayne Boulevard, Suite 200, Aventura, FL 33180 and GREEN, KAHN, PIOTRKOWSKI, P A.317-71st Street, Miami, FL 33141, and against Plaintiff, THERESA LEACH BRADLEY, *Pro se*, 6418 Old Post Court, Columbus, GA 31909 and 7100 39 Fairway Drive, PMB#149, Palm Beach Gardens, Florida 33418 on Count III of Plaintiff's Fourth Amended Complaint for Intentional Infliction of Emotional Distress and Defendants shall go hence without day on that claim as well.

5.     The Court reserves jurisdiction with respect to any claim for attorneys fees and/or costs to be determined upon final disposition of the Plaintiff's remaining claims.

DONE AND ORDERED in Chambers at Miami, Dade County, Florida, this _____ day of July, 2001.

JUL 3 0 2001

_____
CIRCUIT JUDGE

PAUL SIEGEL
CIRCUIT JUDGE

Copies furnished:

THERESA LEACH BRADLEY, *Pro se*
N. FRASER SCHUH, III, ESQ.
D. DAVID KELLER, ESQ.

RPR:acw
W82/99-135

THERESA LEACH BRADLEY,
PRO SE

                    Plaintiff,

v.

ROBERT BRUCE MILLER,
BAR NO. 305685, GREEN, KAHN,
PIOTRKOWSKI, MILLER, P.A.,
GREEN, KAHN, PIOTRKOWSKI,
P.A., DONALD JEFFREY KAHN,
BAR NO. 156534, MARVIN GREEN,
BAR NO. 31377, JOEL PIOTRKOWSKI,
BAR NO. 220493.

                    Defendants.
_____/

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR DADE COUNTY,
FLORIDA.

CASE NO. 98-11457-CA-02

FLA BAR NO. 000612
FILED WITH EXHIBITS
EXHIBITS FILED WITH DEPOS

### DEFENDANTS, GREEN, KAHN, PIOTRKOWSKI, P.A.'S, MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

Defendants, ROBERT BRUCEMILLER, GREEN, KAHN, PIOTRKOWSKI, P.A.,

DONALD JEFFREY KAHN, MARVIN GREEN, JOEL PIOTRKOWSKI, pursuant to Florida Rule

of Civil Procedure 1.510(b), move for entry of summary judgment in its favor and as grounds states

the following

    1.    Plaintiff filed the initial Complaint in this matter on May 19, 1998.

    2.    The Plaintiff subsequently filed an Amended Complaint on June 24, 1998; a Second

Amended Complaint on January 27, 1999; a Third Amended Complaint on February 8, 2000; and

a Fourth Amended Complaint on February 15, 2000.

    3.    Plaintiff's Fourth Amended Complaint alleges three counts against the Defendants:

(I) Professional Negligence/Legal Malpractice, (2) Fraud and (3) Intentional Infliction of Emotional

Distress.

FILED

MAY 0 2 2003

MARY CAY BLANKS
CLERK, DISTRICT COURT OF
APPEAL, THIRD DISTRICT

000107

4. The Defendants are entitled to summary judgment as to all of the Plaintiff's charges as a matter of law because there are no genuine material issues of fact or law in the record before the Court and: (I) Plaintiff has failed to file her complaint within the statute of limitations prescribed by Florida Statutes §95.11, (II) Plaintiff has failed to establish that any alleged negligence of the Defendants was the proximate cause of alleged injuries sustained by the Plaintiff, (III) Plaintiff has failed to establish record evidence of negligence on the part of the Defendants and (IV) Plaintiff has failed to allege any fact or conduct to support her claim for Intentional Infliction of Emotional Distress not already cited in her other claims against the Defendants as required by Florida case law, (see *Foshee v. Health Management Associates*, 675 So.2d 957 (Fla 5th DCA 1996)).

## MEMORANDUM OF LAW

### Summary Judgment standard:

Summary judgment is available where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fla. R. Civ. P. 1.530(c); *see also Martin County v. Edenfield*, 609 So. 2d 27, 30 (Fla. 1992); *Moore v. Morris*, 475 So. 2d 666, 668 (Fla. 1985) (directing that summary judgment is intended for cases where the facts are so "crystallized" as to leave only questions of law); *Holl v. Talcott*, 191 So. 2d 40, 43-44 (Fla. 1966) (establishing summary judgment guidelines); *Buitrago v. Rohr*, 672 So. 2d 646, 648 (Fla. 4th DCA 1996) (noting that summary judgment eliminates issues that should not be submitted to a jury); *Hervey v. Alfonso*, 650 So. 2d 644, 646 (Fla. 2d DCA 1995) (stating that "[t]he function of the court is solely to determine whether the appropriate record presented in support of summary judgment conclusively shows that the plaintiff cannot prove the claim alleged as a matter of law").

2

000108

**Facts:**

In either July, September or November, 1992, Plaintiff retained Defendants to represent her in a dispute against Prudential Securities [1] (see Plaintiff's Fourth Amended Complaint ¶9, see Exhibit 15 to Plaintiff's October 21, 1998 deposition; and Plaintiff's October 28, 1993 bar complaint against Robert Miller see attached as Defendants' Exhibit "1"). On or about **November 4, 1992**, the Plaintiff entered into another agreement with the Defendants to represent her in a dispute against Dean Witter, Bernice Samkoff, Justus Doering, and other miscellaneous matters (see Plaintiff's Fourth Amended Complaint; see Exhibit 5 to Plaintiff's October 21, 1998 depositions; see November 4, 1992 correspondence of Robert Miller to Plaintiff attached as Exhibit "2").

Plaintiff's Prudential Securities dispute was taken before an arbitration panel for final hearing on **January 5 and 6, 1993**, and continued on **January 19 and 20, 1993** (See November 11, 1992 letter from American Arbitrators Associates; January 13, 1993 letter from American Arbitrators Associates, and January 12, 1993 letter from Robert Miller to Plaintiff attached as Defendants' Exhibits "3", "4" and "5" respectively ). In this letter of **January 12, 1992** to the Plaintiff, Robert Miller confirms an agreement between the parties that, because of the unanticipated volume and complexity of the arbitration matters, both Robert Miller and Harris Holzberg would be submitting additional bills for services rendered in that matter. There is no evidence that the Plaintiff ever objected to Mr. Miller's January 12, 1992. Following the hearings, the arbitration panel returned a decision in favor of Prudential Securities and against Plaintiff, Theresa Leach Bradley.

Prior to the arbitration panel's decision against her, the Plaintiff voiced her admiration and respect of Robert Miller in numerous correspondence:

---

[1] Plaintiff provided these 3 different dates in the cited documents.

3

| **October 17, 1992**: | "You are so nice and I am so glad to have located you." |
|---|---|
| **October 19, 1992**: | "In addition to your excellent representation. . . ." |
| **October 28, 1992**: | "Once again, I cannot tell you how much I appreciate your brilliant legal mind in conjunction with your candor and honesty. It is a rare commodity to find in Miami's legal community" |
| **November 25, 1992** | "In my years of experience, I must have trust and confidence in the attorney who is representing me. That he/she is intelligent, honest, capable. I certainly feel that you fill these criteria and I have the utmost confidence and respect for you." |

(see Defendants' Exhibits "6", "7", "8" and "9" respectively).

Prior to the adverse ruling, but after the first two days of arbitration, and receipt of Mr. Miller's status letter of January 12th, Plaintiff responded on January 13, 1992 (see attached Defendants' Exhibit "10"). Conspiciously absent from this letter are any complaints regarding Mr. Miller's representation during the arbitration proceeding, nor any mention of Mr. Holzberg's alleged misrepresentation. On January 18, 1993, Mr. Miller notified Plaintiff that he had settled her case with Michael Hanzman's law firm. Based upon an arrangement with the Plaintiff, she would receive a credit of $1,000.00 of money owed to the Defendants' firm and Harris Holzberg with respect to the Theresa Leach v. Dean Witter and miscellaneous related matter (see attached Defendants' Exhibit "11"). While Plaintiff has regularly written and corresponded with Mr. Miller via facsimile, (see Defendants' composite Exhibit "12"), there is no evidence of any correspondence objectioning or even questioning Mr. Miller's understanding as stated in this January 18, 1993 letter.

Following the adverse ruling against her by the arbitration panel, the Plaintiff voiced numerous reasons for her dissatisfaction with Defendants' representation of her, along with her demand for return of monies paid to the Defendants, return of documents alleged to be in

4

000110

Defendants' possession and various other allegations against the Defendants. Beginning on

**February 23, 1993**, when Plaintiff terminated the Defendants as her attorneys, the Plaintiff wrote:

> You have totally misinterpreted my impression of your handling of the Leach v. Prudential Securities.
>
> First, I intend to appeal on the basis of various legal issues, including but not limited to your handling of my case, the expert witness' failure to reveal to me salient details concerning his employment and termination with Prudential Securities and lack of options licensure, and your admitted knowledge of and deception in these matters.
>
> * * * * *
>
> New securities counsel will handle the Appeal of the AAA Panel Judgment. Counsel will investigate what I consider to be your legal malpractice and complete mishandling of my case, including conspiracy to deceive me concerning Mr. Holzberg.
>
> * * * * * * *
>
> Forward to me via overnight air courier at your expense, all of my original documents referred to in both retainer agreements, all pleadings, transcripts, documents, correspondence, and the entire case file on Leach v. Prudential Securities. It is imperative that you comply with this request immediately due to the short time frame for appeal.
>
> * * * * * * * *
>
> I demand that you immediately refund to me and include in the overnight courier 100% of the monies pre-paid to you under the Second Retainer Agreement concerning Samkoff Dean Witter, etc., including the Hanzman refund, without any reductions for "services" incurred to date by either yourself or Mr. Holzberg for the reasons specified in the preceding. (Attached as Defendants' Exhibit "13")

In her correspondence of **March 1, 1992**, Plaintiff states "[y]our firm was dismissed due to your

failure to reveal a conflict of interest in the Prudential Securities matter that became a matter of

record in the Arbitration hearing proceeding . . . . I would have engaged Hanzman and his co-counsel

under a contingency arrangement had you revealed the conflict of interest," (attached as Defendants'

Exhibit "14"). According to Plaintiff's sworn affidavit of complaint to the Florida Bar dated

**October 28, 1993**, she became aware of Harris Holzberg's previous association with Prudential on

5

000111

the second day of the four day arbitration proceeding, which was **January 6, 1993.** However, in correspondence from Harris Holzerg to Plaintiff, dated **July 17, 1992,** (prior to Plaintiff's meeting with Defendant, Robert Miller), Mr. Holzberg enclosed a copy of his then-resume which specifically included his prior employment with the Prudential Securities (see attached Defendants' exhibit "15"). Plaintiff admits to receiving this correspondence prior to meeting with Robert Miller in her March 22, 1993 correspondence, (attached as Defendants' Exhibit "16").

On **March 22, 1993**, the Plaintiff begins using terms such as "fraud" in inducing her to retain the Defendants, and "theft" of a client's money. Mr. Miller had gone from the "honest", "intelligent" attorney whom Plaintiff had complete confidence, to " the worst attorney, the absolute sloppiest and worst attorney I have ever experienced in my life." The Plaintiff reiterates her intent to have new counsel "proceed with legal action to obtain what I have repeatedly and validly requested, a complete review of your professional liability in this fraudulent misrepresentation as it affected my entire case, including Holzberg, and a Bar review of your egregious lack of professional conduct in this matter," and adds, again, that the Defendants are "jeopardizing the immediately pending and miscellaneous matters." Plaintiff continues with these allegations in numerous subsequent letters (see Defendants' composite exhibit "12").

Not quite finally, in her sworn complaint to the Florida Bar on **October 25, 1993**, the Plaintiff provides a laundry list of allegations against the Defendants summed up on the last page as:

> a series of unprofessional conduct, misrepresentation, fraud, conversion of clients funds to lawyers personal benefit, refusal to return original files damaging client's obligations to the Internal Revenue Service, damaging client's rights under Statute of Limitations governing other legal matters, damaging client's ability to defend and represent herself in these pending legal matters, and a series of egregious actions which damages Ms. Leach by Miller/Holzberg representation in the Prudential Securities Inc. matter, and

6

000112

> damages her financially in the amount in excess of $130,000 in damages in
> the Prudential matter and $7.550 in damages under the Second Retainer
> Agreement.

In these same letters, the Plaintiff makes numerous allegations as to why and how the

Defendants' actions caused her "damages." In her letters of **March 1, 1993** and **March 22, 1993**,

the Plaintiff asserts that the Prudential arbitration "was lost because of your [Miller's] failure to

address either in or out of court: Solicited v. Unsolicited orders (see Exhibits "14" and "16")." In her

**July 26, 1993** letter, the Plaintiff asserts that her case was about "suitability and you missed the

entire legal basis of the proceeding." (See attached Exhibit "17") In her letter of **August 1, 1993**,

the Plaintiff claims that it was Robert Miller's failure to review and prepare Prudential's "Law and

Compliance Manual" and its guidelines regarding who can and cannot trade options which was the

reason for the adverse ruling from the arbitration panel. (See attached Exhibit "18") Additionally,

in these letters, the Plaintiff alleges that the Defendant verbally abused her. These allegations

crescendo to Plaintiff's allegations of "bizarre" behavior during her meetings with the Defendant.

## THE PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Plaintiff filed her original complaint in this matter on **May 19, 1998** alleging professional

negligence. In her fourth Amended Complaint filed **February 15, 2000**, the Plaintiff alleges three

counts against the Defendants: (1) Professional Negligence/Legal Malpractice, (2) Fraud and (3)

Intentional Infliction of Emotional Distress.

Florida Statute §95.11 provides that the relevant statute of limitations for claims made by the

Plaintiff are:

> (3) Within four years.--

7

(j) A legal or equitable action founded on fraud.

(o) An action for assault, battery, false arrest, malicious prosecution, malicious interference, false imprisonment, or any other intentional tort, except as provided in subsections (4), (5), and (7).

(4) Within two years.--

(a) An action for professional malpractice, other than medical malpractice, whether founded on contract or tort; provided that the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence.

The statute of limitation for bringing Count I of Plaintiff's complaint, Professional Negligence or Malpractice is 2 years "from the time the cause of action is discovered or should have been discovered with the exercise of due diligence". In the instant case, it is obvious from the Plaintiff's correspondence of **February 23, 1993**, her termination letter to the Defendants, that she was aware of her allegation of professional negligence: "New securities counsel will handle the Appeal of the AAA Panel Judgment. Counsel will investigate what I consider to be your legal malpractice and complete mishandling of my case, including conspiracy to deceive me concerning Mr. Holzberg." Even if she had not formulated all of her numerous claims against the Defendants, the statute of limitations "shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence," FS §95.11(4)(a). Accepting this theory, the Plaintiff's claim for professional malpractice against the Defendants expired on or about February 23, 1995 — more than three (3) years prior to Plaintiff's first civil complaint against these Defendants.

Florida case law supports the position that that the statute of limitations in this circumstance began with the Plaintiff's February 23, 1993 letter terminating the Defendants representation. The Second DCA, in *Sawyer v. Earle*, 541 So.2d 1232 (Fla 2nd DCA 1989) held that the statute of limitations in a professional malpractice case against an attorney began to run at the time the client

terminated and replaced the attorney. In *Sawyer v. Earle*, Sawyer retained Earle to represent him

in a bar grievance matter. Earle represented Sawyer through his disciplinary hearing and until March

2, 1991 when Sawyer terminated Earle and replaced him with substitute counsel. *Id.* at 1233. At

the close of the hearing, the referee announced that he was going to recommend an eighteen-month

suspension. The referee served his report on Sawyer's attorney on February 10, 1982 and the Florida

Supreme Court approved the findings on June 17, 1982, activating the suspension as recommended

effective July 19, 1982. *Id.* On June 26, 1984, Sawyer filed a complaint alleging various counts of

legal malpractice during Earle's representation of him and arguing that his cause of action did not

accrue until his damages were ascertained when he learned of his suspension from the practice of

law on June 28, 1982. *Id.* The court disagreed and explained as follows:

> ... Sawyer's underlying cause of action is predicated upon Earle's allegedly
> negligent representation of him in the bar disciplinary proceedings, which
> eventually culminated in final form in the Florida Supreme Court ordering his
> suspension. . . . In this case, the fact that Sawyer claimed he suffered
> monetary damages from the alleged malpractice in 1980 and replaced Earle
> as his attorney in 1981 because of same, clearly reveals that Sawyer
> discovered his cause of action at that time. That Sawyer was not able to
> determine his exact amount or full extent of damages at that time did not toll
> the statute of limitations. *Id.* at 1234.

In this instant case, not only can we assume that the Plaintiff had knowledge of the alleged

negligence when terminating the Defendants on February 23, 1993, but Plaintiff's own letters reveal

that she was completely cognizant and educated as to her professed claim of professional negligence

against the Defendants at that time.

Similarly, Plaintiff's claim of Fraud is based on her allegations that the Defendants

intentionally deceived her regarding Harris Holzberg's prior employment with Prudential Securities.

Even accepting, for a moment, Plaintiff's claim that she was unaware of Mr. Holzberg's prior

employment with Prudential Securities and her claim that she would not have engaged the

9

000115

Defendants (who are not associated with Mr. Holzberg in any fashion), the Plaintiff was fully aware of this cause of action in her February 23, 1993 termination letter to the Defendants: ". . . including conspiracy to deceive me concerning Mr. Holzberg." Florida Statutes §95.11 allows for a claim of fraud to be brought within 4 years of the alleged wrongful act or when the claimant could reasonably discover the cause of action. In the instant case, the Plaintiff asserts numerous times that she was amazed when she discovered, on the second day of the arbitration hearing — **January 6, 1993** — that Harris Holzberg had previously worked for Prudential Securities and was not "options" licensed. Therefore, Plaintiff's cause of actions on the alleged fraud began on January 6, 1993 and the statute of limitation would expire on January 6, 1997.

However, taking the facts in the light most favorable for the Plaintiff, assume that the Plaintiff was not fully cognizant of the alleged "deception" regarding Harris Holzberg on January 6, 1993. The Plaintiff clearly establishes in the **February 23, 1993** termination letter to the Defendants that, not only is she aware of the alleged deception, but she has already spoken with new counsel about investigating the Defendants for prosecution on these claims. Therefore the Plaintiff's claim for fraud against these Defendants would have expired on February 23, 1997. Plaintiff failed to bring her original complaint against these Defendants until **May 18, 1998²**, more than 14 months after the expiration of the 4 year statute of limitations on the claim of fraud.

Finally, Plaintiff's claim for intentional infliction of emotion distress is similarly barred for Plaintiff's failure to bring the claim within the prescribed statute of limitations. Beginning on **March 1, 1993**, Plaintiff accuses the Defendant, Robert Miller, (who was once described by the Plaintiff as

---

²Plaintiff's original complaint failed to specifically make a claim for fraud against these Defendants while alleging similar facts to support her claims for malpractice and intentional infliction of emotional distress.

10

000116

"excellent representation"), of deceiving her and describes Mr. Miller as continually "abusive" to her. In her August 1, 1993 correspondence and in the sworn complaint to the Florida Bar dated October 28, 1993, the Plaintiff explains how the Defendant, Robert Miller, verbally abused her with "viscous assault" and forced her to wait countless hours in his office and at her hotel. Assuming that Plaintiff was aware of the abuse she described in her letters, than the Plaintiff's cause of action should have begun to run at the time of the abuse, the period of the Defendants' representation-- July, September or November 1992 - **February 23, 1993** — and expired 4 years later. Taking the facts in light most favorable to the Plaintiff, assuming that Plaintiff was not aware of the alleged abuse which is the basis of her claim of intentional infliction of emotional distress against the Defendants until her claims of abuse appear in her correspondence beginning on **March 1, 1993**, then the Plaintiff's cause of action on the claim for intentional infliction of emotional distress would have expired on **March 1, 1997** — over one year prior to Plaintiff's filing of her original complaint against the Defendants.

It is clear from Plaintiff's own correspondence beginning February 23, 1993 and her sworn affidavit of complaint to the Florida Bar date October 28, 1993, that she was aware of each of the causes of action and alleged damages claimed in each of her four complaints against these Defendants at these times. Even if we applied the date of the Plaintiff's sworn affidavit of complaint to the Florida Bar on October 28, 1993, (which is obviously well after the Plaintiff asserts her knowledge of the claims and alleged damages against these Defendants) the Plaintiff failed to file the complaint within the prescribed 2- and 4-year statute of limitations for her claims of professional negligence, fraud and intentional infliction of emotional distress.

WHEREFORE the Defendants move this Court to grant this Motion for Summary Judgment as a matter of law for Plaintiff's failure to establish any material issue of fact or law in the record.

11

000117

## PLAINTIFF HAS FAILED TO ESTABLISH DAMAGES PROXIMATELY CAUSED BY DEFENDANTS NEGLIGENCE OR WRONGFUL ACTS

Florida courts have long recognized that a party cannot recover for claims of malpractice or negligence, even if the attorney neglected a reasonable duty, unless the neglect was the proximate cause of the client's damages. *Chipman v. Chonin*, 597 So. 2d 363 (Fla. 3rd DCA 1992); *Jones v. Utica Mutual Insurance Company*, 463 So. 2d 1153 (Fla. 1985); *Sardell v. Malanio*, 202 So. 2d 746 (Fla. 1967); *Fellows v. Citizens Federal Savings & Loan Association*, 383 So. 2d 1140 (Fla. 4th DCA 1980). Furthermore, Florida courts have also recognized that proximate cause may be considered a question of law, *Dadic v. Schneider*, 722 So. 2d 921 (Fla. 4th DCA 1999). Plaintiff has failed to establish that she was damaged as a proximate result of any unreasonable action or inaction of the Defendants.

In order for the Plaintiff's damages to be the proximate result of Defendants' unreasonable actions or inactions, they must be produced in a natural and continuous sequence by his conduct, such that "but for" such conduct, injury would not have occurred. *Jones v. Utica*, 463 So. 2d 1153 (Fla. 1985). Plaintiff asserts numerous injuries or damages, however, Plaintiff has not produced any record of these damages. Further, even if we accept some of the allegations of damages, there has been no showing that the alleged damages were caused by any action or inaction by the Defendants. There is nothing in the record before this Court to establish that any of the Plaintiff's claimed damages were the natural and continuous sequence of any of the Defendants' actions or inactions. More to the contrary, the affidavit of Delmer Gowing, (attached as Defendants' exhibit "19"), clearly evidences that there was nothing that the Defendants did or did not do that contributed to Plaintiff's loss at arbitration.

WHEREFORE, Defendant's move this Court to grant this Motion for Summary judgment

12

as a matter of law for Plaintiff's failure to establish any matter of issue, facts or law with record before this Court.

## FAILURE TO PRESENT EXPERT EVIDENCE OF NEGLIGENCE

While Plaintiff has made numerous allegations of negligence against the Defendants, the Plaintiff has failed to produce any evidence of legal negligence. Defendants, on the other hand, have produced record evidence that there was no negligence on the Defendant's part in the representation of the Plaintiff (see affidavit of Delmer Gowing, Defendants' exhibit "19"). Without expert testimony to support Plaintiff's allegation of legal malpractice, and in the face of an affidavit to the contrary from Delmer Gowing, Plaintiff cannot establish the requisite breach of duty necessary to prevail on her counterclaim. See *Willage v. Law Offices of Wallace and Breslow, P.A.*, 415 So. 2d 767, 768 (Fla. 3d DCA 1982). The matter of whether counsel was negligent in arguing or not arguing specific theories at an arbitration is one which requires expert testimony as to the applicable standard of care for lawyers handling similar cases in the same or similar communities.

Additionally, the decision regarding whether to argue specific theories at an arbitration is one which is subject to judgmental immunity. *See Crosby v. Jones*, 705 So. 2d 1356, 1358 (Fla. 1998).

Accordingly, there being no genuine issue of material fact as to Defendants' negligence in connection with its representation of Plaintiff, Defendants are entitled to judgment in their favor as a matter of law on Plaintiff's claim of negligence.

WHEREFORE, Defendants move this Court to grant this Motion for Summary judgment as a matter of law for Plaintiff's failure to establish any matter of issue, facts or law with record before this Court.

13

000119

## PLAINTIFF HAS FAILED TO ESTABLISH ANY FACTS OR EVIDENCE SEPARATE AND APART FROM HER OTHER CLAIMS TO SUPPORT HER CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff's third claim, Intentional Infliction of Emotional Distress, must fail for Plaintiff's failure to establish any facts separate and apart from her other claims against the Defendants, to support this claim. The Fifth District Court of Appeals, in *Foshee v. Health Management Associates*, clearly enunciated the rule that in order for a claimant to assert an intentional tort claim, it must state the claim such that the it does not already fit into the category of another tort. 675 So.2d 957 at 960. In *Foshee*, a patient alleged both false imprisonment and intentional infliction of emotional distress against various persons in the health care business. *Id.* at 598. In dismissing the claim for intentional infliction of emotional distress, the court explained:

> False imprisonment, an intentional tort, is defined as intentionally causing one to be restrained against her will. See Fla. Std. Jury Instr. (Civ)MI 6.1. Intentional infliction of mental distress is also an intentional tort and can be defined, loosely, as any outrageous conduct emotionally injurious to the claimant, which conduct is not violative of any other recognized tort. Because the actions of the chargeable defendants here can be deemed to fit within the false imprisonment category those actions will not support a claim of intentional infliction of emotional distress. Id at 960.

Similarly, in the instant case, the Plaintiff's allegations against these Defendants can be deemed to fit within the professional malpractice and fraud claims and therefore will not support a claim for intentional infliction of emotional distress. Without establishing some action or element not contained in her other claims against these Defendants, the Plaintiff's claim for intentional infliction of emotional distress must fail.

WHEREFORE the Defendants move this Court for an Order granting this Motion for Summary Judgment as a matter of law for Plaintiff's failure to establish any facts to support a claim for Intentional Infliction of Emotion Distress separate and apart from her other claims.

14

000120

CASE NO. 98-11457-CA-02

WHEREFORE, the Defendants respectfully moves this Court for an Order granting this

Motion for Summary Judgment.

> BUNNELL, WOULFE, KIRSCHBAUM,
> KELLER & McINTYRE, P.A.
> Counsel to Defendants, Green, Kahn,
> Piotrkowski, Donald Jeffrey Kahn,
> Marvin Green & Joel Piotrkowski
> 888 East Las Olas Blvd., Suite 400
> P. O. Drawer 030340
> Fort Lauderdale, FL 33303
> (954) 761-8600
>
> By:_____
> RACHEL R. RAY

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy of the foregoing was furnished via U.S. Mail to **THERESA**

**BRADLEY**, Plaintiff *Pro Se*, 7100-39 Fairway Drive, PMB #149, Palm Beach Gardens, FL 33418

(561) 684-2494; and to **N. FRASER SCHUH, III, ESQ.,** Bedzow, Korn, Brown, Lipton, Miller

& Zemel, P.A., P. O. Box 8020, Hallandale, FL 33008-8020 (305) 935-6888 this _6th_ day of

December, 2000.

_____
RACHEL P. RAY, ESQUIRE

15
BUNNELL, WOULFE, KIRSCHBAUM, KELLER & McINTYRE, P.A., PO DRAWER 030340, FORT LAUDERDALE, FL 33303-0340 • (954) 761-8600

000121

CASE NO. 98-11457-CA-02

## Table of Contents

1.    Foshee v. Health Management Associates, 675 So.2d 957 (Fla 5th DCA 1996)

2.    Martin County v. Edenfield, 609 So.2d 27,30 (Fla. 1992)

3.    Moore v. Morris, 475 So.2d 666,668 (Fla. 1985)

4.    Holl v. Talcott, 191 So.2d 40, 43-44 (Fla. 1966)

5.    Buitrago v. Rhor, 672 So.2d 646,648 (Fla. 4th DCA 1996)

6.    Hervey v. Alfonso, 650 So.2d 644, 646 (Fla.2d DCA 1995)

7.    Sawyer v. Earle, 541 So.2d 1232 (Fla 2nd DCA 1989)

8.    Chipman v. Chonin, 597 So.2d 363 (Fla. 3rd DCA 1992)

9.    Jones v. Utica Mutual Insurance Company, 463 So.2d 1153 (Fla. 1985)

10.   Sardell v. Malanio, 202 So.2d 746 (Fla. 1967)

11.   Fellows v. Citizens Federal Savings & Loan Association, 383 So.2d 1140 (Fla. 4th DCA 1980)

12.   Dadic v. Schneider, 722 So.2d 921 (Fla. 4th DCA 1999)

13.   Willage v. Law Offices of Wallace and Breslow, P.A., 415 So. 2d 767, 768 (Fla. 3d DCA 1982)

14.   Crosby v. Jones, 705 So. 2d 1356, 1358 (Fla. 1998).

BUNNELL, WOULFE, KIRSCHBAUM, KELLER & McINTYRE, P.A., PO DRAWER 030340, FORT LAUDERDALE, FL 33303-0340 • (954) 761-8600